

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 6, 2026**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) Case No. 26-90004 (MXM) |
| | ) (Jointly Administered) |
| Debtors. | ) **Related to Docket No. 11** |

### INTERIM ORDER
### (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
### THEIR EXISTING CASH MANAGEMENT SYSTEM AND
### MAINTAIN THEIR EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

**INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS FORMS AND BOOKS AND RECORDS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Order") and a Final Order, (a) authorizing, but not directing, the Debtors to (i) continue to operate their existing cash management system, (ii) maintain existing bank accounts and business forms and honor certain prepetition obligations related thereto, (iii) maintain their corporate card program and honor prepetition obligations related thereto, and (iv) continue to perform intercompany funding, transfers, and transactions through their existing cash management system consistent with historical practice; (b) extending the time for the Debtors to comply with the Bankruptcy Code section 345(b) deposit and investment requirements, to the extent necessary; and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and it appearing that no other or further notice is

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on March 3, 2026, at 1:30 p.m. (prevailing Central Time). Any objections or responses to the entry of the proposed Final Order shall be filed with the Court and served on the following no later 4:00 p.m. (prevailing Central Time) on February 26, 2026: (a) Inspired Healthcare Capital Holdings, LLC, c/o Ankura Consulting Group, LLC, 485 Lexington Avenue, 10th Floor, New York, NY 10017 (Attn: M. Benjamin Jones (ben.jones@ankura.com)); (b) proposed counsel to the Debtors, McDermott Will & Schulte LLP, 2801 N. Harwood Street, Suite 2600, Dallas, TX 75201 (Attn: Marcus A. Helt (mhelt@mcdermottlaw.com) and Jack G. Haake (jhaake@mcdermottlaw.com)), and 1180 Peachtree St. NE, Suite 3350, Atlanta, GA 30309 (Attn: Daniel M. Simon (dsimon@mcdermottlaw.com)), and 444 West Lake Street, Suite 4000, Chicago, IL 60606 (Attn: Carmen Dingman (cdingman@mcdermottlaw.com)); (c) counsel for the DIP Lender, Foley & Lardner, LLP, 111 Huntington Ave., Boston, MA 02199, (Attn: Adrienne K. Walker (awalker@foley.com), Jamie N. Class (jclass@foley.com), and Thomas C. Scannell (tscannell@foley.com)); (d) the Office of the United States Trustee for Region 6, 1100 Commerce Street, Room 976, Dallas, TX 75242 (Attn: Susan Hersh (susan.hersh@usdoj.gov)); (e) counsel to the official committee of unsecured creditors (if any) appointed in these Chapter 11 Cases; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. If no objections to entry

of the Final Order are filed and served, the Court may enter such Final Order without further notice or hearing.

3. The Debtors are authorized, but not directed, on an interim basis to: (a) maintain and continue operating the Cash Management System described in the Motion, a diagram of which is attached to the Motion as <u>Exhibit C</u>, and honor any prepetition obligations related thereto; (b) designate, maintain, and continue to use on an interim basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on <u>Exhibit D</u> attached to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (d) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; (e) pay the Bank Fees (including any prepetition amounts); and (f) open new debtor-in-possession bank accounts or close existing Bank Accounts in the ordinary course of business in their discretion; *provided* that (i) any new account opened by the Debtors is opened as a debtor-in-possession account with a bank that has executed (or is willing to execute) a Uniform Depository Agreement ("<u>UDA</u>") with the U.S. Trustee; *provided* that any account opened by any of the Debtors on or after the Petition Date at any Bank shall, for purposes of this Order, be deemed a Bank Account as if it had been listed on <u>Exhibit D</u> attached to the Motion and entitled to the relief granted herein.

4. The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records.

4

5. As soon as practicable after entry of this Order, the Debtors shall serve a copy of this Order on the Banks.

6. The Debtors are authorized, but not directed, to: (a) pay undisputed prepetition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to the Banks as service charges for the maintenance of the Cash Management System; (b) reimburse the Banks for any claims arising before or after the Petition Date in connection with customer checks deposited with the Banks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts in the ordinary course of business, to the same extent the Debtors were responsible for such items prior to the Petition Date.

7. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, including disbursements by the Third-Party Managers on behalf of the Debtors, regardless of which entity pays those disbursements.

8. Notwithstanding anything contained herein, the Third-Party Managers are authorized to continue to use the Third-Party Accounts pursuant to the terms of the Third-Party Management Agreements in the ordinary course of business and subject to the Third-Party Management Agreements, including any approved budgets and to use funds held in the Third-Party Accounts in the ordinary course of business.

9. The Debtors are authorized, but not directed, to continue to engage in, perform under, and honor Intercompany Transactions,[3] and make certain payments in connection therewith, in each case, in the ordinary course of business and consistent with the Debtors' historical

---

[3] For the avoidance of doubt, Intercompany Transactions refer solely to transactions between Debtors and does not include (or intend to include) transactions with non-Debtor parties.

practices, subject to this Order. The Debtors are authorized, but not required or directed, to set off mutual postpetition obligations relating to intercompany receivables and payables through the Cash Management System. In connection with any Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts. All objections and rights are preserved as to any party's rights, without prejudice, to dispute Debtors' Intercompany Transactions through confirmation.

10. If such Intercompany Transactions involve transfers from accounts held by the DSTs or are otherwise designated by the Debtors as DST accounts, including the DST Operating Accounts, the DST Distribution Accounts, the DST Loan Clearing Accounts, the DST Debt Reserve Accounts, and the DST Trust Reserve Accounts (collectively, the "DST Accounts"), the Intercompany Transactions shall be subject to paragraph 11 and further limited as follows: Money may only be transferred from such DST Accounts only for the following uses (1) the payment and service of secured debt owed by a DST to the Prepetition Secured Parties (as defined in the DIP Motion), (2) fees and expenses provided for in the applicable Master Lease or Trust Agreement which are actually incurred on behalf of the DST, and (3) all other administrative expenses incurred in these Chapter 11 Cases and allocated to the relevant DST. All parties reserve their rights to argue over these uses at a final hearing on this Cash Management Motion. Further, all parties reserve rights to seek an accounting for Reallocation Fees and other fees and expenses transferred from the DST Accounts to other Debtors following the Petition Date, including related Signatory Trustees and Master Tenants. No funds generated by a DST and/or the operations of its property shall be used for Intercompany Transactions, except as provided in subsection (3) of this paragraph.

11. In the interim period, the Debtors shall not use the funds of (a) the DST Debt Reserve Accounts, or (b) the DST Trust Reserve Accounts of Communities with Prepetition Secured Parties without written consent of such Prepetition Secured Parties or further order of the Court.

12. The relief granted in this Order with respect to the postpetition Intercompany Transactions shall not constitute a finding as to the validity, priority, or status of any prepetition Intercompany Transaction from which a claim may have arisen, and the Debtors expressly reserve any and all rights with regard to the validity, priority, or status of any prepetition claim or any Intercompany Transaction from which such claim may have arisen. Notwithstanding anything to the contrary in this Order, nothing in this Order will impact or prejudice the ability of any party (including the Debtors) to challenge, avoid, unwind, recharacterize, or assert any claim or cause of action with respect to any Intercompany Transaction.

13. Those certain agreements existing between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Bank (including, for the avoidance of doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Bank agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

14. The Debtors are authorized, in the ordinary course and consistent with prepetition practices, to open new bank accounts or close any existing Bank Account and enter into any ancillary agreements, including new deposit control agreements, related to the foregoing, as the Debtors may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreement with the Banks, as applicable, so long as any such new account is opened as a debtor-in-possession account with a bank that is (a) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines or otherwise approved by the U.S. Trustee as an acceptable depository institution in these Chapter 11 Cases; and (b) agrees to be bound by the terms of this Order; *provided* that the Debtors shall provide notice to the U.S. Trustee of the opening or closing of such account. For the avoidance of doubt, the Debtors shall coordinate with the Prepetition Secured Parties prior to the closure of any account in which they may have an interest, including to ensure any security interests of the Prepetition Secured Parties are preserved and adequately protected.

