| | |
|---|---|
| **RIKER DANZIG LLP** | **CARRINGTON, COLEMAN,** |
| Joseph L. Schwartz  (*Pro Hac Vice* Pending) | **SLOMAN & BLUMENTHAL, L.L.P.** |
| Curtis M. Plaza (*Pro Hac Vice* Pending) | Mark A. Castillo |
| Jorge Sanchez | J. Michael Sutherland |
| 7 Giralda Farms, Suite 250 | Robert Rowe |
| Madison NJ 07940-1051 | 901 Main St., Suite 5500 |
| Telephone: (973) 451-8400 | Dallas, TX 75202 |
| Email:  jschwartz@riker.com | Telephone: 214-855-3000 |
|      cplaza@riker.com | Email:  macastillo@ccsb.com |
|      jsanchez@riker.com |      msutherland@ccsb.com |
| *Lead Counsel to Provident Bank* | *Co-Counsel to Provident Bank* |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | Case No. 26-90004 (MXM) |
| Debtors. | |

**OBJECTION OF PROVIDENT BANK, AS SUCCESSOR BY MERGER TO LAKELAND BANK, TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) AUTHORIZING USE OF CASH COLLATERAL; (IV) GRANTING ADEQUATE PROTECTION; AND (V) GRANTING RELATED
RELIEF (D.I. 28) (THE "DIP MOTION")**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

Provident Bank, as successor by merger to Lakeland Bank ("Provident"), by and through

undersigned counsel, hereby files this final objection (the "Final Objection") to the DIP Motion

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

1

(D.I. 28) filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). In support, Provident respectfully states as follows:

### PRELIMINARY STATEMENT

Provident objects to the DIP Motion and entry of a final order as to the following four Delaware Statutory Trust debtors that own the real properties subject to Provident's mortgages:

- Inspired Senior Living of Hamilton DST (Case No. 26-90161) ("Hamilton DST");

- IHC - Candle Light Cove DST (Case No. 26-90098) ("Candle Light DST");

- Inspired Senior Living of North Haven DST (Case No. 26-90160) ("North Haven DST"); and

- Inspired Senior Living of Dunedin DST (Case No. 26-90113) ("Dunedin DST", and with the others above, each a "Provident DST Debtor").

Debtors are attempting to run these bankruptcy cases as though Debtors comprise a single consolidated corporate organization, with enterprise-level cash pooling, "allocations," and global budgets. That is not the legal reality. Each Provident DST Debtor is separate entity and requires separate cash collateral/adequate protection analyses. Debtors cannot employ a "joint enterprise" narrative to justify using cash generated by one debtor or facility to fund the restructuring of others, or to impose overhead and professional fees across estates.

Debtors have not provided debtor-specific financial disclosures and budgets Debtors represented would be produced.

The Bankruptcy Code prohibits the Debtors from using cash collateral unless each entity with an interest consents or the Court authorizes such use after notice and hearing, and the Court must prohibit or condition such use as necessary to provide adequate protection. 11 U.S.C. §§ 363(c)(2), 363(e). The Debtors bear the burden of proof on adequate protection. 11 U.S.C. § 363(p)(1).

As to each Provident DST Debtor, Provident does not consent to use of its cash collateral, and Debtors have not carried their burden to prove adequate protection. Debtors should not be permitted to use Provident's cash collateral absent such showing.

Provident also notes that Debtors have also not yet made an adequate showing as to each Provident DST Debtor as to their eligibility or authority to file for relief under the Bankruptcy Code, an issue that must be addressed by Debtors in order for the DST cases even to continue. Provident reserves all rights to further address.

## JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. Provident's Collateral and Position as a Prepetition Secured Party

2. Provident is a prepetition secured lender to the Provident DST Debtors pursuant to four separate mortgage loan facilities secured by collateral packages, including mortgages/deeds of trust, security agreements, assignments of rents and leases, and lender-controlled reserve accounts. Provident has designated and filed, as potential hearing exhibits, the loan agreements, notes, mortgages/security agreements, assignments of rents/leasing documents, trust documents, and UCC filings relating to each of Dunedin DST, Hamilton DST, Candle Light DST, and North Haven DST (D.I. 184), and refers to such documents as support for the statements herein.

