Eric L. Johnson (Admitted *Pro Hac Vice*)
Brian M. Devling (Admitted *Pro Hac Vice*)
Andrea M. Chase (*Pro Hac Vice* Pending)
**SPENCER FANE LLP**
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 – Telephone
(816) 474-3216 – Facsimile
Email: ejohnson@spencerfane.com
Email: bdevling@spencerfane.com
Email: achase@spencerfane.com

Jason P. Kathman (Texas Bar No. 24070036)
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email: jkathman@spencerfane.com

**COUNSEL FOR UMB BANK**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC,** *et al*[1] | § § § | **Case No. 26-90004 (MXM)** |
| | § | **(Joint Administration Requested)** |
| **Debtors.** | § | |

### UMB BANK'S OBJECTION TO DEBTORS' DIP MOTION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

UMB Bank, N.A., as successor by merger to HTLF Bank ("**UMB**"), creditor and party in interest in the above jointly administered case, hereby files this its objection (the "**Objection**") to entry of a final order (the "Proposed Final Order") granting *Debtors' Emergency Motion for Entry for Interim and Final Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay,*

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' propose claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

*(V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "**DIP Motion**")[2] and in support thereof would respectfully show the Court the following:

## BACKGROUND

1. Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "**Code**") on February 2, 2026 (the "**Petition Date**").

2. UMB's borrower is debtor Inspired Senior Living of Eugene DST ("**Eugene DST**"). Pursuant to the terms of that certain Term Loan and Security Agreement dated April 14, 2023 (as amended, restated, supplement, or otherwise modified, the "**Loan Agreement**"), UMB extended a term loan to Eugene DST. A copy of the Loan Agreement is attached hereto as **Exhibit A**.

3. Debtor's obligations to UMB are further evidenced by that certain Term Note (the "**Note**") dated April 14, 2023, in the original principal amount of $15,750,000.00. A copy of the Note is attached hereto as **Exhibit B**.

4. The loan is secured by, among other things, that certain deed of trust, assignment of leases and rents, security agreement and fixture filing dated April 14, 2023, and recorded with Lane County, Oregon on April 14, 2023 (the "**Deed of Trust**"). A copy of the Deed of Trust is attached hereto as **Exhibit C**.

5. As further security for the loan, debtor Inspired Senior Living of Eugene MT, LLC ("**Eugene Master Tenant**", together with Eugene DST, the "**Eugene Debtors**"), executed that certain Collateral Assignment of Security Documents dated April 14, 2023 (the "**Collateral Assignment**"), pursuant to which Eugene Master Tenant assigned its rights in that certain Security Agreement between the Eugene Debtors and that certain Assignment of Management Agreement

---

[2] Capitalized terms not specifically defined herein shall have the meanings ascribed to them in the DIP Motion or the First Day Declaration, as applicable.

and Subordination of Management Fees among Volante Senior Living, LLC, Senior Housing Management Group, LLC, and the Eugene Debtors. A copy of the Collateral Assignment is attached hereto as **Exhibit D**.

6. As evidenced by the Loan Agreement, the Deed of Trust, and the Collateral Assignment, UMB's primary collateral is the facility located 2951 Coburg Road, Eugene, Oregon (the "**Eugene Facility**") along with the income generated from such facility.

7. Certain obligations owed to UMB are guaranteed by debtor Inspired Healthcare Capital, LLC, and Luke Lee (collectively, the "**Eugene Guarantors**"), pursuant to the terms of that certain Guaranty of Recourse Obligations dated May 20, 2025, and attached hereto as **Exhibit E**.

8. UMB is owed approximately $14,300,000.

## OBJECTION

**A.     The Proposed DIP Financing is Not Fair and Reasonable as to UMB.**

9. Post-petition financing is not considered fair or reasonable and cannot be approved when the proposed terms favor the interests of one class of creditors at the expense of another. *See In re Ames Dep't Stores,* 115 B.R. at 39-40 (("[P]roposed financing will not be approved where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate."); *In re Tenney Vill. Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (post-petition financing must not be used in a manner that "pervert[s] the reorganizational process from one designed to accommodate all classes of creditors and equity interests to one specially crafted for the benefit" of only a subset of the secured creditors). Likewise, post-petition financing may not be so favorable to a group of lenders to cause the bankruptcy process to serve only those lenders, contrary to the Congressional intent. *See In re Mid-State Raceway, Inc.*, 323 B.R. 40, 59 (Bankr. N.D.N.Y. 2005) ("[B]ankruptcy

courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the post-petition lender.") (*quoting In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992)).

