| | |
|---|---|
| Joseph M. Coleman (SBN 04566100) | Christopher R. Kaup (Pro Hac Pending) |
| JaKayla J. DaBera (SBN 24129114) | Nicholas A. Beatty (Pro Hac Pending) |
| **Kane Russell Coleman Logan PC** | David M. Barlow (Pro Hac Pending) |
| 901 Main Street, Suite 5200 | **TIFFANY & BOSCO, P.A.** |
| Dallas, Texas 75202 | Seventh Floor, Camelback Esplanade II |
| Tel.: (214) 777-4200 | 2525 East Camelback |
| Fax: (214) 777-4299 | Phoenix, Arizona 85016 |
| Email: jcoleman@krcl.com | Telephone: (602) 255-6000 |
| Email: jdabera@krcl.com | Email: crk@tblaw.com |
| | Email: nab@tblaw.com |
| | Email: dmb@tblaw.com |

**COUNSEL FOR CONCORDE INVESTMENT SERVICES, LLC
ON BEHALF OF HOLDERS OF BENEFICIAL INTERESTS IN
INSPIRED SENIOR LIVING OF AUGUSTA DST AND
INSPIRED SENIOR LIVING OF FORT MYERS DST**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | § | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| INSPIRED HEALTHCARE CAPITAL | § | Case No. 26-90004 (MXM) |
| HOLDINGS, LLC, *et al.* | § | |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |

**CONCORDE INVESTMENTS SERVICES, LLC'S MOTION TO DISMISS THE
CHAPTER 11 CASES OF INSPIRED SENIOR LIVING OF AUGUSTA DST AND
INSPIRED SENIOR LIVING OF FORT MYERS DST
PURSUANT TO 11 U.S.C. § 1112(b)(1)**

Concorde Investments Services, LLC, as the agent of the holders of beneficial interests in Inspired Senior Living Of Augusta DST And Inspired Senior Living Of Fort Myers DST ("Concorde") hereby files this *Motion to Dismiss the Chapter 11 Cases of Debtors Inspired Senior*

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which Debtors requested be jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The relevant Debtors for Concorde Investment Services, LLC's Motion to Dismiss are Inspired Senior Living of Augusta DST (Case No. 26-90088) and Inspired Senior Living of Fort Myers DST (Case No. 26-90131).

*Living of Augusta DST and Inspired Senior Living of Fort Myers DST Pursuant to 11 U.S.C. § 1112(b)(1)* ("Motion to Dismiss") and, in support hereof, respectfully states as follows:

## I.   RELIEF REQUESTED

Concorde requests that the Court enter an order dismissing the Chapter 11 bankruptcy cases of Debtors Inspired Senior Living of Augusta DST ("Augusta DST") and Inspired Senior Living of Fort Myers DST ("Fort Myers DST") pursuant to 11 U.S.C. § 1112(b)(1) for cause because the bankruptcy petitions were filed without authority under Augusta DST's and Fort Meyers DST's governing trust agreements and The reasons set forth below.

## II.   FACTUAL BACKGROUND

**A.   Debtors' Business and Relationship with Concorde**

1. Debtor Inspired Healthcare Capital, LLC ("IHC") operates a private equity firm specializing in the acquisition and management of senior-living facilities throughout the country (collectively, "Facilities"). **Exhibit A**, Declaration of Danielle Delongchamp at ¶ 3. Concorde operates as a full-service broker-dealer and SEC Registered Investment Advisor, matching accredited investors with alternative investment opportunities. *Id.* at ¶ 4. In 2022, Concorde helped IHC sell 100% of the beneficial interests in Fort Myers DST and Augusta DST (collectively, "Trusts"). *Id.* at ¶ 5.

2. Concorde possesses authority to act on behalf of a majority of the Augusta Beneficial Interest Holders and the Fort Myers Beneficial Interest Holders in this Bankruptcy Case. *Id.* at ¶ 9.

