IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-90004 (MXM) |
| INSPIRED HEALTHCARE CAPITAL | ) | |
| HOLDINGS, LLC, *et al.*,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**OBJECTION OF PINNACLE BANK, AS SUCCESSOR BY MERGER TO SYNOVUS BANK, TO DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (I) ESTABLISHING BID PROCEDURES, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT AND PROVIDE BID PROTECTIONS, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES AND (VI) GRANTING RELATED RELIEF**

Pinnacle Bank, as successor by merger to Synovus Bank, ("Pinnacle"), a secured creditor and party in interest, files this objection to *Debtors' Motion for the Entry of an Order (I) Establishing Bid Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Authorizing the Debtors to Enter Into a Stalking Horse Agreement and Provide Bid Protections, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases and (VI) Granting Related Relief* (the "Bid Procedures Motion" or "Motion") [Doc. 99], and respectfully submits the following:

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

OBJECTION TO DEBTORS' BID PROCEDURES MOTION     P a g e | 1

## I. INTRODUCTION

1. The Debtors currently operate 33 senior living facilities. Pinnacle is one of the Debtors' largest secured creditors, holding claims in excess of $53 million in the aggregate which are secured by liens on three senior living facilities. Pinnacle, together with the other Prepetition Secured Parties (as defined in Debtor's Cash Collateral Motion [Doc. No. 28]) hold aggregate debt of approximately $258 million. Pinnacle's Collateral as to each Property is distinct from the Debtors' other assets, and Pinnacle's Collateral is distinct from the other Prepetition Secured Creditor's collateral.

2. In contrast, the DIP Lender, subject to final approval of the Debtors' DIP Motion, holds post-petition liens on fifteen (15) facilities to secure approximately $35 million in debt. There is no overlap in debt or collateral as between the Prepetition Secured Parties and the DIP Lender.

3. Yet, as evidenced by the Motion and the Debtors' other First Day Motions, the Debtors are treating these bankruptcy cases and the Auction as if there is a common enterprise and the cases have been substantively consolidated. As described in more detail below, this is not the case. The Debtors' operations of the facilities were not and are not a common enterprise. As evidence of this fact, approximately thirty-one of the Debtors' senior living facilities are owned by Delaware Statutory Trusts. Each Delaware Statutory Trust Debtor is a single purpose entity. Each Community operates as a separate Community, and each Delaware Statutory Trust owns one Community.

4. Pinnacle objects to the Bid Procedures because Pinnacle Bank and the other Prepetition Secured Parties have the right to credit bid as to their collateral in connection with the proposed sale under applicable bankruptcy law. Similarly, the DIP Lender's is asserting a right

to credit bid on the DIP Collateral (if approved on a final basis). In view of credit bid rights held by fifteen (15) different lenders, it is impossible to sell the Assets as a common enterprise at Auction without an allocation of the bid prices by property.

5. Pinnacle further objects to the Bid Procedures because Pinnacle is not included as a Notice Party and the procedures do not address separately escrowing proceeds from the sale of Pinnacle's Collateral. Pinnacle's Objections are described more fully below.

## II. BACKGROUND FACTS

6. In 2021 and 2022, Synovus Bank ("Original Lender") financed three (3) commercials loans to three (3) of the Debtors: Inspired Senior Living of Brookhaven DST ("Brookhaven DST"); Inspired Senior Living of Reno DST ("Reno DST"); and Inspired Senior Living of Melbourne DST ("Melbourne DST" collectively, the "Pinnacle Borrowers" and each a "Pinnacle Borrower").

7. The assets, liabilities, and operations of each Pinnacle Borrower are single asset entities independent of the other Pinnacle Borrowers and other Delaware Statutory Trust Debtors. Put simply, each Pinnacle Borrower and its operations and assets have no relation to any other Pinnacle Borrower or Debtor.

8. The loan as between Original Lender and Brookhaven DST ("Brookhaven Loan") is secured by, among other things, a skilled nursing facility, together with together with all buildings and other improvements thereon, all personal property, and all rights pertaining to such property, located at 1634 Afton Lane NE, Brookhaven, Georgia 30329 (the "Brookhaven Property").

