

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 24, 2026**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) Case No. 26-90004 (MXM) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) **Related to Docket Nos. 11, 97** |

## SECOND INTERIM ORDER
## (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE
## THEIR EXISTING CASH MANAGEMENT SYSTEM AND
## MAINTAIN THEIR EXISTING BANK ACCOUNTS, (B) CONTINUE TO PERFORM
## INTERCOMPANY TRANSACTIONS, AND (C) MAINTAIN EXISTING BUSINESS
## FORMS AND BOOKS AND RECORDS; AND (II) GRANTING RELATED RELIEF

---

[1]  The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

Upon the motion (the "Motion")[2] of the Debtors for entry of an interim order (this "Order"), (a) authorizing, but not directing, the Debtors to (i) continue to operate their existing cash management system, (ii) maintain existing bank accounts and business forms and honor certain prepetition obligations related thereto, (iii) maintain their corporate card program and honor prepetition obligations related thereto, and (iv) continue to perform intercompany funding, transfers, and transactions through their existing cash management system consistent with historical practice; (b) extending the time for the Debtors to comply with the Bankruptcy Code section 345(b) deposit and investment requirements, to the extent necessary; and (c) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the Interim Order entered on February 6, 2026; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a second interim order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and the Court having reviewed the Motion, the objections filed thereto, and having heard the statements in support of, and in opposition to, the relief requested therein at a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby;

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

2

**ORDERED, ADJUDGED, AND DECREED that:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      Subject to the terms of this Order, the Debtors are authorized, but not directed, on an interim basis to: (a) maintain and continue operating the Cash Management System described in the Motion, a diagram of which is attached to the Motion as Exhibit C, and honor any prepetition obligations related thereto; (b) designate, maintain, and continue to use on an interim basis any or all of their existing Bank Accounts, including, but not limited to, the Bank Accounts identified on Exhibit D attached to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (d) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts; (e) pay the Bank Fees (including any prepetition amounts); and (f) open new debtor-in-possession bank accounts or close existing Bank Accounts in the ordinary course of business in their reasonable discretion; *provided* that (i) any new account opened by the Debtors is opened as a debtor-in-possession account with a bank that has executed (or is willing to execute) a Uniform Depository Agreement ("UDA") with the U.S. Trustee, and (ii) the Debtors provide reasonable advance notice to the Official Committee of Unsecured Creditors (the "Committee"), the Ad Hoc Committee of DST Investors (the "Ad Hoc Committee") or any representative or official committee representing DST investors which may be appointed in this case (collectively, the "DST Committee"), JDI Loans, LLC (the "DIP Lender"), counsel to Concorde Investment Services, LLC  ("Concorde")[3] (solely for the Concorde DSTs), and U.S. Trustee of the opening or closing of an account during which period the

---

[3]      Concorde asserts that it is the agent for the beneficial interest owners of two DSTs, specifically, Inspired Senior Living of Augusta DST and Inspired Senior Living of Fort Myers DST (collectively, the "Concorde DSTs").

3

Committee, DST Committee, and U.S. Trustee shall have the opportunity to object to any proposed opening or closing of an account and Concorde shall have the opportunity to object to any proposed opening or closing of an account at the Concorde DSTs; *provided* that any account opened by any of the Debtors on or after the Petition Date at any Bank shall, for purposes of this Order, be deemed a Bank Account as if it had been listed on Exhibit D attached to the Motion and entitled to the relief granted herein.

3.      The Debtors are authorized, but not directed, to continue using, in their present form, the Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, and maintain and continue using, in their present form, the Books and Records.

4.      As soon as practicable after entry of this Order, the Debtors shall serve a copy of this Order on the Banks.

5.      The Debtors are authorized, but not directed, to: (a) pay undisputed prepetition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to the Banks as service charges for the maintenance of the Cash Management System; (b) reimburse the Banks for any claims arising before or after the Petition Date in connection with customer checks deposited with the Banks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts in the ordinary course of business, to the same extent the Debtors were responsible for such items prior to the Petition Date.

6.      Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, including disbursements by the Third-Party Managers on behalf of the Debtors, regardless of which entity pays those disbursements.

