CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 13, 2026**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) | Case No. 26-90004 (MXM) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Related to Docket No. 99** |

**ORDER GRANTING DEBTORS' MOTION FOR THE ENTRY OF AN ORDER (I) ESTABLISHING BID PROCEDURES, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT AND PROVIDE BID PROTECTIONS, (IV) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (V) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES AND (VI) GRANTING RELATED RELIEF**

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

Upon the motion (the "Motion")[2] of the Debtors for entry of an order (this "Order") (a) approving certain bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") by which the Debtors will solicit and select the highest or otherwise best offer(s) for the sale or sales (each, a "Transaction") of all, substantially all, or any portion of the Debtors' assets (the "Assets"); (b) scheduling certain dates and deadlines in connection with the approval of the Bid Procedures; (c) approving a process by which, at the Debtors' election, one or more Stalking Horse Bidder(s) may be selected from among those parties making a Bid, and Bid Protections may be granted to such Stalking Horse Bidder(s) without further order of the Court, (d) approving the manner of notice of an auction or auctions, if any, for any Transaction (the "Auction") and the hearing to consider approval of each Transaction (the "Sale Hearing"); and (e) approving procedures for the assumption and assignment of certain executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") in connection with any Transaction, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas; and the matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and venue of this proceeding and the Motion in this District being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court being able to issue a final order consistent with Article III of the United States Constitution; and due and sufficient notice of the Motion having been given under the particular circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at

[2] Capitalized terms not otherwise defined in this Order shall have the meanings given to them in the Motion or the Bid Procedures, as applicable.

a hearing before this Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is granted as set forth herein.

2. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bid Procedures, which are fair, reasonable, and appropriate under the circumstances and are designed to maximize the recovery on, and realizable value of, the Debtors' enterprise, including with respect to the proposed procedures for providing Bid Protections as determined by the Debtors in an exercise of their business judgment in accordance with the Bid Procedures.

3. The Debtors' notice of the Motion and the Hearing is (a) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (b) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and (c) adequate and sufficient under the circumstances of the Chapter 11 Cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4. All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled or otherwise reserved (as noted expressly here) for further Order of the Court.

## I. Important Dates and Deadlines.

5. The Debtors, in consultation with the Official Committee of Unsecured Creditors (the "Committee") are authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures in accordance with the Schedule:

| Action | Description | Deadline |
|---|---|---|
| Letter of Intent Deadline for a Stalking Horse Bidder | The deadline to submit a non-binding letter of intent to be a Stalking Horse Bidder | March 20, 2026, at 12:00 p.m., prevailing Central Time |
| Contract Assumption Notice | Target date for the Debtor to file a notice of contracts that may be assumed and assigned to any Successful Bidder. | April 14, 2026 |
| Cure Objection Deadline | The deadline by which objections to the proposed assumption and assignment of any Executory Contract or Unexpired Lease or the Cure Costs proposed with respect thereto must be made. | April 28, 2026, at 12:00 p.m., prevailing Central Time |
| Deadline to Designate a Stalking Horse Bidder | The deadline by which the Debtors may designate a Stalking Horse Bidder | May 18, 2026, at 12:00 p.m., prevailing Central Time |
| Bid Deadline | The deadline by which all binding Bids must be actually received pursuant to the Bid Procedures. | June 19, 2026, at 12:00 p.m., prevailing Central Time |
| Credit Bid Deadline | The deadline by which all credit bids must be actually received pursuant to the Bid Procedures. | June 20, 2026, at 12:00 p.m., prevailing Central Time |
| Auction (if any) | The date and time of the Auction. | June 24, 2026, at 10:00 a.m., prevailing Central Time |
| Notice of Successful Bidder | The deadline by which the Debtor will file on the docket, but not serve, a notice identifying the Successful Bidder, the applicable Successful Bidder, the Assets, and the key terms of the agreement. | Within one (1) business day upon the conclusion of the Auction (if any). |

| Action | Description | Deadline |
|---|---|---|
| Sale Objection Deadline | The deadline by which objections to the Successful Bidder and Transaction, if any, or to dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Executory Contract or Unexpired Lease must be made. | June 26, 2026, at 4:00 p.m., prevailing Central Time |
| Sale Hearing | The Hearing, if any, before the Court to consider approval of the Successful Bid or Successful Bids, pursuant to which the Debtor and the Successful Bidder or Successful Bidders will consummate the Transaction. | June 30, 2026, at 9:30 a.m., prevailing Central Time |

6. If any party fails to timely file with the Court and serve an objection by June 26, 2026, at 4:00 p.m., prevailing Central Time (the "Sale Objection Deadline") or otherwise abide by the procedures set forth in the Bid Procedures regarding an objection to any Transaction, such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of any Transaction, including the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" for the purposes of section 363(f) of the Bankruptcy Code.

7. The Debtors reserve the right, and are authorized to, following consultation with the Consultation Parties, modify the Schedule in accordance with the Bid Procedures, including any Auction that may take place.

**II. Auction, Bid Procedures, and Related Relief.**

8. The Bid Procedures, attached as **Exhibit 1** to this Order, are hereby approved in their entirety, incorporated by reference as if fully set forth herein, and shall govern all Bids and

Bid Procedures relating to the Assets. The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bid Procedures in accordance therewith. The failure to specifically include or reference a particular provision of the Bid Procedures in this Order does not diminish or impair the effectiveness of such provision.

9. Pursuant to the Bid Procedures, the Debtors, in their business judgment, in consultation with the Consultation Parties, may (a) determine which Qualified Bid is the highest or otherwise best offer, (b) reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of any Transaction, or (iii) contrary to the best interests of the Debtors, their estates, their creditors, and other stakeholders, and (c) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these Chapter 11 Cases.

10. Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bid Procedures, or an order of this Court, as applicable.

11. The form of Sale Notice attached hereto as **Exhibit 2** is approved.

12. Within one (1) business day after entry of the Bid Procedures Order, the Debtors will cause the Sale Notice to be served on (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Attorney for the Northern District of Texas; (d) the Attorney General for the State of Texas; (e) State Comptroller of Public Accounts; (f) the Centers for Medicare and Medicaid Services; (g) the Attorneys General for the states in which the Debtors conduct business;

(h) the parties included on the Debtors' list of their 30 largest unsecured creditors; (i) counsel to the Debtors' prepetition lenders; (j) counsel to the Committee; (k) DIP Lender; and (l) all parties entitled to notice pursuant to Bankruptcy Rule 2002.

13. Within five (5) business days after entry of the Bid Procedures Order, the Debtor will post the Sale Notice on its restructuring website, https://dm.epiq11.com/InspiredHealthcare, and publish the Sale Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition), the *Wall Street Journal*, or *USA Today*, to provide notice to any other potential interested parties.

14. Pursuant to the Bid Procedures, each bidder participating in the Auction must (a) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or the Transaction, and (b) agree not to engage in any collusion with respect to any Bids, the Auction, or the Transaction.

15. The Auction shall be transcribed or videotaped.

**III. Assumption and Assignment Procedures.**

20. The procedures set forth below regarding the assumption and assignment of any Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to Bankruptcy Code section 365(b) and assigned to the Successful Bidder, if any, pursuant to Bankruptcy Code section 365(f) in connection with any Transaction (the "Assumption and Assignment Procedures") are hereby approved to the extent set forth herein.

