**GREENBERG TRAURIG, LLP**
Shari L. Heyen (Tex. Bar No. 09564750)
James T. Grogan III (Tex. Bar No. 24027354)
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Emails: Shari.Heyen@gtlaw.com
James.Grogan@gtlaw.com

**GREENBERG TRAURIG, LLP**
Jared R. Weir (Tex. Bar No. 24075253)
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: Jared.Weir@gtlaw.com

**GREENBERG TRAURIG, LLP**
David B. Kurzweil (Admitted *Pro Hac Vice*)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
Email: KurzweilD@gtlaw.com

***Counsel to the Official Committee of Unsecured Creditors***

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| INSPIRED HEALTHCARE CAPITAL HOLDINGS, LLC, *et al.*[1] | Case No. 26-90004 (MXM) |
| | (Jointly Administered) |
| Debtors. | **Re: Docket Nos. 469, 575 and 576** |

**AMENDED EMERGENCY MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER (I) EXTENDING THE GENERAL BAR DATE, (II) APPROVING THE FORM, MANNER, AND PROCEDURE FOR FILING PROOFS OF CLAIM BY UNSECURED CREDITORS AND (III) GRANTING RELATED RELIEF**

[1] The last four digits of Inspired Healthcare Capital Holdings, LLC's federal tax identification number are 6696. There are 161 Debtors in these chapter 11 cases, which are being jointly administered for procedural purposes only. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/InspiredHealthcare. The Debtors' mailing address is 7033 East Greenway Parkway, Suite 250, Scottsdale, AZ 85254.

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 1:30 P.M. (PREVAILING CENTRAL TIME) ON MAY 26, 2026.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 26, 2026 AT 1:30 P.M. IN ROOM 128, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS, 76102.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1-650-479-3207, MEETING ID: 2310-650-8783. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MULLIN'S HOME PAGE. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its undersigned counsel, pursuant to section 105(a) of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"), rules 3003(c)(3) and 9006(b)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rule 3003-1 of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas* (the "Local Bankruptcy Rules"), and paragraph 44 of the Procedures for Complex Cases in the Northern District of Texas (the "Complex Case Procedures"), hereby files this amended emergency motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), extending the General Bar Date (as defined below) and approving the form, manner and procedures for filing

proofs of claims by general unsecured creditors. In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. These Chapter 11 Cases (as defined below) involve a complex structure of 161 affiliated debtor entities with intertwined relationships, overlapping operations, and extensive intercompany transfers. As of the Petition Date, the Debtors operated a nationwide senior-living enterprise spanning more than 33 facilities across 14 states, with approximately 2,620 residents, thousands of employees, and multiple layers of regulated operations. The Debtors' business model relies on a web of Delaware Statutory Trusts ("DST") as well as related Master Tenants, Signatory Trustees, Depositors, Investment Funds, and other operating subsidiaries, many of which are Debtors, and many of which are contractually and financially interdependent.

2. According to the *Declaration of M. Benjamin Jones in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 33] (the "First Day Declaration"), each of the Debtors' operating communities typically involves at least three related Debtor entities: (i) a DST that owns the real estate and is governed by trust agreements designed to preserve Section 1031 tax treatment, (ii) a Master Tenant (also a Debtor) that holds the required regulatory licenses and contracts directly with residents, and (iii) a Signatory Trustee entity that manages the DST. *See* First Day Declaration, ¶ 25. These entities are bound together by master leases, trust agreements, management agreements, reallocation fee arrangements, intercompany loans, and cash-management practices that cut across entity lines and obscure traditional creditor-debtor boundaries.