15. The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Bank.

16. In the event that any third-party deposits funds (whether before, on or after, the Petition Date) into a bank account other than the Bank Accounts identified by the Debtors to such third party, such funds shall as soon as reasonably practicable be swept into the correct account. For the avoidance of doubt, if an Intercompany Transaction transfers funds into an incorrect Bank Account, the Debtors reserve the right, without need for a hearing or order, to, as soon as reasonably practicable, sweep such funds into the correct account.

17. The Debtors shall have 45 days from the Petition Date to comply with the deposit and investment requirements of Bankruptcy Code section 345(b). Such extension is without prejudice to the Debtors' right to request a further extension of the time to comply with, or waiver of the requirements of, Bankruptcy Code section 345(b).

18. The Banks are authorized (a) to continue to service and administer the Bank Accounts as accounts of each respective Debtor as a debtor-in-possession without interruption and in the usual and ordinary course; (b) to receive, process, honor, and pay any and all checks, drafts, wires, or ACH transfers drawn on the Bank Accounts after the Petition Date by the holders or makers thereof (to the extent of available funds), as the case may be, including with respect to checks or other items issued prior to the Petition Date to the extent instructed by the Debtors, authorized by this Order, or a further order of this Court; (c) to debit the Bank Accounts in the ordinary course of business and without further order of the Court on account of all Bank Fees and costs in connection with any checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date, which have been dishonored or returned unpaid for any reason, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (d) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as to service charges for the maintenance of the Cash Management System. Notwithstanding the foregoing, no checks or other debits issued against the Bank Accounts prior to the commencement of these Chapter 11 Cases shall be honored, except as otherwise set forth in this Order or as authorized by other or further order of this Court and as represented by the Debtors to such Banks. The Debtors are authorized to issue postpetition checks, or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that have been

(a) dishonored as a consequence of these Chapter 11 Cases and (b) authorized by an order of this Court.

19. The Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court. Notwithstanding any other provision of this Order, the Banks shall not be deemed to be, nor shall be liable to, the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order (a) following the Debtors' instructions or Debtors' representations as to any order of this Court; (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item-handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item-handling procedures.

20. Subject to the terms of this Order, and only to the extent sufficient funds are available in each applicable Bank Account, all Banks at which the Bank Accounts are maintained are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, credit card payments, and wire transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

21. The Debtors are authorized, but not directed to (a) pay undisputed prepetition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to the Banks as service charges for the maintenance of the Cash Management System and (b) reimburse the Banks for any claims arising before or after the Petition Date in connection with checks deposited with

the Banks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts in the ordinary course of business, to the same extent the Debtors were responsible for such items prior to the Petition Date.

22. The Debtors are authorized, but not directed, to enter into, engage in, and continue to perform under the Intercompany Transactions in the ordinary course of business and in compliance with past practices by and among the Debtors. All net Intercompany Claims against a Debtor held by another Debtor arising from postpetition Intercompany Transactions, if any, shall be entitled to administrative expense priority pursuant to Bankruptcy Code section 503(b)(1).

23. Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements. For the avoidance of doubt, for the purposes of calculating quarterly fees, the Debtors' disbursements shall include the disbursements of Third-Party Managers made on behalf of the Debtors for the Communities.

24. The banks and financial institutions on which checks were drawn or electronic payment requests made for payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

25. Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder (or prohibitions thereof), and any authorization (or prohibitions) contained herein, shall be subject to and in accordance with any interim and final orders, as

applicable, authorizing or approving any postpetition debtor in possession financing or use of cash collateral for the Debtor (such orders, the "DIP Order"), including the budget attached thereto. To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

26. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to the relief granted herein.

27. Nothing contained in the Motion or this Order nor any actions taken pursuant to the relief granted herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to dispute the amount of, basis for, or validity of any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in the Motion, or in this Order granting the relief requested by the Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an implication or admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors'

estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Order are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law. Any payment made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute the extent, perfection, priority, validity, or amount of such claim.

28. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

29. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

30. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

31. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32. The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

33. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # # **END OF ORDER** # # #

Prepared and presented by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
**MCDERMOTT WILL & SCHULTE LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: mhelt@mcdermottlaw.com
jhaake@mcdermottlaw.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
Landon Foody (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: dsimon@mcdermottlaw.com
cdingman@mcdermottlaw.com
lfoody@mcdermottlaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*