3. As of the petition date, each of the loans described below was in payment default.

**The Hamilton Loan**

4.      On June 15, 2022, Provident Bank, as successor by merger to Lakeland Bank, entered into a Loan Agreement with Hamilton DST, pursuant to which Provident extended a loan in the original principal amount of $58,500,000.00 (the "Hamilton Loan").

5.      The Hamilton Loan was made, among other purposes, to finance the acquisition of the independent living, assisted living, and memory care facility located at 2560 Kuser Road, Hamilton, New Jersey 08691, designated as Block 2173, Lot 8.01 on the tax map of the Township of Hamilton, County of Mercer, State of New Jersey (the "Hamilton Mortgaged Property").

6.      The Hamilton Loan is evidenced by a promissory note dated June 15, 2022 and is secured by, among other things, a Mortgage and Security Agreement encumbering the Hamilton Mortgaged Property, Security Agreement, and an Assignment and Subordination of Master Lease Agreement, each dated as of June 15, 2022. In connection with the Hamilton Loan, the Hamilton DST deposited $1,179,366.00 with Provident to establish a lender-controlled reserve account from which Provident may withdraw debt service payments in accordance with the loan documents, some of which was withdrawn by Provident to satisfy prepetition debt service payments upon the Hamilton DST's default.

7.      The Hamilton DST defaulted under the Hamilton Loan by failing to make scheduled debt service payments for October, November, and December 2025, and by failing to comply with other obligations under the loan documents.

**The Candle Light Loan**

8.      On November 1, 2021, Provident entered into a Loan Agreement with Candle Light DST, pursuant to which Provident extended a loan in the original principal amount of $16,230,000.00 (the "Candle Light Loan").

9. The Candle Light Loan was made, among other purposes, to finance the acquisition of the assisted living facility located at 106 W. Earle Avenue, Easton, Maryland 21601, designated as Parcel ID 01-069055 on the tax map of the Town of Easton, County of Talbot, State of Maryland (the "Candle Light Mortgaged Property").

10. The Candle Light Loan is evidenced by a promissory note and is secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, and Security Agreement encumbering the Candle Light Mortgaged Property, an Assignment of Leases and Rents and Security Agreement, and an Assignment and Subordination of Master Lease Agreement, each dated as of November 1, 2021. In connection with the Candle Light Loan, the Candle Light DST deposited $450,000.00 with Provident to establish a lender-controlled reserve account, some of which was withdrawn by Provident to satisfy prepetition debt service payments upon the Candle Light DST's default.

11. The Candle Light DST defaulted under the Candle Light Loan by failing to make scheduled debt service payments for October, November, and December 2025, and by failing to comply with other obligations under the loan documents.

**The North Haven Loan**

12. On September 1, 2023, Provident entered into a Loan Agreement with Inspired Senior Living of North Haven DST (the "North Haven DST"), pursuant to which Provident extended a loan in the original principal amount of $20,550,000.00 (the "North Haven Loan").

13. The North Haven Loan was made, among other purposes, to finance the acquisition of the independent living, assisted living, and memory care facility located at 201 Clintonville Road, North Haven, Connecticut 06473, designated as Map/Block/Lot 068-179 (Unique ID No.

307060) on the tax map of the Town of North Haven, County of New Haven, State of Connecticut (the "North Haven Mortgaged Property").

14.     The North Haven Loan is evidenced by a promissory note dated September 1, 2023 and is secured by, among other things, a Commercial Open-End Mortgage Deed, Fixture Filing and Security Agreement dated June 19, 2023 and effective September 1, 2023, together with an Assignment of Rents and Leases, and an Assignment and Subordination of Master Lease Agreement dated June 19, 2023 and effective September 1, 2023. In connection with the North Haven Loan, the North Haven DST deposited $812,181.00 with Provident to establish a lender-controlled reserve account, some of which was withdrawn by Provident to satisfy prepetition debt service payments upon the North Haven DST's default.