10. The post-petition financing proposed in the DIP Motion (the "**Proposed DIP**") purports to use UMB's cash collateral to fund and support the operations of other jointly-administered debtors thereby benefitting those debtors and their creditors to the detriment of UMB. Although UMB is willing to continue to engage in negotiations with the Debtors regarding their use of UMB's cash collateral, the use of the cash collateral should be used primarily to preserve and protect UMB's collateral, not the collateral of other jointly-administered debtors. To the extent that the Debtors intend to loan UMB's cash collateral to other jointly-administered debtors, the Debtors are required to show adequate protection of such cash. *See* 11 U.S.C. § 363(c)(2), (e).

### B. The Debtors Are Required to Show Adequate Protection.

11. Pursuant to section 363(c)(2) of the Bankruptcy Code, Debtors may not use Cash Collateral unless each entity with an interest in such Cash Collateral consents, or the Court, after notice and hearing, authorizes the use of the same. *See* 11 U.S.C. § 363(c)(2). "This prohibition is both absolute and automatic…. The prohibition springs into being by operation of law. Unless and until the [c]reditor consents to the use of [cash collateral], or this Court enters an order permitting their use, they are not available for use." *In re Trujillo*, 485 B.R. 238, 251 (Bankr. D. Colo. 2012); *see also In re Williams*, 61 B.R. 567, 572 (Bankr. N.D. Tex. 1986) ("The Debtor's use of this cash collateral is *absolutely prohibited* by the term of Section 363 unless the creditor affirmatively consents to the use of the cash collateral; or the Court, after notice and a hearing, authorizes such use in accordance with Section 363(c).").

4

12. While UMB intends to negotiate with the Debtors about Cash Collateral, UMB has not come to terms regarding use of Cash Collateral. Accordingly, UMB does not consent to the use of its Cash Collateral on a final basis. In order for this Court to grant the DIP Motion and allow Debtors to use UMB's Cash Collateral, the Court must determine that UMB's interest therein is adequately protected so as not to detrimentally affect the "benefit of the bargain" that UMB made with the Debtors. Code §§ 361, 363(e); *In re Energy Partners, Ltd.*, 409 B.R. 211, 236 (Bankr. S.D. Tex. 2009) ("The focus of the requirement is to protect a secured creditor . . . from diminution in the value of its interest in collateral during the reorganization process."). It is the Debtors' burden to prove that UMB is adequately protected. *See* Code § 363(p)(1).

    **C.**    **The Carve Out is Not Consensual and is Inappropriate.**

13. UMB has several concerns related to the proposed Carve Out. First, the Carve Out is not consensual which is generally counter to well-established case law regarding carve outs. Second, there is no indication how the Carve Out will be allocated across the various bankruptcy estates, and as such, the determination and evaluation of adequate protection of the use of UMB's collateral is impossible. Finally, the Debtors propose that the Carve Out be senior to UMB's rights in its collateral, including any Adequate Protection Liens and Prepetition Secured Parties' Superpriority Claim, thus making the Carve Out essentially a priming post-petition financing. As explained herein, this is simply impermissible.

    *i.*    *The Carve Out is not Consensual.*

14. Carve Outs are consensual. *See In re California Webbing Indus., Inc.*, 370 B.R. 480, 483 (Bankr. D.R.I. 2007)(A carve out generally refers to "an agreement between a secured lender, on the one hand, and the trustee or debtor-in-possession, on the other, providing that a portion of the secured creditor's collateral may be used to pay administrative expenses."); *see also*

*In re White Glove, Inc.*, 1998 WL 731611 at *6 (Bankr. E.D. Pa. 1998)("it is essential to note that the carve out is a product of agreement between the secured party and the beneficiary of the carve out."). "[A]bsent an agreement to the contrary, a secured creditor's collateral may only be charged for administrative expenses, including attorney's fees, to the extent these expenses directly benefited that secured creditor." *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998); *see also In re Grimland*, 243 F.3d 228, 232-33 (5th Cir. 2001)(*citing French Mkt. Homestead, FSA v. P.C., Ltd. (In re P.C., Ltd.)*, 929 F.2d 203, 205 (5th Cir. 1991)).