3. IHC sponsored a private securities offering to fund the acquisition of real property located at 3501 Hancock Bridge Parkway, North Fort Myers, Florida 33903 ("Fort Myers Property") to continue operating the already existing senior-living facility known as "Wickshire

Fort Myers" ("Fort Myers Facility"). *Id*. at ¶¶ 10 – 11. IHC's private offering to raise funds necessary to acquire the Fort Myers Property was substantially similar to the structure IHC implemented to acquire other facilities. *Id*. at ¶ 12. IHC formed Fort Myers DST to acquire the Fort Myers Property and sold 100% of the beneficial interests in Fort Myers DST through non-debtor Inspired Senior Living of Fort Myers Depositor, LLC to the Fort Myers Beneficial Interest Holders. *Id*. at ¶¶ 13 – 16. As of the date of this Objection, 100% of the beneficial interests in Fort Myers DST are held by accredited investors (collectively, "Fort Myers Beneficial Interest Holders") and none of the Fort Myers Beneficial Interest Holders are debtors in this Bankruptcy Case. *Id*. at ¶ 6.

4. IHC similarly sponsored a private securities offering to fund the acquisition of real property located at 2222 Indigo Hall Drive, Martinez, Georgia, 30907 ("Augusta Property") to continue operating the already existing senior-living facility known as "Thrive at Augusta" ("Augusta Facility"). *Id*. at ¶¶ 25 – 26. IHC's private offering to raise funds necessary to acquire the Augusta Property was substantially similar to the structure IHC implemented to acquire other facilities. *Id*. at ¶ 26. IHC formed Augusta DST to acquire the Augusta Property and sold 100% of the beneficial interests in Augusta DST through non-debtor Inspired Senior Living of Augusta Depositor, LLC to the Augusta Beneficial Interest Holders. *Id*. at ¶¶ 27 – 30. As of the date of this Objection, 100% of the beneficial interests in Augusta DST are held by accredited investors (collectively, "Augusta Beneficial Interest Holders") and none of the Augusta Beneficial Interest Holders are debtors in this Bankruptcy Case. *Id*. at ¶ 7. IHC, Debtor Inspired Healthcare Capital Holdings, LLC ("IHC Holdings") and the other debtors do not own any of interests in Augusta DST or Fort Myers DST. *Id*. at ¶ 8.

5. After acquiring the Fort Myers Property, Fort Myers DST leased the Fort Myers Property to Debtor Inspired Senior Living of Fort Myers MT, LLC ("Fort Myers Master Tenant"). *Id*. at ¶ 20. Similarly, after acquiring the Augusta Property, Augusta DST leased the Augusta Property to Debtor Inspired Senior Living of Augusta MT, LLC ("Augusta Master Tenant"). *Id*. at ¶ 34.

B. **Fort Meyers Trust Agreement and Augusta Trust Agreement**

6. Both Fort Myers DST and August DST are governed by their respective Trust Agreements (collectively, "Trust Agreements"). *Id*. at ¶ 38. Fort Myers DST has two trustees: (1) non-Debtor Sorensen Entity Services LLC ("Sorensen") and (2) Debtor Inspired Senior Living of Fort Myers ST, LLC ("Fort Myers Signatory Trustee"). *Id*. at ¶ 14. Sorensen served as Fort Myers DST's trustee for the limited "purpose of satisfying the requirement[s] … of the Delaware Statutory Trust Act[.]" *Id*.

7. Augusta DST also has two trustees: (1) non-Debtor Sorensen and (2) Debtor Inspired Senior Living of Augusta ST, LLC ("Augusta Signatory Trustee"). *Id*. at ¶ 28. Sorensen served as Augusta DST's trustee for the limited "purpose of satisfying the requirement[s] … of the Delaware Statutory Trust Act[.]" *Id*.

8. Section 2.03 of the Trust Agreements provide that Fort Myers DST and Augusta DST hold their respective properties "for investment purposes (and not for the active conduct of a trade or business) and only engage in activities which are customary services in connection with the … maintenance and repair of" the respective properties. *Id*. at ¶ 39. Section 2.03 further prohibits Fort Myers DST or Augusta DST from engaging in any other business. *Id*.; *See also* ¶¶ 40 – 41.

9. Section 2.05 of the Trust Agreements prohibits "[Fort Myers DST and Augusta DST], [Fort Myers Signatory Trustee and Augusta Signatory Trustee], nor any other Person … to take any action that might cause [Fort Myers DST and Augusta DST] … to file a voluntary petition or otherwise initiate proceedings to be adjudicated bankrupt or insolvent … to consent to the initiation

of bankruptcy…[,] or to file a petition seeking or consenting to reorganization or relief of the [Fort Myers DST and Augusta DST] as a debtor under any applicable federal or state law relating to bankruptcy." *Id*. at ¶ 42.