9. The loan as between Original Lender and Reno DST ("Reno Loan") is secured by, among other things, a skilled nursing facility, together with together with all buildings and other

improvements thereon, all personal property, and all rights pertaining to such property, located at 222 E. Patriot Boulevard, Reno, Nevada 89511 (the "Reno Property").

10. The loan as between Original Lender and Melbourne DST ("Melbourne Loan") is secured by, among other things, a skilled nursing facility, together with together with all buildings and other improvements thereon, all personal property, and all rights pertaining to such property, located at 64 South Harbor City Boulevard, Melbourne, Florida 32901 (the "Melbourne Property" and collectively with the Brookhaven Property and Reno Property, the "Properties" and each a "Property").

11. The Brookhaven Loan, the Reno Loan and the Melbourne Loan are hereinafter referred to as the "Pinnacle Loans." The Pinnacle Loans are described in more detail in Pinnacle's Objection to Debtors' Motion for Final Order (I) Authorizing (A) Postpetition Financing and (B) the Use of Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, (V) Securing a Final Hearing, and (VI) Granting Related Relief filed on February 28, 2026 (Doc. No. 194).

12. Original Lender merged into Pinnacle Bank, a Tennessee Bank, on January 2, 2026, and Pinnacle Bank is the successor in interest to Original Lender in all respects.

13. On or about February 2, 2026 (the "Petition Date"), Debtors filed voluntary petitions under Chapter 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

14. Since the Petition Date, the Debtors have continued to manage their businesses as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

15. As of the Petition Date, Pinnacle was owed in excess of $53 million under the

Pinnacle Loans.

### III. PINNACLE'S OBJECTION TO BID PROCEDURES

**A. The Proposed Order Must Preserve Pinnacle's Credit Bid Rights.**

16. Section 363(k) of the Bankruptcy Code provides that a creditor with a lien on assets to be sold outside the ordinary course of business under Section 363 may credit bid its "allowed claim" at the sale, "unless the court for cause orders otherwise." 11 U.S.C. § 363(k).

17. Pinnacle should have the absolute right to credit bid. *See In re Aeropostale, Inc.*, 555 B.R. 369, 415 (Bankr. S.D.N.Y. 2016) (internal citations omitted) (stating, a court's "modification or denial of credit bit rights should be the extraordinary exception and not the norm."). Courts have prohibited credit bidding where there exists inequitable conduct impacting the estate or the bidding process; where the validity of the creditor's lien is in dispute, or where the credit bid fails to comply with procedural requirements of the court. *Id*. (internal citations omitted). Here, no such circumstances exist.

18. A credit bid is an offset of a secured claim against the collateral's purchase price. The U.S. Supreme Court stated in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 n.2 (2012), that "[t]he ability to credit-bid helps to protect a creditor against the risk that its collateral will be sold at a depressed price" and "enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan."

19. The Motion lacks protections that allow Pinnacle to credit bid based upon its secured status and interest in its Collateral.

20. As a threshold matter, Pinnacle must be automatically deemed to be a Qualified Bidder should it choose to engage in the bid process. As a Qualified Bidder, Pinnacle should not

be required to otherwise satisfy the requirements of a Qualified Bidder set forth in Section IV of the Bid Procedures, because the Pinnacle Borrowers have an existing pre-petition contractual relationship with Pinnacle, and Pinnacle holds properly perfected first priority liens on the Properties.

21. "Debtors may not sell their property free of liens . . . without allowing lienholders to credit-bid." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 647 (2012)

22. Accordingly, only the Court may deny Pinnacle the right to credit-bid, and there is no basis for Pinnacle to be denied the right to credit bid. Debtor, through its auction procedures, cannot circumvent the plain statutory language. Thus, Pinnacle must be deemed to be a Qualified Bidder by virtue of its secured status and interest in the collateral.

23. Based on the foregoing, Pinnacle requests that the proposed order remove any limitations of Pinnacle for submission of a credit bid as to its Collateral and automatically deem Pinnacle a Qualified Bidder related thereto.