7.      Notwithstanding anything contained herein, the Third-Party Managers are authorized to continue to use the Third-Party Accounts pursuant to the terms of the Third-Party Management Agreements in the ordinary course of business and subject to the Third-Party Management Agreements, including any approved budgets or approved budget deviations as defined in the Third-Party Management Agreements and to use funds held in the Third-Party Accounts in the ordinary course of business.

8.      The Debtors are authorized, but not directed, to continue to engage in, perform under, and honor Intercompany Transactions[4], and make certain payments in connection therewith, in each case, in the ordinary course of business and consistent with the Debtors' historical practices, subject to this Order; *provided* that the Debtors are not permitted to effectuate Intercompany Transactions to non-Debtor affiliates absent further order of the Court.  The Debtors are authorized, but not required or directed, to set off mutual postpetition obligations relating to intercompany receivables and payables through the Cash Management System.  In connection with any Intercompany Transactions and all transfers between and disbursements from Bank Accounts, the Debtors shall maintain accurate, current records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.  The Debtors shall maintain a matrix of all cash and non-cash Intercompany Transactions and make such records, which may include supporting documentation or a balance of such transactions, available to counsel and/or financial advisor of the Committee, and/or the DST Committee upon reasonable request.  All objections and

---

[4]   For the avoidance of doubt, Intercompany Transactions refer solely to transactions between Debtors and does not include (or intend to include) transactions with non-Debtor parties.

rights are preserved as to any party's rights, without prejudice, to dispute Debtors' Intercompany Transactions through confirmation.

9. If such Intercompany Transactions involve transfers from accounts held by the DSTs or are otherwise designated by the Debtors as DST accounts, including the DST Operating Accounts, the DST Distribution Accounts, the DST Loan Clearing Accounts, the DST Debt Reserve Accounts, and the DST Trust Reserve Accounts (collectively, the "DST Accounts"), the Intercompany Transactions shall be subject to the terms of this Order and further limited as follows: Money may be transferred from such DST Accounts only for the following uses (1) the payment and service of secured debt owed by a DST to the Prepetition Secured Parties (as defined in the DIP Motion), (2) fees and expenses provided for in the applicable Master Lease or Trust Agreement which are actually incurred on behalf of the DST, and (3) all other administrative expenses incurred in these Chapter 11 Cases and allocated to the relevant DST, all in accordance with the relevant trust agreement and/or master lease or by order of this Court.

10. All parties reserve their rights to argue over these uses at a final hearing on this Cash Management Motion.  Further, all parties reserve rights to seek an accounting for Reallocation Fees and other fees and expenses transferred from the DST Accounts or the Master Tenant Accounts, as applicable, to other Debtors following the Petition Date, including related Signatory Trustees and Master Tenants.  No funds generated by a DST, Master Tenant, and/or the operations of its property, as applicable, shall be used for Intercompany Transactions, except as provided in the foregoing paragraphs.  For the avoidance of doubt, no DST or Master Tenant shall use revenue generated by its Community to directly fund another Community.

11. The relief granted in this Order with respect to the postpetition Intercompany Transactions and the balances resulting therefrom shall not constitute a finding as to the validity,

priority, or status of any prepetition Intercompany Transaction from which a claim may have arisen, and the Debtors, the Committee, and the DST Committee expressly reserve any and all rights with regard to the validity, priority, or status of any prepetition claim or any Intercompany Transaction from which such claim may have arisen.  Notwithstanding anything to the contrary in this Order, nothing in this Order will impact or prejudice the ability of any party (including the Debtors, the Committee, or the DST Committee) to challenge, avoid, unwind, recharacterize, or assert any claim or cause of action with respect to any Intercompany Transaction.

12.     Those certain agreements existing between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Bank (including, for the avoidance of doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Bank agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

13.     Subject to paragraph 2, the Debtors are authorized, in the ordinary course and consistent with prepetition practices, to open new bank accounts or close any existing Bank Account and enter into any ancillary agreements, including new deposit control agreements, related to the foregoing, as the Debtors may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreement with the Banks, as applicable, so long as any such new account is as a debtor-in-possession account with a bank that is (a) is designated as an authorized

depository by the U.S. Trustee pursuant to the U.S. Trustee Guidelines or otherwise approved by the U.S. Trustee as an acceptable depository institution in these chapter 11 cases; and (b) agrees to be bound by the terms of this Order; *provided* that the Debtors shall provide reasonable notice to the Committee, the DST Committee, the DIP Lender, and U.S. Trustee of the opening or closing of an account during which period the Committee, DST Committee, and U.S. Trustee shall have the opportunity to object to any proposed opening or closing of such account. For the avoidance of doubt, the Debtors shall coordinate with the Prepetition Secured Parties prior to the closure of any account in which they may have an interest, including to ensure any security interests of the Prepetition Secured Parties are preserved and adequately protected.