21. The Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with the Transaction(s) under the Stalking Horse Agreement, if any, and any marked versions thereof, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited

to, all claims, demands, charges, rights to refunds, and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to a Contract (the foregoing amounts as stated in the Contract Assumption Notice, the "Cure Costs"):

(a) **Notice of Contract Assumption**. On or before April 7, 2026, the Debtors shall file on the docket and serve a notice of contracts that may be assumed and assigned to any Successful Bidder (the "Contract Assumption Notice"), in substantially the form attached hereto as **Exhibit 3**, via first class mail on the counterparties to the Executory Contracts or Unexpired Leases to be assumed and assigned in connection with any Transaction (the "Contract Counterparties"). The Contract Assumption Notice, shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the counterparty to the Executory Contract or Unexpired Lease, (iii) the Debtors' good faith estimates of the Cure Costs, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the Cure Objection Deadline; *provided, however*, that service of a Contract Assumption Notice does not constitute an admission that any Executory Contracts and Unexpired Leases listed thereon is an executory contract or that such stated Cure Cost constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved. Further, the inclusion of a contract on the Contract Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

(b) **Cure Costs**. The payment of the applicable Cure Costs by the Debtors and/or the Successful Bidder, as applicable shall (i) effect a cure of all defaults existing thereunder, (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the ultimately assumed Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

(c) **Supplemental Contract Assumption Notice**. To the extent the Debtors, at any time after the Auction (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Contract Assumption Notice, (iii) and/or modify the

previously stated Cure Cost associated with any Executory Contract or Unexpired Lease, the Debtors will promptly file with this Court and serve by first-class mail a supplemental notice of contract assumption (a "Supplemental Assumption Notice") on each of the Contract Counterparties affected by the Supplemental Assumption Notice. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Contract Assumption Notice. Except as otherwise provided in any purchase agreement, a Successful Bidder may designate additional Executory Contracts and Unexpired Leases to be assumed and assigned up to two (2) business days prior to the Closing and may remove Executory Contracts or Unexpired Leases from the list of Executory Contracts and Unexpired Leases up to two (2) business days prior to the Closing.

(d) **Objections**. Objections, if any, to the proposed assumption and assignment or the Cure Cost proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Cost, state the correct Cure Cost alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Stalking Horse Bidder(s), if any, (c) counsel to the DIP Lenders, and (d) any other party that has filed a notice of appearance in these Chapter 11 Cases, so as to be **actually received no later than April 28, 2026, at 12:00 p.m., prevailing Central Time, (the "Cure Objection Deadline"), or the deadline set forth in a Supplemental Assumption Notice, as applicable**. The Debtors may modify the Cure Objection Deadline and the deadline set forth in a Supplemental Assumption Notice by filing a notice of such modification on the Court's docket.

(e) **Deemed Consent of Counterparties**. If no objection to the proposed assumption and assignment or the Cure Cost proposed with respect thereto is timely filed with respect to an Executory Contract or Unexpired Lease: (i) the counterparty to such Executory Contract or Unexpired Lease shall be deemed to have consented to the assumption by the Debtors and assignment to the Successful Bidder of the Executory Contract or Unexpired Lease, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Executory Contract or Unexpired Lease and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to Bankruptcy Code section 365(b)(1)(A) and (B) upon payment of the Cure Costs set forth in the applicable Contract Assumption Notice or Supplemental Assumption Notice for such Executory Contract or Unexpired Lease; and (iii) the counterparty shall be forever barred from asserting any other claims related to such Executory Contract

or Unexpired Lease against the Debtors and their estates or the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the contract objections and the applicable Sale Order.

(f) **Dispute Resolution**. To the extent that the parties are unable to consensually resolve any objection to a Cure Cost or other objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Costs required to be paid to the applicable counterparty under the Bankruptcy Code sections 365(b)(a)(1)(A) and (B) (any such dispute, a "Cure Dispute"), the Debtors may (i) assume the applicable Executory Contract or Unexpired Lease prior to the resolution of the Cure Dispute; *provided* that the Debtors shall (A) pay to the applicable counterparty the undisputed portion of the Cure Costs within five (5) business days after entry of the applicable Sale Order and (B) reserve cash in an amount sufficient to pay the disputed portion of the Cure Costs reasonably asserted by the applicable counterparty (or such lesser amount as may be fixed or estimated by the Court or otherwise agreed to by the counterparty and the Debtors), or (ii) adjourn their request to assume the Executory Contract or Unexpired Lease pending resolution of the Cure Dispute (an "Adjourned Cure Dispute"); *provided further* that, to the extent the Adjourned Cure Dispute is resolved or determined unfavorably to the Debtors, the Debtors may withdraw the proposed assumption of the applicable Executory Contract or Unexpired Lease after such determination by filing a notice of withdrawal, which, in the case of a lease, shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under Bankruptcy Code section 365(d)(4). The Debtors shall file notice of their intention to reserve for Cure Costs or to adjourn their request for assumption. An Adjourned Cure Dispute may be resolved after the closing date of the applicable Transaction in the Debtors' discretion.

(g) **Contract Assumption**. No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to Bankruptcy Code section 365 until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the applicable Transaction has closed.

22. Any party failing to timely file an objection to the Cure Costs, the proposed assumption and assignment of an Executory Contract or Unexpired Lease listed on the Contract Assumption Notice or a Supplemental Assumption Notice, or the adequate assurance of future performance provided by the Successful Bidder is deemed to have consented to (a) such Cure Cost, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related

relief requested in the Motion, and (d) the applicable Transaction. Such party shall be forever barred and estopped from objecting to the Cure Costs, the assumption and assignment of the Executory Contract or Unexpired Lease, adequate assurance of future performance, and the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to such party's Executory Contract or Unexpired Lease.

23. The Debtors shall provide reasonable evidence to each Executory Contract or Unexpired Lease counterparty that the Proposed Assignee has the ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the applicable Executory Contract or Unexpired Lease counterparties via email, with such information to be used only for purpose of assessing the applicable bidder.

24. The inclusion of an Executory Contract or Unexpired Lease in the Contract Assumption Notice or a Supplemental Assumption Notice will not obligate any Debtor to assume any Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to take assignment of such assumed Contract. Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to the executed definitive asset purchase agreement or other agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to the applicable Successful Bidder. No Executory Contract or Unexpired Lease in the Contract

Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

**IV. Miscellaneous.**

25. The Debtors shall not sell or assign any causes of action under chapter 5 of the Bankruptcy Code, commercial torts, or insider claims in connection with the Bid Procedures and the Sale Transaction contemplated herein without further order of the court.[3]

26. The Debtors shall use commercially reasonable efforts to have bidding parties submit bids (a) identifying the collateral for which they are bidding and, (b) if bidding for more than one Community, allocating their bid to the assets for which they are bidding.

27. Nothing in this Order or the Bid Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the sureties, the Debtors, the Debtors' lenders, and the agents under their respective credit agreements, the Stalking Horse Bidder(s) (if any) or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, surety bonds or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Court relief with regard to the Auction, the Bid Procedures, any Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

28. The Debtors are authorized, in consultation with the Consultation Parties, to revise the Schedule.

[3] If any party wishes to make a bid on these excluded causes of action, please contact the undersigned counsel for the Debtors. The Debtors reserve the right to seek a sale of these excluded causes of action by separate motion.

29. The Debtors, in connection with offering a product or a service, have not disclosed any policies prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Debtors. Subject to this finding, nothing contained in this Order prejudices parties in interest from seeking the appointment of a consumer privacy ombudsman at a later date in connection with any proposed sales pursuant to the Bankruptcy Code. In addition, nothing contained in this Order constitutes a determination as to whether the Debtors are healthcare businesses and does not prejudice the Court from appointing a patient care ombudsman pursuant to the Bankruptcy Code at a later date.

30. The failure to include or reference a particular provision of the Bid Procedures in this Order shall not diminish or impair the effectiveness or enforceability of such a provision in the Bid Procedures.

31. The Debtors, in consultation with the Consultation Parties, may modify any of the deadlines set forth herein or provide for additional deadlines within a Schedule without further order of the Court, provided that the Debtors will disclose all applicable deadlines in a notice filed with the Court.

32. The Debtors may, in consultation with the Consultation Parties, modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold.

33. In the event of any inconsistencies between this Order and the Motion and/or the Bid Procedures, this Order shall govern in all respects.

34. Nothing in the Motion or this Order or the relief granted (including any actions taken or payments made by the Debtors pursuant thereto) shall be construed as (a) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by

bankruptcy or applicable non-bankruptcy law; (b) a promise or requirement to pay any claim or other obligation; or (c) granting third-party-beneficiary status, bestowing any additional rights on any third party, or being otherwise enforceable by any third party.

35. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), the Local Rules, and the Complex Case Procedures are satisfied by such notice.

36. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

37. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38. The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

39. The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

40. Notwithstanding anything to the contrary contained herein:

(a) **Allocations.** If a Bid for Assets in more than one Community does not include an allocation of the Purchase Price by Community, the Debtors, after consulting with the Consultation Parties, shall allocate the Purchase Price in that Bid among each Community included in the Bid (the "Allocations"). The Debtors shall provide the Allocations of all Bids that include Assets constituting collateral of a Prepetition Secured Lender to such Prepetition Secured Lender, initially, by May 15, 2026, at 12:00 p.m., prevailing Central Time. The Debtors shall provide the Allocations of any subsequently received Bids that include Assets constituting collateral of a Prepetition Secured Lender to such Prepetition Secured Lender as soon as reasonably practicable following receipt by the Debtors. Bids received during the Auction shall set forth Allocations, which the Debtors shall provide to such Prepetition Secured Lender solely with respect to Bids that include Prepetition Secured Lender's collateral as soon as reasonably practical during the Auction. Bids shall remain allocated through the Sale Hearing. Allocations received after the Auction shall be provided to such

Prepetition Secured Lender only to the extent such Allocations relate to Assets that include its collateral as soon as reasonably practicable following receipt by the Debtors and, in any event, in advance of the Sale Objection Deadline.

(b) **Stalking Horse Designation.** On or before 12:00 p.m., prevailing Central Time, on the day that is at least two business days before the Deadline to Designate a Stalking Horse Bidder, the Debtors shall provide the Stalking Horse Bid(s) of the proposed Stalking Horse Bidder, including the Allocations of the proposed Stalking Horse Bid(s), to the Prepetition Secured Lenders for the purpose of permitting the Prepetition Secured Lenders to evaluate and exercise the Right of First Refusal (as defined below). If a Prepetition Secured Lender with collateral that is included in a Community subject to a proposed Stalking Horse Bid chooses not to submit a credit bid (other than as a Back-Up Bid) on or before the deadline to designate a Stalking Horse Bidder: (a) the Allocations in the Stalking Horse Bid, as provided to the Prepetition Secured Lenders, for the Community that includes collateral of the Prepetition Secured Lender shall set the minimum reserve price for that Community and (b) the Prepetition Secured Lender shall waive the right to dispute payment of all or a portion of the Bid Protections, except otherwise set forth below.

(c) **Bid Protections and Right of First Refusal.** If, following receipt of a proposed Stalking Horse Bid(s) pursuant to sub-section (b) herein, and subject to the Prepetition Secured Lenders' right of first refusal with respect to such Stalking Horse Bid(s) (the "Right of First Refusal") a Prepetition Secured Lender submits a credit bid in exercise of its Right of First Refusal that is higher than the proposed Allocation of the Stalking Horse Bid(s) for the Community that includes collateral of the Prepetition Secured Lender on or before the deadline to designate a Stalking Horse Bidder then such Prepetition Secured Lender shall have no liability for Bid Protections for the sale of that Community. To the extent the Prepetition Secured Lender submits a credit bid following the deadline to designate a Stalking Horse Bidder, the credit bid shall include a cash component sufficient to pay any applicable portion of the Bid Protections.

(d) **Qualified Bids.** The following criteria for a Qualified Bid, as stated in the Bid Procedures, Section IV, do not apply to a credit bid by a Prepetition Secured Lender: "d. Sources of Financing"; "i. Contingencies; No Financing or Diligence Outs"; and "j. Identity." Criteria "b. Good Faith Deposit" has been amended to eliminate any Good Faith Deposit requirement for the credit portion of any Bid that includes a credit bid.

(e) **Determination of Successful Bid.** The Prepetition Secured Lenders reserve the right to contest at the Sale Hearing the determination of a Successful Bid and to assert any other objections to the Transaction they determine appropriate.

(f) **Broker Fees**. To the extent that a Prepetition Secured Lender submits a credit bid, the Debtors reserve the right to seek payment of a broker fee allocable to such Transaction and such Prepetition Secured Lender reserves the right to dispute payment of all or a portion of any such broker fee.

(g) **Springing Credit Bid.** The Prepetition Secured Lenders will have the right to submit a springing credit bid ("Springing Credit Bid") at the Auction if the Debtors determine that, in their view, a Bid that would purport to reduce the portion of the Purchase Price allocated to a Community that includes collateral of a Prepetition Secured Lender below the portion allocated to such Community in the designated Stalking Horse Bid and is the then-highest or otherwise best Bid for that Community. Notwithstanding anything contained herein, if a Prepetition Secured Lender submits a Springing Credit Bid pursuant to this sub-section, the Debtors reserve the right to seek payment of any allocable Bid Protections and such Prepetition Secured Lender reserves the right to dispute, the payment of any cash component of any such Bid Protections.

(h) **Communications.** Prohibitions on communications among bidders shall apply to Prepetition Secured Lenders only with respect to their Bids and shall not apply to the Prepetition Secured Lenders in their capacity as lenders in these bankruptcy cases.

(i) **Modification.** No amendments, waivers or other modifications of this Bid Procedures Order or the Bid Procedures by the Debtors shall amend, waive or otherwise modify the provisions of this paragraph 40.

(j) **363(k) Challenge Rights.** All parties retain their rights to challenge a credit bid for cause under section 363(k) of the Bankruptcy Code.

# # # END OF ORDER # # #

Order submitted by:

*/s/ Marcus A. Helt*
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
**MCDERMOTT WILL & SCHULTE LLP**
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: mhelt@mcdermottlaw.com
jhaake@mcdermottlaw.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
Landon Foody (admitted *pro hac vice*)
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: dsimon@mcdermottlaw.com
cdingman@mcdermottlaw.com
lfoody@mcdermottlaw.com

*Counsel to the Debtors and Debtors-in-Possession*

# **Exhibit 1**

**Bid Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) | Case No. 26-90004 (MXM) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**BID PROCEDURES**

On February 2, 2026 (the "Petition Date"), Inspired Healthcare Capital Holdings, LLC and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On [●], 2026, the Court entered the *Order Granting Debtors' Motion for the Entry of an Order (I) Establishing Bid Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Authorizing the Debtors to Enter into a Stalking Horse Agreement and Provide Bid Protections, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. [●] (the "Bid Procedures Order"),[2] approving, among other things, the bid procedures (the "Bid Procedures") to be used in connection with the sale of the Debtors' assets (the "Assets") through one or more transactions (each, a "Transaction"), which may be effectuated through either a chapter 11 plan of reorganization or a sale pursuant to section 363 of the Bankruptcy Code.

Throughout the bidding process, the Debtor, in its business judgment and with the assistance of its advisors, will regularly and timely consult with the following parties (collectively, the "Consultation Parties"): (i) the DIP Lender, (ii) Provident Bank, Stride Bank, N.A., Pinnacle

---

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

Bank, as successor by merger to Synovus Bank, HPI Fairmount Lender, LP, UMB Bank, N.A., Provident Bank, as successor by merger to Lakeland Bank, Fifth Third Bank, N.A., successor by merger to Comerica Bank, and Integrity Life Insurance Company (collectively, the "Prepetition Secured Lenders") as it relates to their respective prepetition collateral, (iii) counsel to the Official Committee of Unsecured Creditors (the "Committee"), (iv) counsel to the DST Representatives,[3] and (v) counsel to any other statutory committee appointed in these Chapter 11 Cases; *provided* that, to the extent that the DIP Lender, the Prepetition Secured Lenders, or any member of the Committee, DST Representatives, or other statutory committee appointed in these Chapter 11 Cases submits a Bid (as defined below) for any Assets or indicates its intention to submit a Bid, such party shall not be a Consultation Party with respect to the evaluation and qualification of competing Bids for such Assets included in the such party's Bid or with respect to seeking and/or obtaining information about other Bids, but shall remain a Consultation Party for other purposes set forth in the Bid Procedures and Bid Procedures Order; *provided*, *further*, that any Consultation Party that desires to bid must indicate its intent to bid by the Bid Deadline or the Credit Bid Deadline, as applicable. Neither the DIP Lender nor any Prepetition Secured Lender shall be a Consultation Party under the Bid Procedures unless such lender waives its right to credit bid.