3. Compounding this complexity, the Debtors raised over $1.2 billion from more than 5,800 investors through a combination of DST offerings, unsecured investment funds,

development vehicles, and promissory note programs. *See* First Day Declaration, ¶ 3. The resulting capital structure includes secured third-party debt at certain DSTs, intercompany secured liens, unsecured investor claims, accrued and unpaid reallocation fees, and potential claims arising from years of inter-entity transfers and subsidies, all of which remain under active investigation by the Committee and other parties in interest. Even the Debtors' postpetition management and advisors lack the details surrounding the Debtors' prepetition activities and conduct, as evidenced by their recent application to retain special counsel for the purpose of investigating what happened here. An extension of the General Bar Date is, therefore, warranted given the complexity of these Chapter 11 Cases, the sheer number of Debtors, and the highly atypical DST ownership and operating structure through which the Debtors conducted their businesses.

4. In accordance with the Bar Date Notice (as defined below) filed on April 14, 2026, thousands of creditors, including numerous individual investors, have been directed to file proofs of claim under procedures designed for ordinary commercial bankruptcies. Currently, the claims process requires creditors to determine which specific debtor entity is liable to them, the legal character of their claim, whether multiple claims must be filed, whether contingent or unliquidated losses must be estimated now, and how to preserve rights while material financial information regarding the Debtors remains unavailable and undisclosed.

5. Furthermore, the Committee has only recently obtained access to the Debtors' books, records, and transactional data, much of which spans years of complex intercompany activity and cash movements across dozens of Debtors and non-Debtor affiliates. At the same time, potential fraud by the Debtors and fiduciary claims against prepetition management further complicate creditors' ability to assess their rights and assert claims with accuracy before the currently scheduled General Bar Date. Creditors are being asked to make critical determinations

and file proofs of claim before the Debtors have completed production of relevant documents concerning fund flows, account ownership, intercompany transfers, and asset allocation issues. Without the relief requested herein, the claims process runs the risk of disenfranchising creditors who are at risk of losing significant value. What's worse, creditors risk forfeiture of substantive rights based solely on technical filing errors.

6. The need for this relief, particularly on an expedited basis, is heightened by the Committee's recent discovery that Emerson Equity LLC ("Emerson"), which served as a prepetition broker-dealer to assist the Debtors in fundraising activities through the marketing and sale of securities, has disseminated confusing information to certain investor-creditors regarding the proof-of-claim process by advising them to rely on Emerson and a third party to submit claim forms instead of filing their own proofs of claim. Clearly, these communications have materially increased confusion among individual creditors who are already struggling to navigate extraordinarily complex chapter 11 cases. These communications also threaten to hinder and suppress the interests of creditors in having their legitimate claims adjudicated in accordance with due process and fundamental fairness. The Court's intervention is necessary to ensure that innocent creditors acting in good faith will not forfeit their rights based on misinformation rather than having the merits of their claims adjudicated in a fair and equitable claims process.

7. Under these circumstances, enforcing the existing General Bar Date would unduly prejudice unsecured creditors, many of whom lack sufficient information to determine (i) which Debtor(s) may be liable on their claims, (ii) whether their claims are contractual or may also involve tort claims or statutory causes of action, and (iii) the full amount and nature of their damages. A modest extension will not prejudice the Debtors, but will materially advance due

process, ensure accurate claims administration, and promote the orderly administration of these extraordinarily complex estates.

8. For these reasons, and as set forth more fully below, the Committee respectfully requests that the Court extend the General Bar Date and modify the claims process to ensure a process that promotes fairness, transparency, and orderly administration of these estates.

## JURISDICTION AND VENUE

9. The United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Court") has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 3, 1984, entered by the United States District Court for the Northern District of Texas.

10. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

11. The legal and statutory predicates for the relief requested here are section 105 of the Bankruptcy Code, Bankruptcy Rules 3003(c)(3) and 9006(b)(1), Local Bankruptcy Rule 3003-1, and paragraph 44 of the Complex Case Procedures.

12. The Committee confirms its consent to the entry of a final order by the Court in connection with the Motion in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. The Chapter 11 Cases

13. On February 2, 2026 (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").

14. The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15. On February 25, 2026, the United States Trustee (the "UST") appointed the Committee. *See* Appointment of the Official Unsecured Creditors' Committee [Docket No. 161].