15.     The North Haven DST defaulted under the North Haven Loan by failing to make scheduled debt service payments for October, November, and December 2025, and by failing to comply with other obligations under the loan documents.

**The Dunedin Loan**

16.     On September 14, 2022, Provident entered into a Loan Agreement with Inspired Senior Living of Dunedin DST, a Delaware statutory trust (the "Dunedin DST"), pursuant to which Provident extended a loan in the original principal amount of $15,708,000.00 (the "Dunedin Loan").

17.     The Dunedin Loan was made, among other purposes, to finance the acquisition of the independent living, assisted living, and memory care facility located at 880 Patricia Avenue, Dunedin, Florida 34698-2560, designated as Parcel No. 26-28-15-00000-330-0100 on the tax maps of the City of Dunedin, County of Pinellas, State of Florida (the "Dunedin Mortgaged Property").

18. The Dunedin Loan is evidenced by a promissory note dated September 14, 2022 and is secured by a Mortgage, Security Agreement, and Fixture Filing dated September 1, 2022 and effective September 14, 2022, together with an Assignment of Leases and Rents and an Assignment and Subordination of Master Lease Agreement dated September 14, 2022. In connection with the Dunedin Loan, the Dunedin DST deposited $412,335.00 with Provident to establish a lender-controlled reserve account, some of which was withdrawn by Provident to satisfy prepetition debt service payments upon the Dunedin DST's default.

19. The Dunedin DST defaulted under the Dunedin Loan by failing to make scheduled debt service payments for October, November, and December 2025, and by failing to comply with other obligations under the loan documents.

B. **The DIP Motion's Features**

20. The DIP Motion seeks approval of postpetition financing, liens, superpriority claims, cash collateral use, adequate protection, and related relief. It also seeks approval of an Allocation Protocol designed to allocate DIP obligations and "benefits" among Debtors.

21. The DIP Motion also proposes a Carve Out and related mechanics that—absent clear sourcing limits and prepetition secured lender protections—can operate to divert value from secured collateral streams (including rents/proceeds) and prime or dilute secured lender protections.

C. **Eligibility and Authority**

22. A separate party in interest (Concorde) has raised, in the context of other DST debtors, the core threshold issues of (i) authority to file and (ii) eligibility of DST debtors where the trust documents state the DSTs are not "business trusts" and are limited-purpose investment trusts. Similar issues may apply to the Provident DST Debtors, and Debtors have not made an

adequate showing that the Provident DST Debtors are properly before this Court or may lawfully incur postpetition debt and liens or have their collateral streams diverted to fund a broader enterprise restructuring.

## **OBJECTION AND GROUNDS FOR RELIEF**

### A. **Eligibility and Authority**

23. Only a "person" may be a debtor in bankruptcy. 11 U.S.C. § 109(a). "Person" includes a "corporation," and "corporation" includes a "business trust." 11 U.S.C. §§ 101(41), 101(9)(A)(v).

24. The DST governing documents state that the DSTs are not "business trusts." If the Provident DST Debtors are not business trusts, they would not be eligible to be debtors under the Bankruptcy Code.

25. Debtors—not creditors—bear the burden to demonstrate that each debtor is eligible to be in bankruptcy. Debtors have not made an adequate, debtor-by-debtor showing that the Provident DST Debtors are "business trusts" or otherwise eligible debtors. Debtors must also demonstrate that each debtor obtained proper authorization to commence its bankruptcy case under its governing documents and applicable law. Debtors have not provided DST-by-DST proof of authorization for the Provident DST Debtors sufficient to support the extraordinary relief requested here.

26. The fact that a case has been filed and is pending does not cure a lack of authority. No action or inaction by any creditor confers authority to file or cures an unauthorized filing. If these cases are unauthorized as to the Provident DST Debtors, that is a threshold defect that cannot be waived by creditor silence.

27. These authority issues matter immediately because Debtors seek final authority for the Provident DST Debtors to incur postpetition debt obligations, grant liens and superpriority claims, and have their collateral streams diverted through budgets/allocations and carve-out mechanics. If authority is not demonstrated, those actions should not be approved

28. Provident reserves all rights regarding the eligibility and authority issues, including to file motions to dismiss the Provident DST Debtor bankruptcy cases.