15. The Carve Out proposed by the Debtors is <u>not</u> consensual, and as such is definitionally not a carve out. Instead, it is more appropriately characterized as a forced use of cash collateral. As described and outlined above, such forced (non-consensual) use of cash collateral requires showing adequate protection, but also to the extent that such cash collateral is being used to pay professional fees and administrative expenses, the Debtors are required to show that such expenses are the reasonable and necessary costs and expenses of preserving, or disposing of, such property to the extent that any benefit to the holder of such claim. *See* 11 U.S.C. § 506(c). In essence, the Debtors are obtaining a preemptive surcharge without showing the requirements of section 506(c). Courts in this district have already held that such preemptive surcharges in cash collateral are impermissible. *See In re MRI Beltline Indus., L.P.*, 476 B.R. 917, 923 (Bankr. N.D. Tex. 2012). Because the Carve Out is a preemptive surcharge, and premature at this juncture, the Court should deny the Carve Out provisions.

        *ii. The Debtors have not shown adequate protection for the carve out.*

16. Even *arguendo* if the Court were inclined to authorize a preemptive surcharge, the Debtors are still required to show adequate protection of the use of cash collateral. *See* 11 U.S.C. § 363(e). Nothing in the Debtors' proposed budget explains how the Carve Out is being allocated

amongst the various Debtors. This of course causes multiple issues *inter alia*—(1) it is unclear how the Debtors can prove the preemptive surcharge (Carve Out) meets the requirements of section 506(c) as it applies to UMB's collateral, and (2) without an explanation of how much of the Carve Out is applicable to UMB's borrower, the Debtors cannot carry their burden of showing that their use of UMB's cash collateral to fund that Carve Out is adequate protected.

### iii. The primacy of the Carve Out is not supported by Section 364.

17. The Debtors propose that the Carve Out be senior to the DIP Liens, Prepetition Liens, Adequate Protection Liens, the DIP Superpriority Claims, and Prepetition Secured Parties' Superpriority Claim.[3] This is in essence the Debtors obtaining a priming lien in the amount of the Carve Out. To do so, the Debtors are required to meet the standards of section 364(d). Section 364(d)(1)(B) of the Bankruptcy Code provides that the Court may authorize debtor-in-possession financing on a priming basis "***only if ...*** there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." *See* 11 U.S.C. § 364(d)(1)(B) (emphasis added); *In re First South Sav.*, 820 F.2d 7001-701-11 (5th Cir. 1987). It is the Debtors' burden to prove adequate protection. *See* 11 U.S.C. § 364(d)(2) ("In any hearing under this subsection, the [debtor] has the burden of proof on the issue of adequate protection.").

18. Priming is extraordinary relief requiring a strong showing that the loan to be subordinated is adequately protected. Bankruptcy judges are required to grant Section 364(d) financing only upon a tangible demonstration of adequate protection." *In re LTAP US, LLLP,* Case No. 10-14125(KG), 2011 WL 671761 *3 (Bankr. D. Del. Feb. 18, 2011) (*citing In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 567 (3d Cir. 1994)); *see also In re YL West 87th Holdings I LLC*,

---

[3] *See* proposed Final DIP Order at ¶ 25(a).

7

423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010). Priming should be a "last resort" and "is impermissible unless there is adequate protection to existing lien holders." *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) (citing *In re First South Sav.,* 820 F. 2d 700, 701-11 (5th Cir. 1987)).

19. The Debtors cannot meet either prong of section 364(d). Specifically, the first prong—that the Debtors are unable to obtain such credit otherwise—is not met, because the Debtors are able obtain financing from a third-party source, the DIP Lender. As such, the Debtors need not prime UMB's collateral in the amount of the Carve Out, because it has other sources of funds to pay those expenses. Similarly, the Debtors have not met the second prong of section 364(d)—adequate protection—because, as explained above, the Debtors have not explained the apportionment of the Carve Out and how the use of funds will be utilized pursuant to intercompany transactions, and thus the Debtors have not shown how the use of the such funds will be adequately protected. Because the Debtors fail to meet either prong of section 364(d), the Court should deny the requested primacy of the Carve Out.