### III. BASIS FOR RELIEF

**A. Debtors Augusta DST and Fort Myers DST Lacked Authority to File for Bankruptcy and Dismissal is Mandatory Under 11 U.S.C. § 1112(b)(1).**

10. Section 1112(b)(1) provides that, on request of a party in interest and after notice and a hearing, the court shall convert or dismiss a Chapter 11 case "for cause." 11 U.S.C. § 1112(b)(1). The list of circumstances constituting "cause" enumerated in § 1112(b)(4) is illustrative and non-exhaustive. *In re TMT Procurement Corporation*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015). "The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 371 – 72 (5th Cir. 1987). Once cause is established, the only exception preventing dismissal is the "unusual circumstances" provision under § 1112(b)(2), which requires the debtor to show that the grounds for dismissal include "an act or omission of the debtor" for which "there exists a reasonable justification" that "will be cured within a reasonable period of time." 11 U.S.C. § 1112(b)(2)(B).

11. The determination of whether a bankruptcy petition was filed by those who have the authority to do so is a question of state law. *Price v. Gurney*, 324 U.S. 100, 106 (1946); *see also In re Franchise Services of North America Incorporated*, 891 F.3d 198, 206 (5th Cir. 2018) ("State law determines who has the authority to file a voluntary petition on behalf of the corporation."). The inquiry into whether the filing of a bankruptcy was authorized necessarily encompasses the entity's own governing documents. *In re Franchise Services of North America Incorporated*, 891 F.3d at 206 – 207. "If the petitioners lack authorization under state law, the bankruptcy court 'has no alternative but to dismiss the petition.'" *Id*. (quoting *Price*, 324 U.S. at 106). "It is not enough

that those who seek to speak for the corporation may have a right to obtain that authority." *Id.* at 207 (quoting *Price*, 324 U.S. at 106). "Rather, they must have it at the time of filing." *Id.*

12. "For many years, courts have consistently looked to state law to determine whether a person has authority to file a voluntary petition on behalf of a corporation." *Matter of Phillips*, 966 F.2d 926, 934 (5th Cir. 1992). After citing to several cases discussing the application of state law to the question of whether a corporation had authority to file a petition, the Fifth Circuit held, "we will continue to look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created business entities." *Id.* The Fifth Circuit also considered § 301 and held, "nothing in section 301 indicates that every entity that may be a debtor under the Bankruptcy Code is entitled to file a voluntary petition; nor does section 301 make any attempt whatsoever to address the countless details that attend questions of authority to act on behalf of a business entity." *Id.* (citing H.R. 8200, H.R. REP. No. 598 at 196, *reprinted in*, 1978 U.S.C.C.A.N. at 6157 ("*Title 11* does not define 'partner' or 'partnership'; the definitions are left to nonbankruptcy law as construed by the bankruptcy court.") (emphasis added)). The consequences of filing without authority are dispositive: in *Phillips*, the Fifth Circuit reversed the district court's order affirming confirmation of the debtor's plan of reorganization because the original petition had been filed without authority. *Id.* at 935 – 36.

13. Other courts in this district have applied the binding authority cited above to hold that where the bankruptcy filing was not properly authorized under applicable state law, "cause exists for dismissal of the case under section 1112(b)(1)." *In re All Saints Episcopal Church*, 638 B.R. 359, 374 (Bankr. N.D. Tex. 2021). Similarly, in *In re Orchard at Hansen Park, LLC*, the debtor's operating agreement required unanimous member consent before any bankruptcy filing, and that consent had not been obtained. *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 826 (Bankr.

N.D. Tex. 2006). Specifically, the operating agreement prohibited any action to "consent to the institution of bankruptcy or insolvency proceedings; or file a petition seeking, or consent to reorganization or relief under any applicable federal or state law relating to bankruptcy." *Id*. The bankruptcy court applied applicable state law and the operating agreement, found authority did not exist and dismissed the case, despite recognizing that "this case cries out for bankruptcy relief." *Id*. at 827.