**B. The Motion and Proposed Order Fail to Include Language: (I) Specifying Value Assigned to Specific Collateral, and (II) the Proposed Allocation of the Bid Price to Specific Collateral.**

24. Section 363(f) of the Bankruptcy Code permits a debtor-in-possession to sell property free and clear of all liens, claims, interests, and encumbrances if it can establish one or more requirements, including if "such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of its interest." 11 U.S.C. § 363(f)(5).

25. Here, the Motion and the related proposed Order fail to require that a Qualified Bid allocate the amount of the bid to specific collateral contained within the Assets.

26. While the Debtors may have concerns about their ability to sell some of the Communities, Pinnacle should not be disadvantaged in order to benefit non-Pinnacle Borrowers.

27. Here, each DST Debor is a distinct, single purpose entity, and each Pinnacle Borrower is a distinct single purpose borrower. Relatedly, each Pinnacle Borrower owns and operates one (1) distinct Property.

28. Currently, Pinnacle has no ability to ascertain the value that the Qualified Bidder is allocating specifically to <u>each Pinnacle Property</u>.

29. As a result, it would be impossible for Pinnacle to determine if its interests will be adequately protected by the attachment of net proceeds from any purported sale.

30. Therefore, Pinnacle will be unable to assess whether the net proceeds ultimately attributed to Pinnacle's Collateral under the asset purchase agreement may be materially less than the actual value of Pinnacle's Collateral.

31. Debtors are required to propose Bid Procedures that provide the highest and best offer for the Assets on a property-by-property basis, not the highest and best combined offer for the aggregate of the Debtors' Assets.

32. While the Debtors' cases are jointly administered, these Debtors are not substantively consolidated.

33. When cases are jointly administered, as opposed to substantively consolidated, the assets of each joint debtor are property of **separate bankruptcy estates** and must be kept separate and distinct. *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 699 (Bankr. S.D. Tex. 2009); *In re Blair*, 226 B.R. 502, 505 (Bankr. D. Me. 1998).

34. Based on the foregoing, Pinnacle requests that the Debtors include language in the proposed order establishing that a Qualified Bidder must allocate the bid amount as to each Community.

35. Even if this requirement is mandated by the Court, the Auction process will be

unwieldly, at best, as bids will have to be considered both individually and in the aggregate depending upon whether prospective purchasers submit bids for all of the assets or a portion of the assets. For these reasons, Pinnacle objects to the proposed Bid Procedures and submits that the Debtors must conduct separate auctions for the Prepetition Secured Collateral and the DIP Collateral.

C. **Pinnacle Shall be Deemed to be a Consultation Party.**

36. The Bid Procedures presently exclude Pinnacle from the "Consultation Parties".

37. Given Pinnacle's secured status as to the Properties, Pinnacle should be provided the same inclusion rights as the DIP Lender.

38. The inclusion of secured creditors as consultation parties is consistent with the principles of fairness and adequate protection under the Bankruptcy Code. Section 1129(b)(2)(A) of the Bankruptcy Code emphasizes the protection of secured creditors' rights. Those rights include the ability to credit bid on their collateral. *See, e.g., SR Constr., Inc. v. Hall Palm Springs, L.L.C. (In re Palm Springs II, L.L.C.)*, 65 F.4th 752, 758 (5th Cir. 2023). Excluding Pinnacle from the consultation process undermines these protections and fails to recognize its secured status.

39. Accordingly, Pinnacle requests that the proposed order and related Bid Procedures include Pinnacle with the definition of "Consultation Parties".

D. **Evaluation Of Successful Bid(s) Must Be Determined on a Property-by-Property Basis.**

40. Notwithstanding that each DST Debtor is a single purpose entity and that Pinnacle and the other Prepetition Secured Parties are entitled to the credit bid rights described above, the Motion and Bid Procedures fail to require that a determination of the highest bid(s) must occur on a Property-by-Property basis.

41. Each Pinnacle Borrower is a single-purpose entity that owns a distinct Community, and Pinnacle holds separate liens on each of the Properties. Accordingly, this structure necessitates an individualized analysis to ensure that the sale process respects the distinct legal and financial relationships between each debtor, its Assets, and Pinnacle's secured interests.