14. The relief granted in this Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a Bank.

15. In the event that any third-party deposits funds (whether before, on or after, the Petition Date) into a bank account other than the Bank Accounts identified by the Debtors to such third party, such funds shall as soon as reasonably practicable be swept into the correct account. For the avoidance of doubt, if an Intercompany Transaction transfers funds into an incorrect Bank Account, the Debtors reserve the right, without need for a hearing or order, to, as soon as reasonably practicable, sweep such funds into the correct account.

16. The Debtors shall have 45 days from the entry of this Order to comply with the deposit and investment requirements of Bankruptcy Code section 345(b). Such extension is without prejudice to the Debtors' right to request a further extension of the time to comply with, or waiver of the requirements of, Bankruptcy Code section 345(b). The U.S. Trustee may further

extend the time period set forth in this paragraph, following the Debtors written request, without need for a further Court order.

17.     Notwithstanding anything to the contrary in the Motion or herein, the Debtors may not access, sweep, or otherwise use the accounts set forth on Schedule A hereto (the "Restricted Accounts") without further order of the Court.  The Restricted Accounts are not subject to the requirements set forth in Section 345 of the Bankruptcy Code.

18.     The Banks are authorized (a) to continue to service and administer the Bank Accounts as accounts of each respective Debtor as a debtor-in-possession without interruption and in the usual and ordinary course; (b) to receive, process, honor, and pay any and all checks, drafts, wires, or ACH transfers drawn on the Bank Accounts after the Petition Date by the holders or makers thereof (to the extent of available funds), as the case may be, including with respect to checks or other items issued prior to the Petition Date to the extent instructed by the Debtors, authorized by this Order, or a further order of this Court; (c) to debit the Bank Accounts in the ordinary course of business and without further order of the Court on account of all Bank Fees and costs in connection with any checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date, which have been dishonored or returned unpaid for any reason, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (d) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as to service charges for the maintenance of the Cash Management System, subject to the terms of this Order.  Notwithstanding the foregoing, no checks or other debits issued against the Bank Accounts prior to the commencement of these Chapter 11 Cases shall be honored, except as otherwise set forth in this Order or as authorized by other or further order of this Court and as represented by the Debtors to such Banks.  The Debtors are authorized to issue postpetition checks,

9

or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that have been (a) dishonored as a consequence of these Chapter 11 Cases and (b) authorized by an order of this Court.

19.     The Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of the Court.  Notwithstanding any other provision of this Order, the Banks shall not be deemed to be, nor shall be liable to, the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order (a) following the Debtors' instructions or Debtors' representations as to any order of this Court; (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored despite implementation of reasonable item-handling procedures; or (c) as the result of an innocent mistake made despite implementation of customary item-handling procedures.

20.     Subject to the terms of this Order, and only to the extent sufficient funds are available in each applicable Bank Account, all Banks at which the Bank Accounts are maintained are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors-in-possession, without interruption and in the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, credit card payments, and wire transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

21.     All net Intercompany Claims against a Debtor held by another Debtor arising from postpetition Intercompany Transactions, if any, shall be entitled to administrative expense priority pursuant to Bankruptcy Code section 503(b)(1).

22.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity pays those disbursements.

23.     The banks and financial institutions on which checks were drawn or electronic payment requests made for payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such Banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order without any duty of further inquiry and without liability for following the Debtors' instructions.