The Bid Procedures Order also authorizes, among other things, the right of the Debtors to, at any time prior to an Auction and in consultation with the Consultation Parties, designate a stalking horse bidder(s) for the applicable Assets (each, a "Stalking Horse Bidder"), whose Qualified Bid (as defined below) shall serve as the stalking horse bid (the "Stalking Horse Bid") for such Assets, subject to higher and better bids in accordance with the terms and conditions of the Bid Procedures.

These Bid Procedures are subject in all respects to the terms of the Bid Procedures Order. In the event of any inconsistencies between the Bid Procedures and the Bid Procedures Order (including, without limitation, the provisions set forth in paragraph 40 thereof), the Bid Procedures Order shall govern in all respects. Notwithstanding anything in this paragraph, except to the extent inconsistent with paragraph 40 of the Bid Procedures Order, the Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to modify, amend, supplement, or waive these Bid Procedures.

## I. KEY DATES

The Bid Procedures are designed to provide interested parties with the opportunity to qualify for, and participate in one or more potential auctions (each, an "Auction") to be conducted by the Debtors and to submit competing bids (each, a "Bid") for the purchase of some or all of the Assets. In accordance with the Bid Procedures, the Debtors will (a) coordinate with each Potential Bidder (as defined below) regarding the conduct of their respective due diligence, (b) evaluate Bids from Potential Bidders, in consultation with the Consultation Parties, (c) negotiate, in consultation with the Consultation Parties, any Bid made, and (d) make such other determinations

[3] For purposes of these Bid Procedures, the term "DST Representatives" shall include any official representative or committee (the "DST Committee") appointed to represent the holders of beneficial interests in the DSTs (the "DST Investors"), and in the absence of a DST Committee, Concorde Investments Services, LLC ("Concorde") and the Ad Hoc Committee of DST Investors (the "Ad Hoc Committee").

as are provided for in these Bid Procedures (collectively, the "Bidding Process").

The key dates for the Bidding Process are as follows:

| Action | Deadline |
|---|---|
| Letter of Intent Deadline for a Stalking Horse Bidder | March 20, 2026, at 12:00 p.m., prevailing Central Time |
| Contract Assumption Notice | April 14, 2026 |
| Cure Objection Deadline | April 28, 2026, at 12:00 p.m., prevailing Central Time |
| Deadline to Designate a Stalking Horse Bidder | May 18, 2026 |
| Bid Deadline | June 19, 2026, at 12:00 p.m., prevailing Central Time |
| Credit Bid Deadline | June 20, 2026, at 12:00 p.m., prevailing Central Time |
| Auction (if any) | June 24, 2026, at 10:00 p.m., prevailing Central Time |
| Notice of Successful Bidder | Within one (1) business day upon the conclusion of the Auction (if any). |
| Sale Objection Deadline | June 26, 2026, at 4:00 p.m., prevailing Central Time |
| Sale Hearing | June 30, 2026, at 9:30 a.m., prevailing Central Time |

The Debtors, in consultation with the Consultation Parties, may extend any of the deadlines in these Bid Procedures, including any Auction(s) that may take place, subject to the terms of the Bid Procedures Order.

## II. DESIGNATION OF STALKING HORSE BIDDER

The Debtors may, at any time prior to the deadline for designating Stalking Horse Bidders, pursuant to these Bid Procedures and in consultation with the Consultation Parties, designate a Stalking Horse Bidder for any sale. Any asset purchase agreement or similar agreement, including any restructuring support agreement or term sheet, memorializing the proposed sale or transaction set forth in any Stalking Horse Bid (a "Stalking Horse Agreement") will be binding on the Stalking Horse Bidder(s) and set the floor for all Qualified Bids, subject to higher or otherwise better Qualified Bids. If the Stalking Horse Bid is not selected as the Successful Bid, a Stalking Horse Bidder may still serve as the Back-Up Bidder, if its bid represents (in the view of the Debtors in consultation with the Consultation Parties) the second-highest or otherwise second-best bid after the applicable Auction. Notwithstanding any of the foregoing, the Debtors are not obligated to select any Stalking Horse Bidders and may proceed to the Auction(s) without one.

In the event that the Debtors, in consultation with the Consultation Parties, designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement for any of the Assets, the Debtors

shall file a notice designating the Stalking Horse Bidder which shall set forth: (a) the identification of the Stalking Horse Bidder; (b) the Assets that are subject to the Stalking Horse Bid; (c) the amount of the Stalking Horse Bid and what portion (if any) is cash; (d) whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Stalking Horse Bid; (e) any proposed Bid Protections; (f) the Stalking Horse Agreement, including all exhibits, schedules or attachments thereto; and (g) the deadline to object to any of the proposed Bid Protections described therein. The notice shall also include any evidence the Debtors would like the Court to consider in connection with any request to approve any Bid Protections as an administrative expense under section 503(b) of the Bankruptcy Code.

Any Stalking Horse Bidder shall provide adequate assurance information to the Debtors, as contemplated herein, in connection with their Stalking Horse Bid. If the Stalking Horse Bidder is named the Successful Bidder or the Back-Up Bidder, the Debtors shall provide such adequate assurance information to the Consultation Parties and to those counterparties who request such information from the Debtors by no later than one (1) business day prior to the Sale Hearing.

In exchange for serving as the Stalking Horse Bidder, each Stalking Horse Bidder shall be entitled to the reimbursement of reasonable and documented out-of-pocket costs and expenses incurred in connection with the sale(s) not to exceed (a) $2,500,000 in aggregate (the "Expense Reimbursement") and (b) a breakup fee not to exceed three percent (3%) of gross purchase price (the "Break-Up Fee" and together with the Expense Reimbursement, the "Bid Protections"). For the avoidance of doubt, where a single Stalking Horse Bidder is designated for multiple Communities, the Bid Protections will be allocated by Community.

## III. POTENTIAL BID REQUIREMENTS

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing the Assets or part of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtor the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a. an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors (a "Confidentiality Agreement");

b. sufficient information, as reasonably determined by the Debtors, in consultation with the Consultation Parties, that the Potential Bidder has or may reasonably obtain the financial capacity to close the sale(s), including current audited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions, the adequacy of which must be acceptable to the Debtors;

c. sufficient information, as reasonably determined by the Debtors, in consultation with the Consultation Parties, that the Potential Bidder has the ability to receive any and all necessary governmental, licensing, regulatory, and other approvals required;

d. identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, including details related to the Potential Bidder's beneficial owners, ultimate beneficial owners, and controlling entities and whether the Potential Bidder is an insider or affiliate of any of the Debtors, and any of the principals, corporate officers, or other representatives that are authorized to appear for and act on behalf of the Potential Bidder with respect to the contemplated sale; and a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct; and

e. a statement that the Potential Bidder intends to access the Data Room (as defined below) for a purpose consistent with the Bid Procedures.

The Debtor, in consultation with its advisors and the Consultation Parties, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a bid (such Potential Bidder, an "Acceptable Bidder").