16. Beginning in March 2026, the Committee sent informal requests for core financial and governance materials and a first request for production of documents, including bank statements, general ledgers, corporate governance materials, and information regarding intercompany transfers and alleged mismanagement, to investigate the Debtors' disposition of more than $1.2 billion in cash. Despite prioritizing a narrowed set of requests and the Committee's repeated cooperation with the Debtors on staging, timelines, and scope, the Debtors objected to the discovery, produced only limited materials, and failed to produce basic books and records, while repeatedly missing or revising their own production commitments.

17. As weeks passed without meaningful progress or reliable timelines, the Committee was left without foundational financial information necessary to fulfill its statutory oversight duties, prompting the need for a formal order pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure with enforceable deadlines.

18. On April 22, 2026, the Committee filed its *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Rule 2004 Directing the Production of Documents by Debtors* [Docket No. 510] (the "Rule 2004 Motion").

19. Following the filing of the Rule 2004 Motion, the Debtors have been amenable to producing key source documents. The production of documents by the Debtors and the review by the Committee continue in earnest, with the hearing on the Rule 2004 Motion currently set for May 26, 2026.

**B. The Bar Date Notice**

20. On April 14, 2026, the Debtors filed a *Notice of Date by Which Parties Must File Proofs of Claim Against the Debtors* [Docket No. 469] (the "Bar Date Notice").

21. The Bar Date Notice sets June 15, 2026, at 11:59 p.m. (prevailing Central Time) as the last date for persons or entities (which includes estates, trusts, partnerships, and corporations, among others), other than governmental units, to file proofs of claim against the Debtors on account of claims arising, or deemed to have arisen, prior to the Petition Date (the "General Bar Date"). Relatedly, August 3, 2026, at 11:59 p.m. (prevailing Central Time) is the last date for all governmental units to file proofs of claim against the Debtors on account of claims arising, or deemed to have arisen, prior to the Petition Date (the "Governmental Bar Date" and together with the General Bar Date, the "Bar Date").

22. Recently, the Committee has learned that on May 4, 2026, Emerson communicated with certain investor-creditors holding potential claims against one or more of the Debtors regarding the filing of proofs of claim. A copy of this correspondence is attached hereto as **Exhibit B** (the "Emerson Correspondence"). Specifically, Emerson wrote to those clients "[d]o not complete [the proof of claim] form [and] do not submit anything to the Court" by the June 15,

2026 General Bar Date, explaining that Emerson has retained a third-party service provider to prepare and submit proofs of claim on its clients' behalf. *See* Emerson Correspondence ("**DO NOT COMPLETE THIS FORM & DO NOT SUBMIT ANYTHING TO THE COURT!**") (emphasis in the original). This communication has caused substantial confusion among creditors facing a complex proof of claim process. Without Court intervention, well-intentioned creditors may lose rights due to misinformation rather than having the merits of their claims adjudicated by this Court.[2]

23. On May 7, 2026, the Committee filed its *Emergency Motion of the Official Committee of Unsecured Creditors for Entry of an Order (I) Extending the General Bar Date, (II) Approving the Form, Manner, and Procedure for Filing Proofs of Claim by Unsecured Creditors and (III) Granting Related Relief* [Docket No. 575] and the *Notice of Filing Amended Exhibits* [Docket No. 576] (collectively, the "Original Motion").