**B. The Debtors Are Not One Consolidated Corporate Entity; Cross-Estate Funding and "Enterprise Allocations" Are Improper Absent Debtor-Specific Proof and Authority**

29. Debtors seek to treat the case as an enterprise restructuring, relying on global budgeting and allocations. But the Provident DST Debtors are separate estates, and Provident's collateral is tied to those estates and their properties. Cash generated by the Provident DST Debtors—particularly rents and property-level proceeds—cannot be used to fund other facilities and debtors absent (i) lawful authority, (ii) debtor-specific court approval, and (iii) adequate protection.

30. Provident therefore objects to any final order that authorizes:

- use of cash collateral from the Provident DST Debtors for enterprise overhead or other debtors' restructuring expenses;
- intercompany transfers that are not strictly limited to debtor-specific uses and debtor-specific benefit;
- allocations that are not supported by debtor-specific budgets and debtor-specific sources/uses.

31. Debtors represented at the outset that debtor-specific sources and uses of cash collateral would be provided. A month into the case, Debtors have not produced property-by-property budgets, sources/uses, and allocation back-up for the Provident DST Debtors. Instead,

Debtors propose a global budget. The Court should not authorize continued cash collateral use for these four debtor estates absent debtor-specific budgets, reporting, and enforceable siloing.

### C. The Carve Out Is Functionally "Debt and Liens" Against the Provident DST Debtors; It Cannot Be Funded from Provident Collateral or Prime Provident's Protections

32. Debtors already have DIP financing, with substantial DIP proceeds being used to fund professional fees and restructuring costs. Debtors now also seek final approval of a Carve Out on top of DIP financing, which Carve Out is senior to multiple protection packages. In practical operation, the Carve-Out and its trigger-funding mechanics would operate as a mandated extraction of value from collateral and cash streams — i.e., de facto debt and liens assessed against secured collateral streams.

33. Provident objects to any carve-out construct that (i) primes prepetition liens or adequate protection liens by drafting ambiguity; (ii) can be funded from rents/proceeds/reserves of the Provident DST Debtors; or (iii) can be increased without the consent of affected Prepetition Secured Lenders.

34. If the estate needs funding, it should come first from DIP proceeds and unencumbered assets and second from a Carve-Out of DIP financing collateral, and not from Provident collateral. Debtors have not made a sufficient showing to allow priming liens.

### D. Adequate Protection Has Not Been Shown; "Replacement Liens and Superpriority" Are Illusory if Primed or Undercut

35. "Secured creditors are entitled to 'adequate protection' where the debtor retains use or possession of collateral during the pendency of a proceeding." *In re Triplett*, 87 B.R. 25, 26 (Bankr. W.D. Tex. 1988). The Bankruptcy Code prohibits debtors from using cash collateral without the consent of "each entity that has an interest in such cash collateral," unless the bankruptcy court, "after notice and a hearing, authorizes such use . . . in accordance with the

provisions of this section." 11 U.S.C. § 363(c)(2). Further, Section 363(e) mandates that the bankruptcy court "prohibit or condition such use . . . as is necessary to provide adequate protection." *Id.* § 363(e). "[R]estriction of the use of cash collateral should only occur where the facts show that failure to restrict use may 'impair' the creditor and deny the creditor adequate protection." *In re Triplett*, 87 B.R. at 27. "The protection afforded a creditor whose cash collateral is permitted by the court to be used by a debtor in possession is whatever condition is deemed necessary to provide adequate protection of the creditor's interest." *In re Quality Beverage Co., Inc.*, 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995).

36. Provident objects to any final relief that would allow the Debtors to use, prime, replace, or dilute its collateral rights without the protections required by the Bankruptcy Code

37. Debtors have not demonstrated that Provident will be adequately protected for: (i) the use of Provident cash collateral (rents and proceeds); (ii) the risk of commingling and cross-estate leakage through allocations; (iii) the priming/economic effect of the Carve-Out on adequate protection and proceeds.