### D. Other Provisions of the Proposed DIP are Problematic.

20. Several other provisions of the Proposed DIP also cause UMB concern, and should be considered by the Court.

> i. *Absent an agreement, the Debtors' Enterprise Allocation Protocol is not Consistent with Section 506(c).*

21. As explained above, Fifth Circuit law permits administrative expenses to be charged against a secured creditors' estate only to the extent there is a "quantifiable and direct benefit to the secured creditor." *See In re Grimland*, 243 F.3d at 232. Further, the Fifth Circuit has explained that "indirect or speculative benefits may not be surcharged, nor may expenses that benefit the debtors *or other creditors*." *Id.* at 232 (emphasis added); *In re P.C., Ltd.*, 929 F.2d at

8

205; *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers Ltd.)*, 924 F.2d 74, 76-77 (5th Cir. 1991). Here, the Debtors readily admit that the "Reallocation Fees" benefit other debtors and creditors.[4] The Debtors have provided no evidence that the amount of benefit derived by each debtor is directly proportional to the revenue it generates. To the contrary, UMB argues that the opposite is true—that the facilities that are under-performing and cash-flow negative require more time and attention and will most certainly require a disproportionate use of the Debtors' reorganization expenses compared to cash-flow positive facilities. Regardless, UMB need not parse out the specific benefits, because the Debtors admit that they cannot show that the specific benefits derived from the Reallocation of Fees are anything other than "indirect" and "speculative" as to the Eugene Debtors, the Court should deny the Enterprise Allocation Protocol.

        ii.       *UMB should receive reporting based upon the use of its cash collateral.*

22. Use of a budget and reporting to the secured lender is fundamental to any use of cash collateral, and is a necessary piece of a secured lender's adequate protection package. The secured lender's consent to the use of its cash collateral (or the Court's authority to use cash collateral over a lender's objection) is for a specific purpose (*i.e.*, the items specified, and the in the amounts specified, in the budget). The primary means for insuring compliance with the provisions of consent and/or authorization is the budget and the corresponding reporting tied to the budget. The Debtors should be required to provide UMB a budget related to the Eugene Debtors, and should be required to report, on a weekly basis, (1) the revenues and expenditures compared to the budget, and (2) the variance between actual and budgeted amounts. This is a basic and fundamental protection that is common and customary in chapter 11 cases, and its need in this case (on a facility-by-facility basis) is heightened because (i) multiple Debtors have different

---

[4] *See* DIP Motion at 26-27.

secured lenders, and (ii) the requirement that the Debtors not commingle cash collateral. *See* 11 U.S.C. 363(c)(4)(requiring the Debtors to segregate and account for any cash collateral in the trustee's possession, custody, or control). UMB is entitled to an individual accounting and segregation of its cash collateral.

        *iii.*    *UMB should be permitted access to information.*

23.    Likewise, the Debtors should be required to cooperate with UMB with respect to such inspection of the Eugene Facility including, without limitation, allowing any required appraisals or other inspections.

        *iv.*    *UMB's Liens should be confirmed to be included in the Permitted Liens.*

24.    UMB believes its liens with respect to the Eugene Debtors and its collateral fall under the category of Permitted Liens, as the Eugene Debtors are Non-Pledging Guarantors under the DIP Facility. However, UMB objects to the DIP Motion to the extent there is any priming effect of its collateral from the DIP Facility.

WHEREFORE, PREMISES CONSIDERED, UMB respectfully requests that (i) the Court deny the Motion to an extent the concerns set forth above cannot be addressed; (ii) alternatively, that the relief sought in the DIP Motion be conditioned on adequate protection of UMB's interest in its collateral; and (iii) for such other and alternative relief as the Court deems just and proper.

Dated: February 28, 2026.

Respectfully submitted,

*/s/ Jason P. Kathman*
Jason P. Kathman (Texas Bar No. 24070036)
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Facsimile
Email:  jkathman@spencerfane.com

-and-

Eric L. Johnson (Admitted *Pro Hac Vice*)
Brian M. Devling (Admitted *Pro Hac Vice*)
Andrea M. Chase (*Pro Hac Vice* Pending)
**SPENCER FANE LLP**
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 – Telephone
(816) 474-3216 - Facsimile
Email: ejohnson@spencerfane.com
Email: bdevling@spencerfane.com
Email: achase@spencerfane.com

**COUNSEL FOR UMB BANK**

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on February 28, 2026, I caused to be served the foregoing pleading upon the United States Trustee, and the parties on the Master Service List via electronic mail and/or United States mail, first class delivery, and also via the Court's electronic transmission facilities upon all parties accepting such service.

*/s/ Jason P. Kathman*
Jason P. Kathman