14. Augusta DST and Fort Myers DST were organized under the Delaware Statutory Trust Act. 12 Del.C. §§ 3801 – 29 (2025) ("DST Act"). The management of a Delaware statutory trust is governed by the governing instrument of the statutory trust. 12 Del.C. § 3806. Section 3806(a) provides that the business and affairs of a statutory trust are managed by its trustees "[e]xcept to the extent otherwise provided in the governing instrument." 12 Del.C. § 3806(a). Further, § 3806(b) authorizes governing instruments to contain any provision relating to the rights, duties, and obligations of trustees, beneficial owners, and other persons, including provisions that permit specified actions to be taken without the vote or approval of any particular trustee or beneficial owner. 12 Del.C. § 3806(b)(3). Section 3806(c) similarly authorizes the governing instrument to restrict or eliminate the duties of trustees and other persons. 12 Del.C. § 3806(c). "It is the policy of this chapter to give maximum effect to the principle of freedom of contract and to the enforceability of governing instruments." 12 Del.C. § 3838(b).

15. Here, Augusta DST and Fort Myers DST are governed by the Trust Agreements and Delaware state law. The Trust Agreements define the boundaries of all persons authorized to act on August DST's and Fort Myer's DST's behalf, including the authority to file a bankruptcy petition. Section 2.05(c) of the Trust Agreements states:

> Notwithstanding any other provision of this Trust Agreement and any provision of law that otherwise so empowers the Trust, so long as any obligation evidenced or

> secured by any of the Loan Documents remains outstanding, **neither the Trust, the Trustees, nor any other Person shall be authorized** or empowered, nor shall they permit the Trust, to the fullest extent permitted by law, **to take any action that might cause the Trust** to become insolvent, or **to file a voluntary petition or otherwise initiate proceedings** to be adjudicated bankrupt or insolvent, **or to consent to the institution of bankruptcy** or insolvency proceedings against the Trust, **or to file a petition seeking** or consenting to reorganization or **relief of the Trust as debtor under any applicable federal** or state law **relating to bankruptcy**, insolvency, or other relief for debtors with respect to the Trust … **So long as any obligation evidenced or secured by any of the Loan Documents remains outstanding, the Trust may not vote on, or authorize the taking of, any action described in this Section 2.05(c)**.

*See* Trust Agreements, § 2.05(c)(emphasis added).

16. It is undisputed that the obligations evidenced and secured by the relative loan documents remain outstanding. **Exhibit A** at ¶ 66. With the loan obligations outstanding, § 2.05(c) of the Trust Agreements expressly prohibit the filing of a bankruptcy by three categories of actors: (1) Augusta DST and Fort Myers DST; (2) the Signatory Trustees; and (3) "any other Person." Pursuant to the DST Act, the Trust Agreements prohibition against Augusta DST and Fort Myers DST is a valid restriction and the DST Act was designed to facilitate such restrictions on DSTs. Cause exists to dismiss the bankruptcy cases of Augusta DST and Fort Meyers DST, therefore, because the filing of the petitions of these entities was not authorized by and violated the respective Trust Agreements. Accordingly, dismissal is mandatory under § 1112(b)(1).

17. The exception provided for under § 1112(b)(2)(B) is unavailable here. The prohibition against filing a bankruptcy under § 2.05(c) is not an act or omission of the debtors. It is also not something that can be cured within a reasonable period of time. Instead, it is an absolute, express prohibition embedded in the Trust Agreements and expressly permitted under Delaware law.

B. **The Trust Agreements Require that Augusta DST and Fort Myers DST be Terminated Upon Default of Their Respective Loans or the Filing of a Bankruptcy by the Tenant.**

18. Article IX of the Trust Agreements outlines the circumstances mandating termination of Augusta DST and Fort Myers DST. Specifically, § 9.02(b) requires the Signatory Trustees to "terminate [Augusta DST or Fort Myers DST] and distribute the Trust Property to Investors in the manner provided in Section 9.04" if an event of default under the Loan has occurred. Here, the respective loans for the Augusta Property and Fort Myers Property are in default. As such, the Signatory Trustees were and remain obligated to terminate Augusta DST and Fort Myers DST and distribute the trust's property to investors.