42. Indeed, as set forth above, the assets of each Pinnacle Borrower ***represent a separate bankruptcy estate***, and must be treated as such. *See In re Las Torres Dev., L.L.C*., 413 B.R. 687, 699 (Bankr. S.D. Tex. 2009); *In re Blair*, 226 B.R. 502, 505 (Bankr. D. Me. 1998). Put simply, the highest bid for each Property must be the winning bid for that Property, and in no circumstances can a lower bid for the same Property be considered a high or better bid just because it is part of a larger portfolio bid including other properties held by ***different Debtors*** which are part of ***different bankruptcy estates***, because each Debtor is obligated to maximize the value of ***its assets***, not the assets of other Debtors.

43. The requirement for a property-by-property analysis in determining the successful bid is rooted in the structure of the Debtors' ownership and the nature of Pinnacle's liens.

44. Section 506 of the Bankruptcy Code, provides that a secured claim is determined based on the value of the creditor's interest in the specific property securing the claim. This statutory framework underscores the need for a property-specific approach to evaluating bids.

45. The concept of SPEs as "bankruptcy remote" entities is relevant. SPEs are designed to isolate financial assets and limit bankruptcy risks. *See In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 911 n.7 (Bankr. N.D. Ill. 2016). This structure inherently ties the debt obligation to a specific asset, suggesting that each property owned by an SPE is treated as a distinct entity for financial and legal purposes.

46. Bankruptcy Courts have recognized that assigning a value to a secured creditor's collateral is essential to protect the creditor's rights. "Assigning a value to Credit Suisse's collateral is a necessary component of transparency and is also a necessary component in order to protect Credit Suisse's rights under the Bankruptcy Code". *In re Yellowstone Mountain Club, LLC*, 410 B.R. 658, 662 (Bankr. D. Montana 2009) (addressing Credit Suisse's Motion for Valuation of Secured Claim filed in response to debtors proposed sale of substantially all assets).

47. Accordingly, Pinnacle requests that the Court enter an order setting forth that if Pinnacle submits a credit bid with respect to its Collateral, then such credit bid shall be deemed the Successful Bid for such Collateral unless there is a competing cash bid for the same Collateral (and only for *that Collateral*) in an amount in excess of Pinnacle's credit bid. Pinnacle should not have its secured claim determined based upon what could be an arbitrary allocation of value by a prospective purchaser.

48. In addition, the Debtors must include the allocation(s) with any Notice of Successful Bidder filed with the Court to allow Pinnacle the opportunity to object to any proposed final allocation as to Pinnacle's Properties to ensure that the allocation is a reasonable representation of value of such Properties and not an arbitrarily assigned number without any relation to the actual value of the Properties.

E. **Sale Proceeds Attributable to Pinnacle's Collateral Must be Segregated (If Not Paid At Closing) and Remain Subject to Pinnacle's Liens.**

49. The Motion and proposed order fail to provide for the escrowing of sales proceeds from the sale of Pinnacle's Collateral. The proposed Order must provide that at closing of any Transaction involving Pinnacle's Collateral, the portion of the net sales proceeds allocable to Pinnacle's Collateral shall be paid to, or held in a segregated escrow account for the benefit of Pinnacle, and shall remain there subject to Pinnacle's lien with the same validity, priority, and

extent as immediately prior to closing, pending further order, to the extent not paid at closing.

50. This is particularly an issue in the event the Debtors sell Pinnacle's Collateral with DIP Collateral. "It has been repeatedly held that, where the holder of a lien upon property permits its sale in bulk, together with other property upon which he claims no lien, he is estopped from asserting a lien against any portion of the purchase price." *See McFarlin v. McFarlin (In re B.A. Lockwood Grain Co.)*, 225 F. 873, 875 (S.D. Iowa 1915); *see also* Jeffrey Hamilton & Heather Forrest, Bankruptcy Business Acquisitions ¶ 16.06 at 16-4 (Richard N. Tilton ed. 2006)("When property is sold in bulk, free of liens, the lienholders should insist on an allocation of the purchase price before the sale is approved and should consider opposing any sale where no allocation has been made"). Further, it has long been the rule in bankruptcy that selling separate pieces of real property as a unit is not permissible where the properties to be sold are subject to separate liens. *See In re Bowen*, 35 F. Supp. 60, 61 (E.D. Pa. 1940) (two separate properties subject to two separate mortgages could not be sold as a unit).