24.     Notwithstanding anything to the contrary contained in the Motion or herein, any payment to be made hereunder (or prohibitions thereof) , and any authorization (or prohibitions) contained herein, shall be subject to and in accordance with any final orders, as applicable, authorizing or approving any postpetition debtor in possession financing or use of cash collateral for the Debtor (such orders, the "DIP Order"), including the budget attached thereto. To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.  For the avoidance of doubt, for the purposes of calculating quarterly fees, the Debtors' disbursements shall include the disbursements of Third-Party Managers made on behalf of the Debtors for the Communities.

25.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to the relief granted herein.

26.     The Master Tenants of the DSTs shall distribute amounts only in accordance with the DSTs respective Trust Agreements, Master Leases, or by Order of the Court.  To the extent

amounts remain in any month after all payments required by the applicable DST Trust Agreement, Master Lease, or Order of the Court, such excess funds shall be held by the applicable Master Tenant of the applicable DST.

27.     The bank account held at First Horizon Bank ending in x6614 (the "Augusta Community Account") for the Community known as Thrive at Augusta (the "Augusta Community") shall maintain a balance under $250,000 and add a Debtor officer to the signature card.  Funds in the Augusta Community Account exceeding $250,000 shall be swept to the Master Tenant account for the Augusta Community (the "Augusta MT Account") with the rights and interests of Integrity Life Insurance Company ("Integrity") and the Debtors remaining the same as in the Augusta Community Account.  The Augusta Master Tenant shall pay Base Rent to the Inspired Senior Living of Augusta DST (the "Augusta DST") to the extent that there is net operating income ("NOI") from the Augusta Community that is sufficient to make such payments.  For purposes of this paragraph, NOI shall be calculated as the Third-Party Manager's receipts less fees and expenses incurred at the Augusta Community including, but not limited to, intermittent costs and fees such as those related to making units rent-ready.  For the avoidance of doubt, funds swept to the Augusta MT Account, and the potential need for the Augusta Master Tenant to transfer funds back to the Augusta Community Account based on facility cash needs will be considered for purposes of determining the availability of sufficient NOI at the Augusta Community to pay adequate protection payments to Integrity.  The Augusta DST will use the Base Rent paid by the Master Tenant to pay Integrity post-petition interest at the non-default rate as a form of adequate protection, subject to challenge and potential recharacterization by the Bankruptcy Court, in whole or in part, as payments of principal, should it later be determined that Integrity was undersecured at pertinent times.  The adequate protection payment for the non-

default interest payment through March 10 is $98,205.04, which will be payable upon entry of this Order and the DIP Order.  Thereafter, as a monthly adequate protection payment, on the tenth day of each month beginning April 10, 2026, the Augusta DST shall make a payment of $77,530.29 to the extent that based on the most recent financials there is NOI sufficient to make such payments.  If Integrity provides a written notice, which may be by email, that the Augusta DST failed to make such a payment, the Augusta DST shall have five (5) business days to cure such a default.  If the default is not cured in such period, ~~authority~~ to use its Integrity's cash collateral shall be revoked and the Debtors may only use such cash collateral with Integrity's consent or upon further order of the Court.  For the avoidance of doubt, the Augusta DST may use amounts exceeding the adequate protection payments to Integrity to pay Reallocation Fees, subject to the Allocation Protocol, as defined in order approving the DIP Motion (the "DIP Order"), the budget approved by the DIP Order, and the restrictions set forth herein.

28.     Nothing contained in the Motion or this Order nor any actions taken pursuant to the relief granted herein is intended or shall be construed as: (a) an implication or admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) an impairment or waiver of the Debtors' or any other party in interest's rights to dispute the amount of, basis for, or validity of any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any claim is of a type specified or defined in the Motion, or in this Order granting the relief requested by the Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a waiver of any claim or cause of action that may exist against any creditor or interest holder; (f) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365

13

of the Bankruptcy Code or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) an implication or admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance of property of the Debtors' estates; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to this Order are valid and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) an impairment or waiver of any claims or causes of action that may exist against any entity under the Bankruptcy Code or any other applicable law including under sections 547, 548, and 549 of the Bankruptcy Code. Any payment or transfer made pursuant to this Order is not intended and should not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute the extent, perfection, priority, validity, or amount of such claim; and nothing herein shall create a security interest or perfect a security interest in property that would not otherwise be subject to a security interest under federal or state law.

29. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm.

30. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

14

31.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

32.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

33.     The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

34.     A further hearing on this Motion is hereby scheduled for March 30, 2026, at 1:30 pm (CT).  Objections to entry of a final order must be filed by 5:00 p.m. (CT) on March 26, 2026. If no objections are filed, the Court may enter the final order without a hearing.

35.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

# # # **END OF ORDER** # # #

Prepared and presented by:


/s/ Marcus A. Helt
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
**MCDERMOTT WILL & SCHULTE LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone:     (214) 295-8000
Facsimile:     (972) 232-3098
Email:         mhelt@mcdermottlaw.com
               jhaake@mcdermottlaw.com


- and -


Daniel M. Simon (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
Landon Foody (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:     (312) 372-2000
Facsimile:     (312) 984-7700
Email:         dsimon@mcdermottlaw.com
               cdingman@mcdermottlaw.com
               lfoody@mcdermottlaw.com


*Proposed Counsel for the Debtors and
Debtors-in-Possession*

## Schedule A

### Restricted Account

| # | Legal Entity Name | Related Community | Financial Institution | Account Type | Last 4 Digits of Account Number |
|---|---|---|---|---|---|
| 1 | IHC – Candle Light Cove DST | IHC – Candle Light Cove | Provident Bank | DST Debt Reserve Accounts | x4400 |
| 2 | IHC – Candle Light Cove DST | IHC – Candle Light Cove | Provident Bank | DST Loan Clearing Accounts | x4265 |
| 3 | Inspired Senior Living of Brookhaven DST | Inspired Senior Living of Brookhaven | Synovus Bank | DST Debt Reserve Accounts | x1924 |
| 4 | Inspired Senior Living of Brookhaven DST | Inspired Senior Living of Brookhaven | Synovus Bank | DST Loan Clearing Accounts | x1908 |
| 5 | Inspired Senior Living of Delray Beach DST | Inspired Senior Living of Delray Beach | Comerica | DST Loan Clearing Accounts | x7655 |
| 6 | Inspired Senior Living of Dunedin DST | Inspired Senior Living of Dunedin | Provident Bank | DST Debt Reserve Accounts | x6284 |
| 7 | Inspired Senior Living of Dunedin DST | Inspired Senior Living of Dunedin | Provident Bank | DST Loan Clearing Accounts | x5091 |
| 8. | Inspired Senior Living of Eugene DST | Inspired Senior Living of Eugene | UMB Bank | DST Debt Reserve Accounts | x1024 |
| 9 | Inspired Senior Living of Fort Myers DST | Inspired Senior Living of Fort Myers | Stride Bank | DST Debt Reserve Accounts | x4890 |
| 10. | Inspired Senior Living of Hamilton DST | Inspired Senior Living of Hamilton | Provident Bank | DST Debt Reserve Accounts | x4893 |
| 11 | Inspired Senior Living of Hamilton DST | Inspired Senior Living of Hamilton | Provident Bank | DST Loan Clearing Accounts | x4885 |
| 12 | Inspired Senior Living of Melbourne DST | Inspired Senior Living of Melbourne | Synovus Bank | DST Loan Clearing Accounts | x1075 |
| 13 | Inspired Senior Living of North Haven DST | Inspired Senior Living of North Haven | Provident Bank | DST Debt Reserve Accounts | x6012 |
| 14 | Inspired Senior Living of North Haven DST | Inspired Senior Living of North Haven | Provident Bank | DST Loan Clearing Accounts | x5865 |
| 15 | Inspired Senior Living of Reno DST | Inspired Senior Living of Reno | Synovus Bank | DST Loan Clearing Accounts | x5496 |
| 16 | Inspired Senior Living of St. Petersburg DST | Inspired Senior Living of St. Petersburg | Webster Bank | DST Debt Reserve Accounts | x5320 |
| 17 | Inspired Senior Living of St. Petersburg DST | Inspired Senior Living of St. Petersburg | Webster Bank | DST Loan Clearing Accounts | x3449 |

| # | Legal Entity Name | Related Community | Financial Institution | Account Type | Last 4 Digits of Account Number |
|---|---|---|---|---|---|
| 18 | Inspired Senior Living of Grapevine DST | Inspired Senior Living of Grapevine | Texas Security | DST Trust Reserve Accounts | x9189 |