## IV. QUALIFIED BID REQUIREMENTS

To participate in the Auction, an Acceptable Bidder must deliver to the Debtor and its advisors an irrevocable Bid for some or all of the Assets, and shall meet the following criteria, in each case, on or prior to the Bid Deadline (as defined below):

a. **Purchased Assets and Assumed Liabilities**: Each Bid must clearly state the following: (i) the particular Assets,[4] or the portion thereof, identified with reasonable specificity to be purchased and/or liquidated or otherwise disposed of (including, without limitation, estate claims and causes of action); (ii) the liabilities and obligations to be assumed, including any debt and Cure Costs (as defined below) to be assumed; and (iii) any executory contracts (the "Executory Contracts") and any unexpired leases (the "Unexpired Leases") to be received by assignment. For the avoidance of doubt, a Bid need not provide for the purchase of any estate claims and causes of action to constitute a Qualified Bid (as defined below);

b. **Good Faith Deposit**: Each Bid must be accompanied by a cash deposit in the amount equal to five (5%) percent of the aggregate consideration of the Bid, to be held in an interest-bearing escrow account to be identified and established by the Debtor (the "Good Faith Deposit"); *provided, however*, that the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, may elect to waive or modify the requirement of the Good Faith Deposit on a case-by-case basis; *provided, further*, that no Good Faith Deposit shall be required for the credit portion of any Bid that includes a credit bid. To the extent any Qualified Bid is modified before, during, or after the Auction in a manner that increases the

[4] The Debtors request that each Potential Bidder submit a Bid that, in addition to the other requirements to be a Qualified Bid, specifies the allocation of the Purchase Price among each Asset that the Potential Bidder is bidding on.

originally contemplated Purchase Price, the Debtors reserve the right, after consultation with the Consultation Parties, to require the applicable Qualified Bidder to increase its Good Faith Deposit so that it equals five (5%) percent of the of the Purchase Price.

c. **Purchase Price**: Each Bid must clearly set forth the terms of the Transaction and purchase price to be paid, assuming a purchase of the applicable Assets and any assumption of liabilities (the "Purchase Price");

d. **Sources of Financing**: To the extent that the Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction(s) set forth in its Bid with cash on hand, the Bid must include committed financing, documented to the Debtor's satisfaction, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's obligations under the proposed Transaction(s) and other obligations under its Bid. Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors;

e. **Transaction Documents**: Other than for a Qualified Bid in the form of a chapter 11 plan of reorganization ("Chapter 11 Plan Bid"), each Bid must be accompanied by an executed purchase agreement with respect to the proposed Transaction, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid (including a schedule of contracts and/or leases to be assumed and/or assumed and assigned to the extent applicable to the Bid). Each Chapter 11 Plan Bid must be accompanied by an executed investment agreement, signed by an authorized representative of such Potential Bidder, pursuant to which the bidder proposes to effectuate the transactions contemplated by the Chapter 11 Plan Bid and must provide for a fully committed investment of capital in exchange for substantially all of the equity of the reorganized Debtors. A Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the highest or otherwise best bid to purchase the applicable Assets (each, a "Successful Bid") or next highest or otherwise best bid (the "Back-Up Bid") until the consummation of the Transaction);

f. **No Qualified Bidder Bid Protections**: Except as otherwise provided herein, each Qualified Bid must include a statement that the Bid does not entitle such Acceptable Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under Bankruptcy Code section 503(b) related to bidding for the applicable Assets;

g. **Employee Obligations**: Each Bid must indicate whether the Acceptable Bidder intends to hire all employees of the Debtors or otherwise indicate its intentions with respect to the employees of the Debtors;

h. **Authorization**: Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

i. **Contingencies; No Financing or Diligence Outs**: The Bid must not contain any contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects), and all diligence must be completed before the Bid Deadline;

j. **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, or ultimate controlling entities that will be bidding for or purchasing the applicable Assets or otherwise participating in connection with such Bid, including each equity holder or other financial backer of the bidder (including if such bidder is an entity formed for the purpose of consummating the transactions contemplated by such Bid), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also include contact information for the specific person(s) whom Raymond James & Associates, Inc. ("Raymond James"), proposed investment banker to the Debtors, and McDermott Will & Schulte LLP, proposed counsel to the Debtors, should contact regarding such Bid;

k. **As-Is, Where-Is**: Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Transaction(s) prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; (iii) did not rely on or receive from any person or entity (including the Debtor or any of its advisors or representatives) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the completeness of any information provided in connection therewith or the Auction (if any), except as expressly stated in the Acceptable Bidder's asset purchase agreement or other agreement; and (iv) did not engage in collusive conduct and acted in good faith in submitting its Bid;

l. **Joint Bids and Merger Proposals**: The Debtors will be authorized to approve joint Bids in their reasonable business judgment, including, but not limited to, any Bids that contemplate acquiring assets through a merger or similar transaction, including if a proposed Bid contemplates additional financing from one or several participating parties, on a case by case basis, so long as such Bid meets the Qualified Bid requirements and the applicable Acceptable Bidders otherwise comply with these Bid Procedures;

m. **Qualifications to Operate a Senior Living Community**: Each Bid must provide background on the Acceptable Bidder and its qualifications to operate a senior living community, including:

- Operating history of the Acceptable Bidder;

- The number of senior living communities that the Acceptable Bidder currently operates;

- The Acceptable Bidder's ownership structure and corporate organization chart; and

- The principal biographies of senior management of the Acceptable Bidder.

n. **Adequate Assurance of Future Performance**: Each Bid must (i) identify the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned in connection with the proposed Transaction, (ii) provide for the payment of all cure amounts (the "Cure Costs") related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder, (iii) demonstrate, in the Debtors' reasonable business judgment, that the Acceptable Bidder can provide adequate assurance of future performance under all such Executory Contracts and Unexpired Leases sufficient to satisfy the requirements of Bankruptcy Code sections 365(b)(3) and 365(f)(2)(B), and (iv) provide the following documentation:

- The proposed assignee (the "Proposed Assignee") and any guarantors, as applicable; and

- Financial statements for the calendar or fiscal years ended 2023 and 2024 for the Proposed Assignee and any guarantors, as applicable, and other financial information about the Proposed Assignee to demonstrate its ability to provide adequate assurance of future performance.

o. **Acknowledgement of Compliance with Bid Procedures, Bid Procedures Order, Bankruptcy Code, and Non-Bankruptcy Law**: Each Bid must acknowledge that the Acceptable Bidder has complied, and will continue to comply, in all respects with these Bid Procedures, the Bid Procedures Order, the Bankruptcy Code, and any applicable non-bankruptcy law;

p. **No Collusion**: The Acceptable Bidder must (i) acknowledge in writing that it has not engaged in any collusion with respect to any Bids or any Transaction, specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price or otherwise with respect to any of the Assets or any Transaction and processes contemplated by the Bid Procedures; and (ii) agree not to engage in any collusion with respect to any Bids, the Auction, or any Transaction. The Acceptable Bidder must further indicate if it has or intends to coordinate its bid, or otherwise bid with, any current or former member of the Debtor's executive management or board of directors. For the avoidance of doubt, this requirement

does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (email being sufficient);

q. **Good Faith Offer**: The Bid must constitute a good faith, *bona fide* offer to consummate the Transaction;

r. **Irrevocable**: Each Bid must state that in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Back-Up Termination Date (as defined below);

s. **Back-Up Bid**: Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder (as defined below) if the Acceptable Bidder's Bid is the next highest or otherwise best bid with respect to the applicable Assets;

t. **Regulatory and Third-Party Approvals and Covenants**: A Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Transaction(s), the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals, and those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible;

u. **Expected Closing Date and Time Frame for Closing**: Each Bid must state the Acceptable Bidder's expected date of closing of the Transaction(s) (the "Closing") and must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtor, in consultation with the Consultation Parties;

v. **Consent to Jurisdiction**: The Acceptable Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the Transaction, and the construction and enforcement of these Bid Procedures, Preliminary Bid Documents, the Bids, and any and all other agreements entered into in connection with any proposed Transaction, the Closing, and any other related matter; and

w. **Conditions to Closing**: Each Bid must identify with particularity each and every condition to closing, including the Executory Contract and Unexpired Leases for which assumption and assignment is required.