**RELIEF REQUESTED**

24. By this Motion, the Committee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order, approving the following relief:

A. extending the General Bar Date by sixty (60) days from June 15, 2026 through and including August 14, 2026 (the "Extended General Bar Date");

B. approving the procedures described herein for submitting a proof of claim (a "Proof of Claim") and the form of master Proof of Claim

[2] Upon information and belief, the Emerson Correspondence was only sent to creditor-investors of IHC Fund 5.

attached as Exhibit 1 to the Proposed Order (the "Master Proof of Claim Form"); and

C. granting such other and further relief as the Court deems just and proper.

## THE CURRENT PROCESS

25. Despite the complexity of these cases, the Debtors elected not to file a motion establishing a bar date in these Chapter 11 Cases, nor did they request that the Court set or approve such a deadline after notice and a hearing. Instead, the current General Bar Date was imposed pursuant to the default procedures in Local Bankruptcy Rule 3003-1 and paragraph 44 of the Complex Case Procedures, without any request sought or granted by this Court.

26. Because the General Bar Date was not established by motion or accompanying evidentiary support, creditors were not provided with clarity as to the scope of claims required to be filed or the consequences of failing to do so by the existing deadline.

27. Members of the creditor body have advised the Committee that this lack of clarity has resulted in confusion regarding what is required of creditors at this stage of these Chapter 11 Cases. Under these circumstances, and in the interest of due process and fairness, extension of the current General Bar Date and implementation of the Proof of Claim Filing Procedures (as defined below) are appropriate.

## BASIS FOR RELIEF

### A. Extension of the General Bar Date

28. Bankruptcy Rule 3003(c)(3) expressly grants bankruptcy courts the authority to set and extend the time to file proofs of claim in Chapter 11 cases "for cause." *See* Fed. R. Bankr. P. 3003(c)(3); *see also In re Dix*, 95 B.R. 134, 137 (9th Cir. B.A.P. 1988). Bankruptcy Rule 9006(b)(1) further authorizes the Court, for cause shown, to enlarge deadlines established by court order, including bar dates. While "cause" is not defined in the Bankruptcy Code or Bankruptcy

Rules, courts have treated it as a flexible, equitable standard particularly sensitive to case complexity. Factors courts may consider under the "for cause" standard in complex multi-debtor cases include: (1) the size and complexity of the case; (2) the number of debtors and potential creditors requiring notice; (3) ongoing difficulties in compiling complete schedules or mailing lists; (4) changed circumstances such as new legislation or newly discovered claims; (5) the need to conduct a Rule 2004 examination to discover undisclosed assets or creditors; and (6) the absence of prejudice to creditors who have already timely filed. *See, e.g.*, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 385–86 (1993) (articulating the equitable factors courts consider in determining whether to permit the late filing of a proof of claim); *In re Diocese of Buffalo*, 647 B.R. 627, 629 (Bankr. W.D.N.Y. 2023) (establishing a supplemental bar date for claims affected by newly enacted legislation).

29. In addition to these rules, the Court possesses inherent equitable authority under section 105(a) of the Bankruptcy Code to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code. *See Dix*, 95 B.R. at 136 ("Whether or not to extend a bar date is a matter within the sound discretion of the bankruptcy court and such a decision will not be set aside absent an abuse of discretion."). This authority includes the power to adjust procedural deadlines and claims-filing mechanics to prevent forfeiture of substantive rights through procedural traps, particularly in cases involving complex corporate structures and non-sophisticated creditors.

30. Cause exists to extend the General Bar Date because the size, structure, and complexity of these Chapter 11 Cases materially impair creditors' ability to timely and meaningfully assess and file their claims. The Debtors comprise more than 160 affiliated entities operating through an intricate and interconnected corporate and trust structure. That structure

creates unavoidable uncertainty regarding the proper obligor, the nature and classification of claims, and the extent to which liabilities may be shared or overlapping among related entities.

31. This complexity is compounded by the breadth and composition of the creditor body. The creditors appear to be primarily individuals who do not possess the financial or legal expertise necessary to parse complicated organizational charts and intercompany relationships, or assess the potential claims they may hold under tort law, contracts and statutory provisions within a fixed claims-filing window. For such creditors, the current General Bar Date does not provide a meaningful opportunity to evaluate their potential claims with reasonable diligence. What's more, the Emerson Correspondence has exacerbated an already difficult process for these creditors by telling some of them that they should ***not*** file proofs of claim.