38. Moreover, "diminution-only" language limited to "cash collateral" is insufficient. Adequate protection must address diminution of the secured creditor's interest in all relevant prepetition collateral, including diminution attributable to allocations and carve-out funding.

39. Debtors have not made the debtor-specific factual showing required—particularly as to the Provident DST Debtors—because they have not provided debtor-specific budgets, sources/uses, and reporting that would permit Provident or the Court to evaluate diminution and adequate protection demonstration on a debtor-by-debtor basis.

40. As a minimum condition to any final order authorizing use of cash collateral as to the Provident DST Debtors, the Court must require:

- a 13-week budget for each Provident DST Debtor;
- weekly reporting of receipts/disbursements and variance per debtor/property;
- a DIP ledger and allocation support that is auditable and tied to actual benefit;
- strict property-level siloing and no cross-estate funding absent consent/order; and
- enforceable events of default/remedies for noncompliance.

41. Debtors' request to operate with a global budget and generalized allocation concept is not an adequate substitute.

42. In addition to the foregoing, Provident expressly reserves the right to seek that each Provident DST Debtor make payment of postpetition interest to Provident as an oversecured creditor pursuant to 11 U.S.C. 506(b), including from any available property-level cash collateral or from the debt service reserve accounts held by Provident as collateral, as may be authorized by further order of the Court. Provident further reserves the right to make any factual demonstration necessary to support such relief, including evidence of collateral value and oversecured status.

### E.     Minimum Additional Protections

43. In the alternative, to the extent that the Court enters an Order over Provident's objections, Provident respectfully requests that such relief be conditioned upon:

- Reporting of information: provide information to Provident that is sufficient for Provident to understand property-level cash flows and reserve accounts, and reporting already being delivered to the DIP lender, including property-level budgets, variance reporting, and relevant valuation/appraisal materials as applicable;
- Diminution protections: clarification of diminution protections provided to Provident to cover collateral rights;
- No priming: removal of provisions priming of Provident's collateral rights;
- § 506(c) and § 552(b) "equities of the case" waivers
- Allocation: clarify to be Debtor-specific;
- Oversecured creditor rights: permit Provident to demonstrate and assert rights of an oversecured creditor;

OBJECTION OF PROVIDENT BANK
TO DEBTORS' DIP FINANCING MOTION

- <u>§ 363(k) preservation</u>: confirm Provident's credit-bid rights in any sale of their collateral;
- <u>Interest swap rights</u> preserved as per protections of Bankruptcy Code;
- <u>Event of default provisions</u> Provide for remedies upon default of provisions of the Order;
- <u>Reservation of rights</u> on issues as per below.

44. These protections are standard, highly material, and are included in the secured lender proposed modifications in Exhibit A.

## **Reservation of Rights**

45. Provident reserves all rights, claims, defenses, and remedies, including without limitation the right to:

- seek dismissal of any Provident DST debtor case for lack of eligibility or authority;
- seek stay relief, abandonment, or other remedies with respect to Provident collateral;
- object to any allocation, carve-out funding source, or use of collateral proceeds;
- object to any sale process affecting Provident collateral or credit bid rights; and
- seek such other relief as may be appropriate.

## **CONCLUSION**

WHEREFORE, Provident respectfully requests that the Court sustain this Objection, deny the DIP Motion as to the Provident-related DSTs, or, alternatively, condition any final order on inclusion of the Requested Relief in Exhibit A, and grant such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: Dallas, TX
February 28, 2026

Respectfully submitted,

By: /s/ J. Michael Sutherland, Esq.