19. Section 9.03 of the Trust Agreements also requires the Signatory Trustees to "terminate [Augusta DST or Fort Myers DST] and distribute the Trust Property to Investors in the manner provided in Section 9.04" if Fort Myers Master Tenant or Augusta Master Tenant file for bankruptcy. Both Fort Myers Master Tenant and Augusta Master Tenant filed for bankruptcy. As such, the Signatory Trustees were and remain obligated to terminate Augusta DST and Fort Myers DST and distribute the trust's property to investors. As a result, based on the express contractual obligations of the Signatory Trustees, Augusta DST and Fort Myers DST should have been terminated as soon as Fort Myers Master Tenant and Augusta Master Tenant filed bankruptcy and this Court should dismiss the bankruptcies of Augusta DST and Fort Myers DST so as to permit the Signatory Trustees to exercise their contractual obligations.

20. Because the Signatory Trustees violated their respective obligations to terminate the Trusts, pursuant to Sections 9.02 and 9.03, there is no likelihood of a reorganization of these debtors and "cause" exists for dismissal, pursuant to 11 U.S.C. § 1112(b)(4)(A).

**C.  Alternatively, Augusta DST and Fort Myers DST are not "Business Trusts" and Are Not Eligible Debtors Under § 109.**

21. Neither Augusta DST nor Fort Myers DST are "persons" under § 101(41) because they are passive investment vehicles that hold title to real property and are expressly prohibited by their own governing instruments [and applicable state law???] from conducting business. As a result, Augusta DST and Fort Myers DST are not eligible debtors and their cases must be dismissed.

**(1) A Trust Must be Created for a Business Purpose and Possess Corporate Characteristics to Qualify as a "Business Trust."**

22. The Bankruptcy Code does not define "business trust." The Supreme Court has held that in a business trust, "the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains." *Morrissey v. Comm'r of Internal Revenue*, 296 U.S. 344, 357 (1935). Courts have distilled from *Morrissey* six "salient factors" of a business trust: (1) a trust created and maintained for a business purpose; (2) title to property held by trustees; (3) centralized management; (4) continuity uninterrupted by death among beneficial owners; (5) transferability of interests; and (6) limited liability. *In re Capital Equity Land Trust No. 2140215*, 646 B.R. 463, 472 – 73 (Bankr. N.D. Ill. 2022) (citing *Morrissey*, 296 U.S. at 357 – 59).

23. The first factor, business purpose, is critical and the absence of either a business purpose or corporate indicia independently defeats business trust status. *In re Cohen*, 4 B.R. 201, 208 (Bankr. S.D. Fla. 1980); *Capital Equity*, 646 B.R. at 476.

24. Augusta DST and Fort Myers DST were not created nor maintained for business purposes. Augusta DST and Fort Myers DST were created for the purpose of acquiring the Fort Myers Property and Augusta Property and facilitating distributions to their respective beneficial interest holders. Augusta DST and Fort Myers DST are not and have not been involved in the

management or day-to-day operations of the business operating at the Fort Myers Property or Augusta Property. As detailed below, the Trust Agreements expressly outlined the purpose of Fort Myers DST and Augusta DST and they were not created or maintained for a business purpose.

### (2) The Trust Agreements Establish that Augusta DST and Fort Myers DST are not Business Trusts.

25. The Trust Agreements foreclose any argument that Augusta DST or Fort Myers DST qualify as "business trusts." First, § 2.03 of the Trust Agreements negates any business purpose. Section 2.03 restricts Augusta DST and Fort Myers DST to holding their respective properties "for investment purposes (and not for the active conduct of a trade or business" and limits permissible activities to "customary services in connection with the … maintenance and repair" of the Augusta Property and Fort Myers Property. **Exhibit A** at ¶ 39. This is the exact sort of trusts described in *Morrissey* as "the traditional type of trusts" where the object is "to hold and conserve particular property, with incidental powers," rather than to serve as a vehicle for conducting business. *Morrissey*, 296 U.S. at 357.