F. **RESERVATION OF RIGHTS REGARDING DEBTORS' DISCRETION IN ACCEPTING BIDS.**

51. As proposed, the Bid Procedures give Debtors a significant degree of discretion to determine, among other things, which bids constitute Qualified Bids and which bid or bids constitute the "best" offer for Debtors' Assets. While some standards and criteria appear to exist to limit the exercise of Debtors' discretion in connection with the Bid Procedures, it is unclear what standards will apply if Debtors choose to reject the highest offer for what they deem to be the "best offer."

52. As such, to the extent that Debtors exercise their discretion in a manner that does not maximize sale proceeds as to each Facility, independently, then Pinnacle reserves the right to object to Debtors' exercise of such discretion whether by the filing of an objection to the sale of

Pinnacle's Collateral or by separate motion.

## JOINDER

53. Pinnacle adopts and incorporates by reference the arguments and objections raised by any other Prepetition Secured Parties (as defined in Debtors' Cash Collateral Motion [Doc. 28]) as to the Bid Procedures Motion.

## RESERVATION OF RIGHTS

54. Pinnacle's review remains ongoing. Accordingly, Pinnacle hereby reserves all of its rights and remedies including, without limitation, the right to seek relief from the automatic stay under Bankruptcy Code Section 362(d), and the right to seek conversion or dismissal of these bankruptcy cases.

55. Pinnacle expressly reserves all rights under 11 U.S.C. § 560 and applicable law.

**WHEREFORE**, Pinnacle respectfully requests that the Court deny Debtors' Motion. Pinnacle requests such other, further and different relief as to which it may be entitled.

Dated: March 2, 2026

> **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ**
> A Professional Corporation
>
> By: /s/ Susan C. Mathews
> Susan C. Mathews
> Texas Bar No. 05060650
> 1301 McKinney St., Suite 3700
> Houston, TX 77010
> (713) 650-9700
> (713) 650-9701 – Facsimile
> smathews@bakerdonelson.com
> Kathleen G. Furr*
> 3414 Peachtree Road NE
> Suite 1600
> Atlanta, GA 30326
> (404) 577-6000
> kfurr@bakerdonelson.com

**COUNSEL PINNACLE BANK, SUCCESSOR BY MERGER TO SYNOVUS BANK**

* Admitted *Pro Hac Vice*

### CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2026, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices, including the following:

**DEBTORS**

Inspired Healthcare Capital Holdings, LLC
c/o Ankura Consulting Group, LLC
485 Lexington Avenue, 10th Floor
New York, NY 10017
Email: ben.jones@ankura.com

**U.S. TRUSTEE**

Susan Hersh
1100 Commerce Street
Room 976
Dallas, TX 75202
Email: Susan.hersh@usdoj.gov

**COUNSEL FOR DEBTORS**

McDermott Will & Schulte LLP
c/o Carmen Dingman
c/o Landon Foody
c/o Marcus Alan Helt
c/o Jared Mezzatesta
c/o Daniel M Simon
c/o Jack G. Haake
2801 N. Harwood Street
Suite 2600, Dallas, TX 75201
    and
1180 Peachtree St. NE
Suite 3350,
Atlanta, GA 30309
    and
444 West Lake Street, Suite 4000,
Chicago, IL 60606
Email: cdingman@mwe.com
Email: lfoody@mwe.com
Email: mhelt@mwe.com

**COUNSEL FOR DIP LENDER**

Foley & Lardner, LLP
c/o Adrienne K. Walker
c/o Jamie N. Class
c/o Thomas C. Scannell
111 Huntington Ave.
Boston, MA 02199,
Email: awalker@foley.com
Email: jclass@foley.com
Email: tscannell@foley.com

Email: jmezzatesta@mcdermottlaw.com
Email: dsimon@mwe.com
Email: jhaake@mcdermottlaw.com

                    */s/ Susan C. Mathews*
                    Susan C. Mathews