Only Bids fulfilling all of the preceding requirements contained in this section as determined or otherwise waived in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, may be deemed to be qualified bids (the "Qualified Bids"), and only those parties submitting Qualified Bids, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, may be deemed to be qualified bidders (the "Qualified Bidders"). The Bids received by the Debtors shall be shared with the Consultation Parties that are not Potential Bidders within a reasonable time after receipt by the Debtor, but in no event no later than twenty-four (24) hours after receipt.

Neither the Debtors nor any of its advisors are making or have at any time made, and no bidder, Potential Bidder, or Acceptable Bidder, including any Qualified Bidder, has relied, is relying, or shall rely on any warranties or representations of any kind or character, express or implied, with respect to the Assets, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of the Assets with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets. All bidders must acknowledge and agree that upon closing the Debtors shall transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets to the extent expressly provided in the Court's order approving the Transaction. Neither the Debtors nor any of its advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining to the Assets or relating thereto that the Debtors, any advisor, or agent representing or purporting to represent the Debtors to whomever might have made or furnished, directly or indirectly, orally or in writing, unless (with respect to the Debtors only) specifically set forth in the Court's order approving the Transaction.

There shall be no communication between or among Potential Bidders and/or Acceptable Bidders, including Qualified Bidders, unless the Debtors' advisors have authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, to disqualify any Potential Bidders or Acceptable Bidders that have communications between or amongst themselves without the prior authorization of the Debtors' advisors. For the avoidance of doubt, the joining of Bids between Potential Bidders or Acceptable Bidders may be permitted by the Debtors in their reasonable business judgement, in consultation with the Consultation Parties.

As soon as practicable after the Bid Deadline and in any event prior to the start of the Auction, the Debtors shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether their Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction. Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided* that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide the Acceptable Bidder with the opportunity and work with the Acceptable Bidder to remedy any deficiencies prior to the Auction.

## V. DUE DILIGENCE

The Debtors have designated Raymond James to coordinate the response to all reasonable requests for additional information and due diligence with respect to the Assets and the sale(s). Contact information for Raymond James is as follows: David B. Fields (David.Fields@RaymondJames.com); Rob A. Whitlock (Rob.Whitlock@RaymondJames.com); Naomi O'Dell (Naomi.Odell@RaymondJames.com); and James J. Yang (James.Yang@RaymondJames.com). Raymond James will serve as the lead point of contact for all Potential Bidders interested in the sale(s), and any such Potential Bidder will need to contact Raymond James to ensure participation in the marketing and sale process described herein.

Only Acceptable Bidders that have executed a Confidentiality Agreement shall be eligible

to receive due diligence information and access to (a) the Debtors' electronic data room (the "Data Room") and (b) any additional non-public information regarding the Debtors as may be reasonably requested by the Acceptable Bidder that the Debtors, in their business judgment, determine to be reasonable, available, and appropriate under the circumstances. The Debtors will provide to each Acceptable Bidder reasonable due diligence information, as reasonably requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request. The Debtors may designate one or more representatives to coordinate all reasonable requests for additional information and due diligence from Acceptable Bidders. Acceptable Bidders will not initiate or engage in discussions in respect of matters relating to the Debtors or a potential sale with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors.

The due diligence period will end on the Bid Deadline and, subsequent to the Bid Deadline, the Debtors shall have no obligation to furnish any due diligence information, but the Debtors may extend the due diligence period in their discretion.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential Transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement (an "Authorized Representative"). Neither the Debtors nor any of their representatives shall be obligated to furnish any information of any kind whatsoever relating to the Debtors, the Assets, or any proposed sale to any person or entity who is not an Acceptable Bidder or such Acceptable Bidder's applicable Authorized Representative, other than with respect to the Consultation Parties as set forth herein.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that, the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate any Transaction(s). For any Acceptable Bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

The Debtors make no representation or warranty as to the information provided through this due diligence process or otherwise, including the documents in the Data Room, except as set forth in any executed definitive transaction documents. Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making a bid; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and the Assets in making its Bid; and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in these Bid Procedures or such Acceptable Bidder's Confidentiality Agreement.

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable

requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated sale. Failure by an Acceptable Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer an Acceptable Bidder (including any Qualified Bidder) or that a bid made by such bidder is not a Qualified Bid.

## VI. NO COMMUNICATION AMONG BIDDERS

There shall be no communications regarding potential Bids or potential transactions between or among any Potential Bidders, including any Stalking Horse Bidder(s), unless the Debtors have previously authorized such communication in writing (email from the Debtors' counsel being sufficient). The Debtors reserve the right, in their reasonable business judgment and after consultation with the Consultation Parties, to disqualify any Potential Bidder that the Debtors believe, in their reasonable judgment, has communicated with another Potential Bidder in violation of these Bid Procedures.

## VII. BID DEADLINE

All submissions to the Debtors required or permitted to be made under the Bid Procedures must **actually received** no later than 12:00 p.m., prevailing Central Time, on June 19, 2026 (the "Bid Deadline") and must be directed to each of the following persons or entities unless otherwise provided:

(a) proposed counsel to the Debtor, McDermott Will & Schulte LLP, 2801 North Harwood Street, Suite 2600, Dallas, TX 75201 (Attn: Marcus A. Helt (mhelt@mcdermottlaw.com) and Jack G. Haake (jhaake@mcdermottlaw.com)), and 1180 Peachtree St. NE, Suite 3350, Atlanta, GA 30309 (Attn: Daniel M. Simon (dsimon@mcdermottlaw.com)), and 444 West Lake Street, Suite 4000, Chicago, Illinois 60606, (Attn: Carmen Dingman (cdingman@mcdermottlaw.com));

(b) the Debtor's proposed investment banker, Raymond James & Associates, Inc., 300 Four Falls, Suite 400, 300 Conshohocken State Road, W. Conshohocken, PA 19428 (Attn: David Fields (David.Fields@RaymondJames.com), Rob A. Whitlock (Rob.Whitlock@RaymondJames.com), and Naomi O'Dell (Naomi.Odell@RaymondJames.com)) and 880 Carillion Parkway, Floor 3, St. Petersburg, FL 33716 (Attn: Max Moilanen (Maxwell.Moilanen@RaymondJames.com)); and

(c) proposed counsel to the Committee, Greenberg Traurig LLP, 1000 Louisiana St., Suite 6700, Houston, TX 77002 (Attn: Shari Heyen (shari.heyen@gtlaw.com), David Kurzweil (KurzweilD@gtlaw.com), and James Grogan (james.grogan@gtlaw.com)).

Counsel or proposed counsel for the Debtors shall provide true and correct copies of all submissions received under this section to counsel for the DST Representatives within one (1) business day of receipt.

The Debtors may extend the Bid Deadline for any reason whatsoever, in their reasonable business judgment and in consultation with the Consultation Parties, for all or certain Acceptable Bidders.

## VIII. EVALUATION OF QUALIFIED BIDS

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtor's reasonable business judgment, in consultation with the Consultation Parties, the highest or otherwise best Qualified Bid for any Assets (the "Starting Bid"). The Debtor shall promptly (and in no event later than 24 hours after receipt by the Debtor) provide to the Office of the United States Trustee for Region 6 (the "U.S. Trustee") and the Consultation Parties copies of all Bids received by the Debtor; *provided* that the U.S. Trustee and the Consultation Parties must treat such Bids and any related information as confidential and shall not publicly disclose such information without the written consent of the Debtor and the applicable bidder.

## IX. AUCTION(S)

Other than as expressly set forth herein, if the Debtor receives more than one Qualified Bid for the Assets by the Bid Deadline, the Debtors shall conduct an Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their reasonable business judgment, in consultation with the Consultation Parties, in accordance with the Auction Procedures (defined below). If the Debtors only receive one Qualified Bids, by the applicable Bid Deadline, the Debtor will not conduct an Auction.