32. Furthermore, cause exists to extend the General Bar Date because the Committee has only recently begun to receive meaningful access to the Debtors' books and records, including transactional data necessary to understand the Debtors' operations and financial relationships. The information produced to date reflects years of complex intercompany activity, fund flows, and cash movements involving dozens of Debtors and non-Debtor affiliates. This complexity, coupled with the timing and incompleteness of the Debtors' productions to date and confusion created by Emerson, materially impairs creditors' ability to evaluate the nature, amount, and proper allocation of their claims by the currently scheduled General Bar Date.

33. Finally, extending the General Bar Date, as well as implementing the Proof of Claim Filing Procedures (as defined and set forth below), will not prejudice the Debtors or the estates. Indeed, the Local Bankruptcy Rules and Complex Case Procedures expressly contemplate that a unique bar date may be set by the Court and that has not been done here. A measured 60-day extension will not impair operations, delay plan formulation, or disrupt the administration of

these cases. To the contrary, allowing creditors additional time to file accurate proofs of claim will reduce confusion, duplicative filings, amendments, objections, and litigation, thereby promoting the orderly and efficient administration of the estates.

34. Under these circumstances, adherence to the existing deadline would elevate form over fairness and risk barring otherwise valid claims solely due to the exceptional complexity of these cases. Accordingly, the Committee requests that the General Bar Date be extended to August 14, 2026, or such other date that the Court deems just and proper.

**B. Implementation of the Proof of Claim Filing Procedures**

35. Unlike typical chapter 11 cases where trade creditors predominate, the unsecured creditors in these Chapter 11 Cases hold claims primarily arising from the Debtors' activities as a senior housing and healthcare real estate investment fund that sold investment opportunities in a variety of private-placement debt instruments to individual investors. These creditors may not be aware of which of the 161 Debtor entities ultimately received, controlled, or benefited from their funds or which entities ultimately bear liability for repayment. Requiring creditors to select, with exact precision, which Debtor entity is responsible at this juncture is unreasonable and creates an unnecessary and unjustifiable risk that valid claims may be disallowed purely based on technical grounds.

36. The Debtors' Schedules of Assets and Liabilities (the "Schedules") are further evidence of the difficulty creditors face in filing accurate proofs of claim. Rather than identifying all of the investors in the Debtors' funds with specificity, the Schedules present these creditors' claims on a consolidated basis by investment fund and are not listed by investor.

37. Indeed, based on discovery taken by the Committee to date, it appears that the Debtors themselves do not possess complete underlying documentation concerning investor

accounts, intercompany transfers, and historical fund flows. While the Debtors have produced certain materials in response to the Committee's requests for documents, those productions reflect significant gaps, including missing documentation for a substantial portion of historical transfers and transactions. These gaps lead to unresolved questions about account ownership, where the funds ended up, and which of the Debtor entities that ultimately benefited.

38. The Debtors' current CRO has recently requested Court approval to engage special counsel to conduct an investigation into the Debtors' prepetition business practices, indicating that even he lacks the information he needs to determine how the Debtors' conducted their businesses and managed their investors funds. If so, innocent creditors who invested in the Debtors' investment funds should not be expected to have greater knowledge about the scope of the claims they may hold when credible allegations of fraudulent misconduct have been made against the Debtors' ownership and former management.

39. In light of these challenges and informational deficiencies, the burden of accuracy in the claims administration process should fall on the Debtors rather than the innocent third-party creditors who loaned money to the Debtors and now have no idea what the Debtors did with it. Rather than exposing creditors to the risk of forfeiture of legitimate claims, the Debtors should bear the burden of establishing appropriate treatment of proofs of claim filed by unsecured creditors, including whether such claims should be allocated to a specific Debtor through the claims reconciliation process. Claims filed in these Chapter 11 Cases should be resolved based on their substantive merit rather than essentially forfeited as a result of technical or procedural mistakes made under time constraints in unique circumstances.