**RIKER DANZIG LLP**
Joseph L. Schwartz (*pro hac vice* pending)
Curtis M. Plaza (*pro hac vice* pending)
Jorge Sanchez
7 Giralda Farms, Suite 250
Madison, New Jersey 07940
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
jschwartz@riker.com
cplaza@riker.com
jsanchez@riker.com

*Lead Counsel to Provident Bank*

**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
J. Michael Sutherland, Esq.
Mark A. Castillo, Esq.
901 Main Street, Suite 5500,
Dallas, Texas 75202
Telephone: (214) 855-3000
Facsimile: (214) 580-2614
macastillo@ccsb.com
msutherland@ccsb.com

*Co-Counsel to Provident Bank*

## CERTIFICATE OF SERVICE

I hereby certify that (a) I caused a copy of the foregoing document to be served, on February 28, 2026, by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas, and (b) I will cause, on March 2, 2026, a copy of the foregoing document to be served by United States First Class Mail on those persons designated in the ECF Filing System as persons to whom "Notice will not be electronically mailed."

*/s/ J. Michael Sutherland*
J. Michael Sutherland

# EXHIBIT A

## Provident Alternative Relief Proposed Final Order Modifications

**1.      Reporting: Add Provident to Reporting Requirements**

Paragraph 17 (Reporting / Information) and any other reporting provisions: ensure all Prepetition Secured Parties receive: DIP reporting, variance reporting, and property-level budgets/appraisals for their collateral.

**2.      Fix "Diminution" scope (currently limited to Cash Collateral only)**

Amend ¶14 preamble (Adequate Protection), which currently states "solely to the extent of any Diminution…in Cash Collateral."

"As adequate protection for the Debtors' use of Cash Collateral of each Prepetition Secured Party and other Diminution that occurs in the Prepetition Collateral of the Prepetition Secured Party, including as a consequence of any Carve Out, and solely to the extent of any Diminution in the Prepetition Secured Party's interests in Prepetition Collateral, including, without limitation, Cash Collateral, such Prepetition Secured Party shall receive…"

**3.      Carve-out priority language—remove "primes Prepetition Liens"; add lender-consent requirement**

Amend ¶25(a) (Priority of Carve Out) which subordinates "Prepetition Liens (subject to entry of a Final Order)" to the carve-out:

- Clarify: Carve Out is senior to DIP liens and DIP superpriority claims, but not senior to Provident liens or rights absent Provident's consent.
- 25(a) at end: "For avoidance of doubt, nothing in ¶25 is intended to prime, subordinate, or otherwise impair any Prepetition Liens on Prepetition Collateral absent the affected Prepetition Secured Party's express consent or further order after notice and hearing."
- Add at end of 25: "Notwithstanding anything to the contrary, the Carve Out shall be funded first from DIP proceeds and unencumbered cash. No Carve Out Trigger Notice shall authorize or require use of any Prepetition Secured Party Restricted Accounts, reserve accounts, or sale proceeds of Prepetition Collateral absent the affected Prepetition Secured Party's consent or further order of the Court after notice and hearing."

**4.      Add § 506(c) waiver and § 552(b) "equities of the case" waiver**

"Section 506(c) Waiver; No Surcharge; No Implied Consent.  Notwithstanding anything to the contrary in this Interim/Final Order, the DIP Documents, the Approved Budget, the Allocation Protocol, or otherwise, the Debtors and their estates waive any and all rights under section 506(c) of the Bankruptcy Code to surcharge, charge, assess, or recover from (i) any Prepetition Collateral (including any Cash Collateral and any proceeds, products, offspring, profits, or rents thereof) of any Prepetition Secured Party, and (ii) any Adequate Protection Liens or proceeds

thereof, for any costs, expenses, fees, or charges of any nature whatsoever (including, without limitation, administrative expenses, professional fees, costs of preserving or disposing of collateral, and sale-related costs), whether incurred prepetition or postpetition. No consent to any surcharge shall be implied by any Prepetition Secured Party's conduct, silence, inaction, failure to object, or participation in these Chapter 11 Cases; any consent must be express and in writing."

"Section 552(b) Waiver. The Debtors waive any right to seek, and no party shall seek, to limit the postpetition effect of any Prepetition Secured Party's liens on proceeds, products, offspring, profits, or rents under section 552(b) of the Bankruptcy Code (including under the 'equities of the case' exception), except with the affected Prepetition Secured Party's prior written consent or further order of the Court entered after notice and an evidentiary hearing."