26. Second, the Trust Agreements restrict Augusta DST and Fort Myers DST to the sole purpose of holding an interest in the Augusta Property and Fort Myers Property. **Exhibit A** at ¶ 41. Augusta DST and Fort Myers DST do not operate the facilities located at the Augusta Property or Fort Myers Property. Instead, Augusta DST and Fort Myers DST function as passive holding vehicles, consistent with the limitation to operate for "investment purposes" in § 2.03 of the Trust Agreements. Where a trust agreement restricts the entity to holding property and prohibits business operations, there is no business to reorganize. *Cohen*, 4 B.R. at 208.

27. Third, the Trust Agreements expressly provide that Augusta DST and Fort Myers DST "shall not constitute a 'business trust' within the meaning of Regulations Section 301.7701-4(b) or any other business entity for federal income tax purposes but shall instead constitute an

'investment trust[.]'" **Exhibit A** at ¶ 40. In *Cohen*, the debtor structured the entity as a land trust and, then, sought relief under the Bankruptcy Code as a corporation. 4 B.R. at 208. The court refused and held, "[t]he debtor is stuck with the characteristics of the entity he has chose. He cannot have it all ways in his favor." *Id*. at 209. The same principle applies here.

28. The Trust Agreements were drafted to create investment trusts, not business trusts. Augusta DST and Fort Myers DST functioned as passive investment vehicles. Augusta DST and Fort Myers DST cannot assert that they are "business trusts" in an attempt to remain in bankruptcy. More importantly, there is nothing before the Court and Debtors Augusta DST and Fort Myers DST have not even attempted to establish a record supporting a finding that they are "business trusts."

### (3) Delaware Law Reinforces Augusta DST's and Fort Myers DST's Ineligibility as Debtors.

29. The conclusion that Augusta DST and Fort Myers DST are not "business trusts" is confirmed under Delaware law. Section 3801 of the DST Act provides, "[n]either use of the designation 'business trust' nor a statement in a certificate of trust or governing instrument … shall create a presumption or an inference that the trust so formed is a 'business trust' for purposes of Title 11 of the United States Code." 12 Del.C. § 3801(i). The law of the state of formation determines whether a trust is a "business trust." *In re EHT US1, Inc.*, 630 B.R. 410, 425 (Bankr. D. Del. 2021).

30, As discussed above, the terms of the Trust Agreements compel the conclusion that neither Augusta DST nor Fort Myers DST were created for a business purpose or posses the corporate characteristics required to be classified as a "business trust." Further, Augusta DST and Fort Myers DST have not presented any evidence that demonstrate they are "business trusts." Augusta DST and Fort Myers DST are not "business trusts" under § 101(9)(A)(v), therefore, they

are not "persons" under § 101(41), and they are not eligible for relief under the Code. Accordingly, dismissal of these two cases is mandatory.

## IV.  NOTICE

31. Notice of this Motion to Dismiss will be provided to Debtors' counsel of record and via ECF to parties in interest.

## V.  PRAYER

WHEREFORE, Concorde requests an order dismissing the bankruptcies of Augusta DST and Fort Meyers DST and granting such other and further relief as this Court may deem just and proper.

Dated: February 28, 2026                    Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**

*/s/ Joseph M. Coleman*
Joseph M. Coleman (SBN 04566100)
JaKayla J. DaBera (SBN 24129114)
901 Main Street, Suite 5200
Dallas, Texas 75202
Telephone: (214) 777-4200
Email: jcoleman@krcl.com
Email: jdabera@krcl.com

- and -

Christopher R. Kaup (Pro Hac Pending)
Nicholas A. Beatty (Pro Hac Pending)
David M. Barlow (Pro Hac Pending)
**TIFFANY & BOSCO, P.A.**
Seventh Floor, Camelback Esplanade II
2525 East Camelback
Phoenix, Arizona 85016
Telephone: (602) 255-6000
Email: crk@tblaw.com
Email: nab@tblaw.com
Email: dmb@tblaw.com

**COUNSEL FOR CONCORDE
INVESTMENT SERVICES, LLC**

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on February 28, 2026, a true and correct copy of the foregoing Motion was filed with the Court and served (i) via the Court's CM/ECF system upon all parties registered to receive such electronic service in this bankruptcy case and (ii) via email to the Debtors' counsel of record and the US Trustee and (iii) by first-class mail, postage prepaid, and email upon the following parties:

                                          */s/ Joseph M. Coleman*
                                                Joseph M. Coleman

11853852v1 (75669.00003.000)