If only one Qualified Bid is received by the Bid Deadline with respect to a particular Asset, the Debtor, in consultation with the Consultation Parties, may cancel the applicable Auction(s), and may decide, in the Debtors' reasonable business judgment, to designate such bid as the Successful Bid for the applicable Assets

The Auction, if necessary, shall commence on June 24, 2026, at 10:00 a.m., prevailing Central Time, or such other time or other place as the Debtor determines in consultation with the Consultation Parties.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a. only Qualified Bidders may participate in or make subsequent Bids at the Auction;

b. only the Debtors, Qualified Bidders, the Consultation Parties, the U.S. Trustee, and such parties' representatives, and advisors may attend the Auction; *provided* that Qualified Bidders may appear through a duly authorized representative (other than their counsel) bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors prior to the commencement of the Auction;

c. the Debtors, with the assistance of its advisors, shall direct and preside over any Auction;

d. at the commencement of the Auction, the Debtors may announce modified or additional procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive Bid(s), or otherwise modify the Bid Procedures, in each case in consultation with the Consultation Parties;

e. bidding shall begin with the Starting Bid; subsequent Bids (each, an "Overbid") may only be made at the Auction and the Debtors shall announce the minimum increment by which any Overbid must exceed the applicable Starting Bid, as well as the minimum amount of each subsequent bid; *provided, however*, that the Starting Bid must provide for aggregate cash consideration to ensure there is sufficient cash to equal to or exceed the Stalking Horse Bidder's Bid and cover the Break-Up Fee and the Expense Reimbursement. The Debtors may, in their reasonable business judgment, announce increases or reductions to the applicable minimum Overbid increment at any time during the Auction(s);

f. each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by the Debtors;

g. during the course of the Auction, the Debtors shall, after submission of each Overbid, promptly inform each Qualified Bidder of the terms of such Overbid and inform each Qualified Bidder whether such Overbid reflects, in the Debtor's view and in consultation with the Consultation Parties, the then highest or otherwise best Bid for the Assets;

h. the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

i. each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Transaction(s). For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtor's prior written consent;

j. each Qualified Bidder will be required to confirm on the record that its Bid is a good faith, bona fide offer and it intends to consummate the Transaction(s) if selected as the Successful Bid in accordance with these Bid Procedures (as may be modified in accordance herewith at the Auction);

k. subject to the Debtors' fiduciary obligations, including as set forth herein, the Debtors will not consider Bids made after the Auction has been closed;

l. the Debtors, in their reasonable business judgment in consultation with the Consultation Parties, may (i) determine which Qualified Bid is the highest or otherwise best offer, (ii) reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtor determines is (A) inadequate or insufficient, (B) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of the Transaction(s), or

(C) contrary to the best interests of the Debtors, their estates, creditors, and other stakeholders, and (iii) impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these Chapter 11 Cases;

m. the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by their proposal and any further information that the Debtors believe are reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during an Auction;

n. the Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction(s) one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders the opportunity to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require to show that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount;

o. notwithstanding anything herein to the contrary, the Debtors, in consultation with the Consultation Parties, may at any time choose to adjourn the Auction(s) by announcement at the Auction. The Debtor shall promptly file notice of such adjournment with the Court; and

p. the Debtors, in consultation with the Consultation Parties, reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors, in consultation with their advisors).

## X. DESIGNATION OF BACK-UP BIDDER

The party submitting the Back-Up Bid to purchase the Assets (the "Back-Up Bidder") will be determined by the Debtors, in consultation with the Consultation Parties, at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection; provided that, nothing in these Bid Procedures shall require the board of directors, board of managers, or such similar governing body of the Debtors to take or refrain from taking any action that the Debtors determined in good faith, in consultation with its advisors, would be inconsistent with applicable law or its fiduciary obligations. The Debtors will be authorized, but not required, to consummate the Transaction(s) with the Back-Up Bidder without further order of the Court, so long as such Back-Up Bid shall

have been approved in connection with the Court's approval of the Successful Bid, or subject to Court approval if not.

If for any reason a Successful Bidder fails to consummate the purchase of such Assets within the time permitted, then the Back-Up Bidder will automatically be deemed to have submitted the Successful Bid for such Assets, and the Back-Up Bidder shall be deemed a Successful Bidder for the Assets and shall be required to consummate the Transaction(s) with the Debtors as soon as is reasonably practicable without further order of the Court, upon twenty-four (24) hours' advance notice filed with the Court. To the extent any objections are raised and remain unresolved, the Court may schedule a hearing on an expedited basis to adjudicate such objection.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (a) sixty (60) days following the hearing to consider the applicable order approving the Transaction(s) (the "Sale Order"), (b) consummation of the Transaction with the Successful Bidder at an Auction, and (c) the release of such Back-Up Bid by the Debtor in writing (the "Back-Up Termination Date").

## XI. RIGHT TO CREDIT BID

Subject to the DIP Order, any party that has a valid and perfected lien on any Assets of the Debtors' estates (a "Secured Party") may credit bid pursuant to section 363(k) all or a portion of the face value of such Secured Party's claims against the Debtors toward the purchase price specified in such Secured Party's Bid; *provided* that, a Secured Party shall be entitled to credit bid its claim(s) only with respect to Assets that are subject to a valid and perfected lien in favor of such Secured Party as to such claim(s); *provided, further*, that, other than the Prepetition Secured Lenders, whose credit bids shall be governed by paragraph 40 of the Bid Procedures Order, any credit bid submitted by a Secured Party shall include a cash component sufficient to pay any applicable broker fee in connection with such Transaction. For the avoidance of doubt, paragraph 40 of the Bid Procedures Order shall govern the credit bids of the Prepetition Secured Lenders.[5]

## XII. AS-IS, WHERE-IS

Consummation of any sale will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as specifically accepted or agreed to by the Debtors in the executed definitive documentation for the sale(s) (the "Definitive Documents"). Consummation of any sale(s) will be without any representations or warranties whatsoever by the Debtors' representatives or advisors. Unless otherwise specifically accepted or agreed to by the Debtors in the Definitive Documents, all of the Debtors' right, title, and interest in and to the Assets disposed of in a sale will be transferred to the Successful Bidder (or Back-Up Bidder, as applicable) free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with sections 363(f)

---

[5] For the avoidance of doubt, Dan P. Van Acker d/b/a Mars Construction is entitled to a credit bid all of or a portion of the face value of its claims against Inspired Senior Living of Creswell Development, LLC and Inspired Senior Living of Winery Lane Development, LLC up until the Sale Hearing, and such right shall not be subject to any other deadline in these Bid Procedures or the Bid Procedures Order applicable to the submission of a credit bid.

of the Bankruptcy Code.

## XIII. SALE HEARING(S)

The Court shall hold a hearing to consider approval of the Successful Bid (and Back-Up Bid, as applicable) and the sale(s) contemplated thereby (each such hearing, a "Sale Hearing"). The Sale Hearing(s) may be adjourned by the Debtors from time to time without further notice to creditors or other parties-in-interest other than by announcement of the adjournment in open Court on the date scheduled for the Sale Hearing(s) or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of these Chapter 11 Cases.

## XIV. RETURN OF GOOD FAITH DEPOSIT

Any Good Faith Deposits by Qualified Bidders shall be held in a noninterest-bearing escrow account on terms acceptable to the Debtors. Any such Good Faith Deposit will be returned to Qualified Bidders that are not designated Successful Bidders (or Back-Up Bidders, as applicable) on the date that is five (5) business days after the Auction (if any). Any deposit provided by a Successful Bidder (or Back-Up Bidder, as applicable) shall be applied to the Purchase Price of the applicable Transaction at closing.

If a Successful Bidder (or Back-Up Bidder, as applicable) fails to consummate the proposed Transaction contemplated by its Successful Bid (or Back-Up Bid, as applicable) because of a breach by such Successful Bidder (or Back-Up Bidder, as applicable), the Debtors will not have any obligation to return the Good Faith Deposit provided by such Successful Bidder (or Back-Up Bidder, as applicable), which may be retained by the Debtors as liquidated damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors and their estates.