40. Additionally, implementation of the Proof of Claim Filing Procedures (as defined and set forth below) is further supported by the recent dissemination of incorrect information

regarding the proof of claim process by Emerson. As described above, Emerson, a broker-dealer that assisted the Debtors with prepetition fundraising, sent an email on May 4, 2026 to certain investor-creditors writing to them to ***not*** to file proofs of claim by the General Bar Date. *See* Emerson Correspondence. Emerson has inserted itself into the claims administration process without any Court authorization to hinder and suppress creditor participation in the claims process so that a third-party service provider controlled by Emerson can usurp these creditors' rights and claims. *See id*. These communications have created and will continue to create confusion among creditors already struggling to navigate a complex claims-filing process. Without extending the General Bar Date and reaffirming clear, court-supervised claims procedures (*e.g.*, the Proof of Claim Filing Procedures), there is substantial risk that creditors acting in good faith may miss the General Bar Date or have claims improperly filed based on misinformation from the Debtors' prepetition broker-dealer.

41. Adopting the modified procedures for filing proofs of claim below will ensure that creditors are not penalized for lacking a full understanding at this time of the nature of the claims they may hold and the particular Debtors that are liable to them. Accordingly, the current process for submitting a proof of claim, which is designed for simpler cases, must be modified to address the realities of these Chapter 11 Cases through the following procedures (collectively, the "Proof of Claim Filing Procedures"):

A. Sufficiency of Single Proof of Claim: Unsecured creditors may file a single, master proof of claim (a "Master Proof of Claim") with respect to all claims relating to or arising out of their interactions and transactions with the Debtors, which shall be deemed filed by the applicable unsecured creditor not only in the chapter 11 case of Inspired Healthcare Capital Holdings, LLC, Case No. 26-90004 (the "Lead Case"), but also in the chapter 11 case of each of the Debtors. The filing of such Master Proof of Claim shall have the same effect as if each applicable holder of a general unsecured claim had individually filed a Proof of Claim against each of the Debtors on account of such holder's claims, *provided that*, nothing contained herein

shall be deemed to (a) determine the ultimate liability of any Debtor with respect to such claim, (b) determine whether such claim is allowed, or (c) fix the amount of any such claim. To the extent any unsecured creditor has already filed a proof of claim in these Chapter 11 Cases, or timely files a proof of claim on any form other than the Master Proof of Claim, such proof of claim shall be treated as a Master Proof of Claim for all purposes hereunder and shall be treated as timely filed in all Chapter 11 Cases. Any allocation of such claim among the Debtors or to a specific Debtor, as well as any challenge to allowance or amount of the claim, shall be addressed through the claims reconciliation process.

B. Simplified Proof of Claim Form: The Debtors shall, within seven (7) days of entry of the Proposed Order, distribute via first class mail to all unsecured creditors and make available on the website of the Debtor's claims and noticing agent, Epiq Corporate Restructuring, LLC (the "Claims Agent"), https://dm.epiq11.com/case/ihcare/info, (a) a simplified Master Proof of Claim Form, substantially in the form attached to the Proposed Order as Exhibit 1, and (b) the *Notice of (I) Extended Date by Which Unsecured Creditors Must File Proofs of Claim; and (II) Procedures for Filing Proofs of Claim Against the Debtors* (the "Notice of Extension of General Bar Date"), substantially in the form attached to the Proposed Order as Exhibit 2, subject to Court approval.

1) The Master Proof of Claim Form permits creditors to identify claims through plain-language categories including, without limitation, (a) principal invested or transferred; (b) interest or expected return; (c) fees and expenses; (d) tax-related damages; (e) fraud/misrepresentation claims; (f) contingent or unliquidated damages; and (g) other claims. The filing of such Master Proof of Claim shall have the same effect as if each applicable holder of a claim had individually filed a Proof of Claim against each of the Debtors on account of such holder's claims.