5. **Allocation Protocol— make Debtor specific**

Require weekly DIP Ledger and allocation schedules to be delivered as to each Provident DST Debtor with backup support and true-ups, and prohibit charging allocated costs to cash collateral unless (i) budgeted, (ii) for benefit of that specific property, and (iii) consistent with loan documents:

"Allocation Disputes; Escrow; No Prejudice. Any Prepetition Secured Party may object to (i) the Allocation Methodology, (ii) any interim allocations, or (iii) any proposed true-up. Pending resolution by agreement or further order of the Court, the Debtors shall segregate and escrow any disputed allocation amounts to the extent such amounts are proposed to be funded from, charged against, or deducted from proceeds of such Prepetition Secured Party's Prepetition Collateral. No interim allocation, ledger entry, or payment shall constitute an admission, waiver, or adjudication of the propriety of the Allocation Methodology or any allocation as against any Prepetition Secured Party."

6. **Oversecured Interest Rights; No Waiver; Current-Pay Mechanism.**

"Oversecured Interest Rights; Reservation. Nothing in this Interim/Final Order, the DIP Documents, the Approved Budget, the Allocation Protocol, or any other order entered in these Chapter 11 Cases shall be deemed to waive, limit, adjudicate, or prejudice any Prepetition Secured Party's rights, if any, under section 506(b) of the Bankruptcy Code to postpetition interest (including, to the extent applicable and permitted, default-rate interest) and to reasonable fees, costs, and charges provided for under the applicable loan documents or applicable nonbankruptcy law, to the extent such Prepetition Secured Party is or becomes oversecured. To the extent (and only to the extent) a Prepetition Secured Party is oversecured and solely from the applicable Debtor's property-level cash collateral (including rents and proceeds) or reserve funds that are subject to such Prepetition Secured Party's liens and/or control under the applicable loan documents, the Debtors are authorized (but not required absent written agreement of the affected Prepetition Secured Party or further order of the Court) to make periodic payments on account of such postpetition interest in accordance with the Approved Budget and the applicable loan documents; provided that (i) any dispute as to oversecured status, rate, amount, or entitlement is preserved and (ii) nothing herein authorizes use of any Prepetition Secured Party Restricted

OBJECTION OF PROVIDENT BANK
TO DEBTORS' DIP FINANCING MOTION

Accounts (as defined in the Cash Management Order) except in accordance with the applicable loan documents or with such Prepetition Secured Party's written consent."

**7.    Prepetition Secured Lenders' Credit Bid**

"Sale and Credit Bidding. Subject to section 363(k) of the Bankruptcy Code (and any limitation imposed by the Court for "cause" shown), each Prepetition Secured Party shall have the right to credit bid up to the full amount of such Prepetition Secured Party's allowed secured claim (including, to the extent allowed under applicable law and the Bankruptcy Code, any accrued interest, fees, expenses, and other amounts constituting part of such allowed secured claim) in any sale, transfer, or other disposition of any assets constituting such Prepetition Secured Party's Prepetition Collateral (or any portion thereof), whether pursuant to section 363 of the Bankruptcy Code or pursuant to a chapter 11 plan (including under section 1129(b)(2)(A)), and the Debtors shall cooperate in good faith to effectuate such credit bid rights (including, upon reasonable advance notice, permitting assignment of such credit bid rights to an affiliate, designee, or newly formed acquisition vehicle)."

**8.    Interest Swap Preservation – consistent with Bankruptcy Code**

"Nothing in this Order shall impair or modify any Prepetition Secured Party and/or any applicable swap counterparty's rights and remedies under any interest rate swap/hedge documents, including rights to terminate/close out and exercise safe-harbor remedies to the fullest extent permitted under the Bankruptcy Code."

**9.    Events of Default**

Add Events of Default tied to: commingling, unauthorized cross-use, reserve account access, budget variance, failure to report, and unauthorized allocations—each with a short notice/cure and expedited relief.

**10.    Reservation of Rights**

Clarification in the Order that Provident reserves rights, among other things:
- To seek dismissal of any Provident DST debtor case for lack of eligibility or authority;
- To object to any allocation, carve-out funding source, or use of collateral proceeds.