## XV. RESERVATION OF RIGHTS AND MODIFICATIONS

The Debtors shall be entitled to modify these Bid Procedures in their reasonable business judgment, in consultation with the Consultation Parties, in any manner that will best promote the goals of these Bid Procedures, or impose, at or prior to any Auction (if any), additional customary terms and conditions on a Transaction, including (a) extending the deadlines set forth in these Bid Procedures, (b) adjourning any Auction, (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting any Auction (if any), (d) canceling any Auction, and (e) rejecting any or all Bids or Qualified Bids. Any modification to these Bid Procedures, or adoption of new rules, procedures, or deadlines, is without prejudice to a party in interest's right to seek relief from the Court that such modification, or adoption of new rules, procedures, or deadlines, is inconsistent with this paragraph or these Bid Procedures.

## XVI. FIDUCIARY OUT

Notwithstanding anything to the contrary in these Bid Procedures or any document filed with or entered by the Court, nothing in these Bid Procedures or the Bid Procedures Order shall require any of the Debtors or their applicable board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any proposed Transaction or these Bid Procedures to the extent any such Debtors or governing body determines

in good faith, in consultation with outside counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in the Bid Procedures or any document filed with or entered by the Court, until the closing of the applicable Auction (if any), the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each an "Alternate Proposal"), (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity, (c) maintain or continue discussions or negotiations with respect to Alternate Proposals, (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals, and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposals..

## XVII. CONSENT TO JURISDICTION

All Qualified Bidders at any Auction(s) shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction(s) or the construction and enforcement of the Bid Procedures.

**Exhibit 2**

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) | Case No. 26-90004 (MXM) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On February 2, 2026, Inspired Healthcare Capital Holdings, LLC and its debtor affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court"). The Debtors are authorized to continue to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On February 6, 2026, the Debtors filed a motion (the "Bid Procedures Motion"), pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9007, and 9008 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), seeking entry of an order approving, among other things, the procedures (the "Bid Procedures") to be used in connection with one or more sales of all or substantially all of the Debtors' assets (the "Assets").

On [●], 2026, the Court entered an order approving the Bid Procedures Motion [Docket No. [●]] (the "Bid Procedures Order").[2] Pursuant to the Bid Procedures Order, if at least two (2) Qualified Bids with regard to a sale of any of the Assets are received by the applicable Bid Deadline (as defined below), the Debtors will conduct one or more Auctions, which shall start on (i) **June 24, 2026 at 10:00 a.m. (prevailing Central Time)** for the Assets.

The Sale Hearing(s) to consider approval of the Transaction(s), as applicable, to the Successful Bidder(s) at the Auction(s) will be held before the Court on **June 30, 2026 at**

1 The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures or the Bid Procedures Order, as applicable.

**9:30 a.m. (prevailing Central Time)**.

Objections related to approval of the sale(s), conduct at the Auction(s), the identity of the Successful Bidder(s), and adequate assurance of future performance by the Successful Bidder(s) must be in writing, state the basis of such objection with specificity, and be filed with this Court and served so as to be received on or before **June 26, 2026, at 4:00 p.m. (prevailing Central Time)** by the following parties (collectively, the "Objection Notice Parties"):

(a) counsel to the Debtor, McDermott Will & Schulte LLP, 2501 North Harwood Street, Suite 1900, Dallas, TX 75201 (Attn: Marcus A. Helt (mhelt@mcdermottlaw.com) and Jack G. Haake (jhaake@mcdermottlaw.com)), and 1180 Peachtree St. NE, Suite 3350, Atlanta, GA 30309 (Attn: Daniel M. Simon (dsimon@mcdermottlaw.com)), and 444 West Lake Street, Suite 4000, Chicago, Illinois 60606, (Attn: Carmen Dingman (cdingman@mcdermottlaw.com));

(b) the Office of the United States Trustee for Region 6, Office of The United States Trustee Earle Cabell Federal Building 1100 Commerce Street, Room 976, Dallas, TX 75242, (Attn: Susan Hersh (Susan.Hersh@usdoj.gov)); and

(c) counsel to the Official Committee of Unsecured Creditors, if any.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE OR TRANSACTION, AS APPLICABLE, ON OR BEFORE THE SALE OBJECTION DEADLINE OR THE POST-AUCTION DEADLINE, AS APPLICABLE, IN ACCORDANCE WITH THE BID PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE OR TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE AGREEMENT.**

Dated: [__], 2026
Dallas, Texas

**MCDERMOTT WILL & SCHULTE LLP**

*/s/*_______________________
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: mhelt@mcdermottlaw.com
jhaake@mcdermottlaw.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
Landon Foody (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: dsimon@mcdermottlaw.com
cdingman@mcdermottlaw.com
lfoody@mcdermottlaw.com

*Counsel for the Debtors and Debtors-in-Possession*

# Exhibit 3

## Contract Assumption Notice

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | ) | Case No. 26-90004 (MXM) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY**
**ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON **SCHEDULE 1** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [_________], the United States Bankruptcy Court for the Northern District of Texas (the "Court") entered *Order Granting Debtors' Motion for the Entry of an Order (I) Establishing Bid Procedures, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Authorizing the Debtors to Enter into a Stalking Horse Agreement and Provide Bid Protections, (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. [●]] (the "Bid Procedures Order"),[2] in the Chapter 11 Cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bid Procedures and the terms of any Successful Bid, the Debtors may assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases listed on Schedule 1 to which you are a counterparty, upon approval of the Transaction(s). The Debtors have conducted a review of their books and records and have determined that the Cure Costs for unpaid monetary obligations under such Executory Contract or Unexpired Lease is as set forth on Schedule 1.

---

1 The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bid Procedures Order.

PLEASE TAKE FURTHER NOTICE that if you disagree with the proposed Cure Costs, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Costs; (iv) state the correct Cure Costs alleged to be owed to the objecting contract counterparty, together with any applicable and appropriate documentation in support thereof; and (v) be filed with the Court and served and actually received no later than April 28, 2026, at 12:00 p.m. (prevailing Central Time) (the "Cure Objection Deadline") by the Court and the following parties:

(a) counsel to the Debtor, McDermott Will & Schulte LLP, 2501 North Harwood Street, Suite 1900, Dallas, TX 75201 (Attn: Marcus A. Helt (mhelt@mcdermottlaw.com) and Jack G. Haake (jhaake@mcdermottlaw.com)), and 1180 Peachtree St. NE, Suite 3350, Atlanta, GA 30309 (Attn: Daniel M. Simon (dsimon@mcdermottlaw.com)), and 444 West Lake Street, Suite 4000, Chicago, Illinois 60606, (Attn: Carmen Dingman (cdingman@mcdermottlaw.com));

(b) the Office of the United States Trustee for Region 6, Office of The United States Trustee Earle Cabell Federal Building 1100 Commerce Street, Room 976, Dallas, TX 75242, (Attn: Susan Hersh (Susan.Hersh@usdoj.gov)); and

(c) counsel to the Official Committee of Unsecured Creditors, if any.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Costs or (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease is filed by the Cure Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct and (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Costs are due under the Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Costs in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Executory Contract or Unexpired Lease on the Contract Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365(a) and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (a) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or

amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (b) creates a postpetition contract or agreement, or (c) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

[*Signatures on following page*]

Dated: [__], 2026
Dallas, Texas

**MCDERMOTT WILL & SCHULTE LLP**

*/s/*__________________________
Marcus A. Helt (TX 24052187)
Jack G. Haake (TX 24127704)
2801 N. Harwood Street, Suite 2600
Dallas, Texas 75201-1574
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: mhelt@mcdermottlaw.com
jhaake@mcdermottlaw.com

- and -

Daniel M. Simon (admitted *pro hac vice*)
Carmen Dingman (admitted *pro hac vice*)
Landon Foody (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
Email: dsimon@mcdermottlaw.com
cdingman@mcdermottlaw.com
lfoody@mcdermottlaw.com

*Counsel for the Debtors and Debtors-in-Possession*

**Schedule 1**