2) The Master Proof of Claim is intended solely for the purpose of administrative convenience and shall not affect the right of each holder of a claim (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases. The holder of a claim shall not be required to file with Master Proofs of Claim any instruments, agreements, or other documents evidencing the obligations referenced in such Master Proof of Claim, which instruments, agreements, or other documents will be provided upon written request.

3) The Debtors shall ensure that the electronic proof of claim form available through the Claims Agent's online portal, available at https://dm.epiq11.com/case/ihcare/info, shall be substantially the

same as the Master Proof of Claim Form available for download, so that creditors are required to provide the same information regardless of whether a claim is submitted electronically or by mail.

4) The Debtors shall ensure that the Claims Agent's website, https://dm.epiq11.com/case/ihcare/info, includes a link allowing creditors to upload completed Proofs of Claim in PDF format without requiring use of the online claim portal. Any uploaded PDF shall be deemed the operative filing, and the Claims Agent shall provide confirmation of receipt for each such submission.

C. Multiple Investments or Accounts: Unsecured creditors holding multiple accounts, funds, investments, or related transactions may elect to file either (a) separate proofs of claim for each investment or transaction; or (b) a single consolidated proof of claim identifying all such investments or transactions.

D. Exemption from Requirement to File Proofs of Claim: the Committee proposes that certain entities holding the following claims be exempt from any requirement to file a Proof of Claim on account of the claims identified below before the Extended General Bar Date:

1) Any claim that is listed on the Schedules filed by the Debtors, provided that (i) the claim is not scheduled as "disputed," "contingent," or "unliquidated"; (ii) the claimant does not disagree with the amount, nature, and priority of the claim as set forth in the Schedules; and (iii) the claimant does not dispute that the claim is an obligation only of the specific Debtor against which the claim is listed in the Schedules;

2) Any claim held by a Debtor against another Debtor;

3) Any claim against a Debtor that is held by a non-Debtor subsidiary (whether direct or indirect) of the Debtors, including, without limitation, the Non-Debtor DSTs.[3]

For the avoidance of doubt, the foregoing exemptions do not apply to (i) any of the Debtors' insiders who are individuals, including controlling shareholders, and current or former officers, directors, managers, members, trustees, or similar individuals; and (ii) Realty Cap Advisors, LLC.

[3] For purposes of this Motion, the term "Non-Debtor DSTs" shall mean Inspired Senior Living of Beaverton DST, Inspired Senior Living of Cinnaminson DST, Inspired Senior Living of Kennewick DST, and any other DSTs that are related to, or operated or managed by, the Debtors and their non-Debtor affiliates.

Such entities must file a timely proof of claim to avoid being forever barred from asserting such claim(s).

E. Receipt of Confirmation:

1) Within a reasonable time after submission, the Claims Agent shall provide email confirmation of receipt to creditors who submit electronic Proofs of Claim through the online portal.

2) Within a reasonable time after submission, the Claims Agent shall provide confirmation of receipt for Proofs of Claim submitted by mail or hand delivery, provided that the claimant includes (i) a copy of the completed Proof of Claim (in addition to the original sent to the Claims Agent) and (ii) a self-addressed, stamped envelope.

3) Within a reasonable time after submission, the Claims Agent shall provide email confirmation of receipt to creditors who upload a completed Proof of Claim in PDF format through the Claims Agent's website link.

42. The Committee recommends implementing the proof of claim procedures described above in order to reduce duplicative filings and omnibus objections, preserve estate resources, improve the accuracy of the claims register, and ultimately protect creditor rights for all constituencies.

43. For the avoidance of doubt, while the Debtors and any party in interest may file an objection to a proof of claim pursuant to applicable sections of the Bankruptcy Code and the Bankruptcy Rules, the ultimate and final allowance or disallowance of any proof of claim rests exclusively with the Court.

## **EMERGENCY CONSIDERATION**

44. In accordance with the Local Bankruptcy Rules and the Complex Case Procedures, the Committee requests emergency consideration of the Motion. As discussed above, immediate relief is necessary because the General Bar Date of June 15, 2026 is rapidly approaching while creditors still lack key information required to evaluate and file their claims. Because May 26,

2026 is the Court's only available hearing date before the General Bar Date, emergency consideration of this Motion is warranted.

45. These Chapter 11 Cases involve more than 160 Debtors and a vast constituency of creditors. Any meaningful assessment of potential claims requires time to review complex intercompany activities and fund flows. Absent this emergency relief, creditors face a substantial risk of forfeiting valid claims due to confusion of the process, informational gaps, and an impending deadline that was imposed by default rather than through a Court-approved motion. Under these circumstances, expedited consideration is necessary to avoid irreparable harm to the estates' stakeholders and to ensure fair and orderly administration of these Chapter 11 Cases.

## NOTICE

46. The Committee will provide notice of the Motion to: (a) the Debtors; (b) the U.S. Trustee; (c) the United States Attorney for the Northern District of Texas; (d) the Attorney General for the State of Texas; (e) the Centers for Medicare and Medicaid Services; (f) the Attorneys General for the states in which the Debtors conduct business; (g) the parties included on the Debtors' list of their 30 largest unsecured creditors; (h) counsel to the Debtors' prepetition lenders; (i) counsel to the DIP Lenders; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Committee submits that no other or further notice is required.

## RESERVATION OF RIGHTS

47. This Motion is submitted without prejudice to, and with a full reservation of, the Committee's rights to seek further relief as appropriate, including additional extensions or modifications to the General Bar Date or the Proof of Claim Filing Procedures, and to assert any

rights, objections, or positions as permitted under applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Committee respectfully requests entry of the Proposed Order (i) extending the General Bar Date by sixty (60) days from June 15, 2026 through and including August 14, 2026; (ii) approving the Proof of Claim Filing Procedures, including the Master Proof of Claim Form, substantially in the form attached to the Proposed Order as Exhibit 1; and (iii) granting such other and further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated: May 11, 2026.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ James T. Grogan III*

Shari L. Heyen (Tex. Bar No. 09564750)
James T. Grogan III (Tex. Bar. No. 24027354)
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Emails: Shari.Heyen@gtlaw.com
James.Grogan@gtlaw.com

– and –

Jared R. Weir (Tex. Bar No. 24075253)
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601
Email: Jared.Weir@gtlaw.com

– and –

David B. Kurzweil (Admitted *Pro Hac Vice*)
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: (678) 553-2100
Facsimile: (678) 553-2212
Email: KurzweilD@gtlaw.com

***Counsel to the Official***
***Committee of Unsecured Creditors***

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2026, a true and correct copy of the foregoing document was served on all parties eligible to receive service through the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas by electronic mail.

By: *_/s/James T. Grogan III_*
James T. Grogan III

**CERTIFICATE OF CONFERENCE**

I hereby certify that, pursuant to Local Bankruptcy Rule 9007-1(f) and paragraph 34 of the Complex Case Procedures, on May 5, 2026, counsel for the Committee, specifically David Kurzweil, conferred by phone call and email correspondence with counsel for the Debtors, specifically Marcus Helt and Jack Haake, regarding the relief requested in the Original Motion. During the conference, the Committee advised the Debtors that it seeks a 60-day extension of the General Bar Date and implementation of the Proof of Claim Filing Procedures. On May 5 and 6, 2026, the Committee provided drafts of the Original Motion and related exhibits to the Debtors and invited the Debtors to confer further about the Original Motion. At this time, no further response has been received from the Debtors.

By: *_/s/David B. Kurzweil_*
David B. Kurzweil